**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEN TITTLE, *et al.*, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case Nos. 15-cv-10889, 15-cv-10891, 15-cv-11280, 15-cv-11620, 15-cv-11885 |
| v. | |
| VTech Electronics North America, LLC and VTech Holdings Ltd., | The Honorable Manish S. Shah |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED JOINT MOTION
TO CONSOLIDATE AND APPOINT INTERIM CLASS COUNSEL**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND .............................................................................................. 2

III. CONSOLIDATION IS APPROPRIATE. ........................................................ 3

    A. This Court has the discretion to consolidate cases to ensure efficient prosecution of related litigation. ................................................. 3

    B. Plaintiffs respectfully ask this Court to consolidate the VTech Actions. .................................................................................................. 4

IV. APPOINTMENT OF INTERIM CLASS COUNSEL IS APPROPRIATE. ......... 5

    A. The selection of interim class counsel will ensure that the litigation is prosecuted efficiently. ...................................................................... 5

    B. Plaintiffs respectfully ask this Court to appoint the undersigned as interim class counsel. .......................................................................... 6

        1. Counsel have investigated and advanced the class claims and are committed to continuing to do so. .................................... 6

        2. Proposed interim counsel have significant experience handling class actions and complex litigation—including other data breach cases—and have substantial knowledge of the applicable law. ................................................................. 7

            a. Jay Edelson .......................................................... 7

            b. Jason L. Lichtman ............................................. 12

            c. John Yanchunis .................................................. 17

        3. Counsel have committed and will continue to commit the resources necessary to fully protect the interests of the class. ................................................................................. 22

        4. Interim lead counsels' responsibilities. .................................. 22

    C. Appointment of Liaison Counsel Edward A. Wallace ............................ 23

    D. Appointment of Plaintiffs' Steering Committee .................................... 24

        1. Cari Campen Laufenberg ..................................................... 25

        2. Christopher S. Hinton .......................................................... 27

        3. Nancy A. Kulesa ................................................................. 28

V. CONCLUSION ............................................................................................. 29

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Blair v. Equifax Check Servs.*,
   181 F.3d 832 (7th Cir. 1999) ............................................................. 4

*Blocker v. City of Chicago*,
   09-CV-7052, 2011 WL 1004137 (N.D. Ill. Mar. 16, 2011) ..................... 3

*Butler, et al. v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ........................................................... 14

*Hill v. Tribune Co.*,
   No. 1:05-cv-02602, 2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) ........... 5

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672, 702 (S.D. Fla. 2004) .................................................. 6

*In re: Dairy Farmers of Am. Cheese Antitrust Litig.*,
   No. 1:09-cv-03690, 2013 WL 6050431 (N.D. Ill. Nov. 15, 2013) .......... 5

*Krottner v. Starbucks*,
   628 F.3d 1139 (9th Cir. 2010) ......................................................... 25

*Smith v. Ne. Illinois Univ.*, No.
   98-cv-3555, 2002 WL 377725 (N.D. Ill. Feb. 28, 2002)....................... 4

*Star Ins. Co. v. Risk Mktg. Group, Inc.*,
   561 F.3d 656 (7th Cir. 2009) ........................................................... 3

*Walker v. Discovery Fin. Servs.*,
   No. 1:10-cv-06694, 2011 WL 2160889 (N.D. Ill. May 26, 2011) .......... 5

**Statutes**

Driver's Protection Privacy Act (DPPA),
   18 U.S.C. 2721, *et. seq.* ................................................................. 18

**Rules**

Fed. R. Civ. P 23(g) ...................................................................... *passim*
Fed. R. Civ. P. 42(a) ........................................................................ 1, 3

**Treatises**

9 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2381 ........ 4
*Manual for Complex Litigation (Fourth)* (2004) ............................... *passim*
*Newberg on Class Actions* § 10:33, 10:41 (5th ed.) ............................... 3

**Other Authorities**

Hayley Tsukayama, VTech says 6.4 million children profiles were caught up in its data breach,
   *Washington Post* (Dec. 1, 2015), https://www.washingtonpost.com/news/the-
   switch/wp/2015/12/01/vtech-says-6-4-million-children-were-caught-up-in-its-data-breach/.... 3

Matthew J. Schwartz, Why VTech Breach is So Bad—and So Avoidable, *Bank Info Security*
   (Dec. 3, 2015), http://www.bankinfosecurity.com/vtech-breach-so-bad-so-avoidable-a-
   8721/op-1 ................................................................................... 2

Plaintiffs in the instant centralized actions (collectively, the "VTech Actions")[1] respectfully submit this memorandum of law in support of their joint motion seeking an order consolidating the above actions and appointing Jay Edelson, Jason L. Lichtman, and John A. Yanchunis as Interim Co-Lead Counsel; Edward A. Wallace as Interim Liaison Counsel; and Cari Campen Laufenberg, Christopher S. Hinton, and Nancy A. Kulesa as members of a Plaintiffs' Steering Committee pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. Counsel for Defendant VTech Electronics North America, L.L.C. ("VTech")[2] does not oppose the relief sought in this motion.

## I.    <u>INTRODUCTION</u>

Plaintiffs respectfully ask this Court to consolidate and appoint interim counsel over these centralized class action lawsuits. *See* Fed. R. Civ. P. 42(a), 23(g). Consolidation and appointment of interim counsel are in the best interest of the parties, the proposed class, and the Court because it will ensure that the litigation is conducted efficiently and effectively. This is of particular importance as the parties begin to discuss topics including discovery and potential alternative dispute resolution, because appointment of interim class counsel over the consolidated actions will empower counsel to make decisions on behalf of the proposed class. Each of the lawyers representing Plaintiffs have discussed case strategy to ensure that the actions are prosecuted efficiently. Pursuant to the Manual on Complex Litigation, they have agreed to organize their efforts and jointly seek entry of an order appointing the below counsel.

---

[1] *Tittle v. VTech Electronics North America, LLC*, No. 15-cv-10889 (filed Dec. 3, 2015), *Bran v. VTech Electronics North America, L.L.C., et al.*, No. 15-cv-10891 (filed Dec. 3, 2015), *Donnel, et al. v. VTech Electronics North America, L.L.C., et al.*, No. 15-cv-11280 (filed Dec. 15, 2015), *Dashnau v. VTech Electronics North America, L.L.C., et al.*, No. 15-cv-11620 (filed Dec. 23, 2015), and *Giron v. VTech Electronics North America, L.L.C.*, No. 15-cv-11885 (filed Dec. 31, 2015).

[2] VTech Holdings Ltd. has not yet entered an appearance in this matter.

With those aims in mind, the undersigned counsel representing Plaintiffs in each of the VTech Actions have conferred and request that the Court consolidate these matters and appoint (i) Jay Edelson of Edelson PC; Jason L. Lichtman of Lieff Cabraser Heimann & Bernstein, LLP; and John A. Yanchunis of Morgan & Morgan Complex Litigation Group ("Proposed Interim Counsel") as Interim Co-Lead Counsel; (ii) Edward A. Wallace of Wexler Wallace LLP as Interim Liaison Counsel; and (iii) Cari Campen Laufenberg of Keller Rohrback L.L.P.; Christopher S. Hinton of The Rosen Law Firm, P.A.; and Nancy A. Kulesa of Levi & Korsinsky LLP as members of a Plaintiffs' Steering Committee ("PSC"). The above attorneys have extensive experience litigating complex class actions on behalf of consumers, including data breach cases like this one, and are committed to seeing this litigation through to resolution on behalf of the proposed class.

## II.   BACKGROUND

Defendants are the leading manufacturer and distributor of digital learning toys. Broadly speaking, their products allow children to browse the Internet, communicate with each other, play learning games, and read e-books. Children share a significant amount of personal information when they use VTech's products, including their photographs, names, gender, and date of birth. Parents also share private information including their names, e-mail addresses, passwords, IP addresses, and home addresses. This is highly sensitive information, in part because it ultimately links a child's physical address with his or her picture and name.

Plaintiffs allege that VTech failed to take reasonable security precautions to address product security vulnerabilities, including something known as an "injection attack," which security experts explain exploits "*the very first type of flaw that should be eliminated from any*

*Web application*."[3] Indeed, on November 14, 2015, hackers obtained personal information from more than 2.8 million children in the United States, as well as their parents. And VTech has admitted that "[its] database was not as secure as it should have been."[4]

*       *       *

In the weeks that followed the hack described above, Plaintiffs' counsel in the VTech Actions began to self-organize. First, Plaintiffs conferred and have agreed to centralize the VTech Actions before this Court. *See Newberg on Class Actions* §§ 10:33, 10:41 (5th ed.) ("If the goals of a class suit are to be achieved, it is generally beneficial for the multiple related actions to be coordinated or consolidated in some fashion."). Following the reassignment of all cases to this Court, Plaintiffs' counsel agreed on a leadership structure that, if approved, will (i) allow the VTech Actions to proceed under a single Amended Consolidated Complaint, (ii) allow experienced counsel to lead the VTech Actions on behalf of all Plaintiffs, and (iii) ensure that Plaintiffs' counsel for all the VTech Actions (including any that may be subsequently filed) work efficiently and cooperatively towards a successful resolution of these matters.

## III.    CONSOLIDATION IS APPROPRIATE

### A.    This Court has the discretion to consolidate cases to ensure efficient prosecution of related litigation.

A district court may act in its discretion to consolidate one or more related actions where they involve a common question of law or fact. Fed. R. Civ. P. 42(a); *see also Star Ins. Co. v. Risk Mktg. Group, Inc.*, 561 F.3d 656, 660 (7th Cir. 2009). This "rule is designed to give the

---

[3] Matthew J. Schwartz, Why VTech Breach is So Bad—and So Avoidable, *Bank Info Security* (Dec. 3, 2015), http://www.bankinfosecurity.com/vtech-breach-so-bad-so-avoidable-a-8721/op-1.

[4] Hayley Tsukayama, VTech says 6.4 million children profiles were caught up in its data breach, *Washington Post* (Dec. 1, 2015), https://www.washingtonpost.com/news/the-switch/wp/2015/12/01/vtech-says-6-4-million-children-were-caught-up-in-its-data-breach/.

court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." *Blocker v. City of Chicago*, 09-CV-7052, 2011 WL 1004137, at *2 (N.D. Ill. Mar. 16, 2011) (citing 9 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2381). Indeed, "[t]he Seventh Circuit has emphasized that related cases pending within the same court should be consolidated before a single judge to avoid wasteful overlap." *Id.* (citing *Blair v. Equifax Check Servs.*, 181 F.3d 832, 839 (7th Cir. 1999).

### B.   Plaintiffs respectfully ask this Court to consolidate the VTech Actions.

As the Court is aware, all of the above actions have already been related and reassigned to this Court. (*See* Dkt. 23; Dkt. 27.) Each of the VTech Actions "arises out of the same facts" and involves identical legal questions. (*See* Dkt. 20 at 4-5; Dkt. 24 at 4.) For this reason, litigation of the VTech Actions will require discovery of the same evidence, resolution of the same pretrial motions, and trial of the same legal and factual issues. Accordingly, consolidation of these actions presents the most efficient method for adjudication and will avoid any "wasteful overlap" of such activities. *See*, *e.g.*, *Smith v. Ne. Illinois Univ.*, No. 98-cv-3555, 2002 WL 377725 (N.D. Ill. Feb. 28, 2002) (finding consolidation appropriate where plaintiffs alleged nearly identical claims, which would be supported by the same evidence, and "[s]eparate trials would require a significant amount of overlapping testimony and evidence….").

Plaintiffs thus respectfully ask this Court to issue an order consolidating the VTech Actions and instructing Plaintiffs to file a Consolidated Amended Complaint no more than 14 days following the date of that Order.

4

## IV. APPOINTMENT OF INTERIM CLASS COUNSEL IS APPROPRIATE

### A. The selection of interim class counsel will ensure that the litigation is prosecuted efficiently.

A court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g); *see*, *e.g.*, *Walker v. Discovery Fin. Servs.*, No. 1:10-cv-06694, 2011 WL 2160889, at *2 (N.D. Ill. May 26, 2011). Indeed, when multiple related cases are pending, "the selection and activity of class counsel are often critically important to the successful handling of the class action." Fed. R. Civ. P. 23(g). Advisory Committee Notes; *see also Manual for Complex Litigation (Fourth)* § 21.271 (2004). The *Manual* explains that "[e]arly organization of the counsel who have filed the various cases transferred or consolidated for pretrial purposes is a critical case-management task." *Id*. § 22.62.

In appointing class counsel, the court "must consider":

(i)     the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)   counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P 23(g)(1)(A); *see also In re: Dairy Farmers of Am. Cheese Antitrust Litig.*, No. 1:09-cv-03690, 2013 WL 6050431, at *3 (N.D. Ill. Nov. 15, 2013) (explaining that courts apply the above standard to appointment of interim class counsel); *Hill v. Tribune Co.*, No. 1:05-cv-02602, 2005 WL 3299144, at *3-5 (N.D. Ill. Oct. 13, 2005) (same).

5

**B.** **Plaintiffs respectfully ask this Court to appoint the undersigned as interim class counsel.**

    **1.** **Counsel have investigated and advanced the class claims and are committed to continuing to do so.**

The first Rule 23(g) factor is the work Proposed Interim Counsel have done "in identifying and investigating potential claims in [this] action." Fed. R. Civ. P. 23(g)(1)(A)(i). Here, Proposed Interim Counsel have dedicated—and will continue to dedicate—substantial resources to investigating the facts underlying the VTech Actions and researching the applicable legal bases for liability. The current state of Proposed Interim Counsel's investigations are informed by their substantial experience in this field (*see infra,* Section III.B.) and have included the following steps:

    (i)    Initial investigation following VTech's announcement of the data breach, including client interviews, consulting with data security experts, reviewing documentation relating to the litigation, and cross-referencing all independent investigation with VTech's announcements.

    (ii)    Performing a technical review of the features of and setup processes for the VTech tablets, including the manner in which those devices access and transmit data to VTech's customer and user databases.

    (iii)    Legal research to determine the strongest claims to assert on behalf of Plaintiffs and the putative class.

As a result of these efforts, Proposed Interim Counsel have a strong foundation of knowledge regarding the products and services at issue.

Proposed Interim Counsel, moreover, have already spent considerable time and effort to (i) centralize the VTech Actions before a single court, in cooperation with other counsel for Plaintiffs and counsel for VTech Electronics North America, L.L.C.; (ii) coordinate Plaintiffs' efforts to draft and prepare a Consolidated Amended Complaint, which will govern the claims of all putative class members in the VTech Actions; and (iii) organize Plaintiff's counsel around a leadership structure, which will ensure the efficient and effective prosecution of these matters.

In sum, though this litigation is still in its infancy, the above effort is reflective of Proposed Interim Counsel's strong commitment to investigating and advancing the claims of the proposed class. Proposed Interim Counsel are each committed to maintaining this same high level of representation throughout this litigation.

## 2. Proposed interim counsel have significant experience handling class actions and complex litigation—including other data breach cases— and have substantial knowledge of the applicable law.

In selecting interim class counsel, courts place great emphasis on Rule 23(g)(1)'s second and third factors, which concern proposed lead counsel's experience with and knowledge of the applicable law. *See*, *e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004); Fed. R. Civ. P. 23(g)(1)(A)(ii & iii). In this regard, Proposed Interim Counsel are well-suited for appointment to a leadership position—they have litigated claims very similar to those asserted here and have served in leadership roles in other consolidated and/or multidistrict complex class actions.

### a. Jay Edelson

Jay Edelson has extensive experience litigating data breach and other consumer privacy class actions, and is routinely appointed as class counsel in high-profile privacy class actions in state and federal courts across the country.

      i.   Mr. Edelson and his colleagues at Edelson PC have successfully litigated, settled, and set industry-changing precedents in data breach and other consumer privacy class actions.

Jay Edelson has vast experience litigating data breach and other privacy class actions. He, and attorneys at his firm, have a demonstrated track record of successfully litigating and settling cases like this one and, as a result of that experience, have a comprehensive understanding of the claims at issue here.

First, Jay Edelson and other attorneys at Edelson PC have successfully litigated and settled some of the most high profile data breach cases in the country. This includes the seminal case of *Resnick v. AvMed*—the healthcare data breach case that arguably set the bar for every data breach lawsuit to follow, including this one. 693 F.3d 1317 (11th Cir. 2012). There, Mr. Edelson and his firm represented a class of consumers affected by a massive data breach, and pursued class claims to recover both (1) damages relating to identity theft (the typical claims sought by every data breach class action), as well as (2) damages stemming from the class's "overpayment" for data protection services that the defendant-insurer failed to deliver—a unique theory that would allow class members to recover a portion of their paid insurance premiums, regardless of whether or not they suffered actual identity theft. Even though the district court dismissed all of the classes' claims twice over, the *AvMed* litigation produced two, first-of-their-kind results:

1)     In winning reversal, Edelson secured a landmark appellate decision, where the Eleventh Circuit Court of Appeals held that (i) the plaintiffs demonstrated a causal link between the data breach at issue and allegations of identity theft, and (ii) that the plaintiffs successfully pleaded a separate and viable unjust enrichment theory, allowing all class members that paid money for health insurance to pursue money damages against the defendant. *See AvMed*, 693 F.3d at 1328. The first holding was (and is) a rarity in consumer data breach cases; the second was a landmark ruling.

2)     Just as important, Edelson ultimately negotiated a class settlement in *AvMed* where—for the first time ever—data breach victims who paid for promised but not-received data protection received monetary settlement payments, regardless of whether they suffered identity theft. *Resnick v. AvMed*, No. 10- cv-24513, Dkts. 82, 91 (S.D. Fla. October 25, 2013). In an article titled "AvMed's $3M Pact Blazes New Path for Data Breach Settlements," Edelson's settlement was described as "a groundbreaking pact . . . likely to serve as a template for other plaintiffs in class actions over data breaches."[5]

Further, Mr. Edelson and the lawyers of Edelson PC are, to date, among the only attorneys in the country to have successfully negotiated settlements of this kind—i.e., where

---

[5]  *See* Grande, Allison, available at http://www.law360.com/articles/484008/avmed-s-3m-pactblazes-new-path-for-data-breach-plaintiffs (last visited January 18, 2016).

nearly all members of a putative data breach class (not just those suffering identity theft) are eligible to recover monetary settlement payments. This includes not only *AvMed*, but also the class settlement that was finally approved in *In re: LinkedIn User Privacy Litigation*—a consumer class action concerning a 2012 data breach that affected LinkedIn members. *See In re: LinkedIn User Privacy Litigation*, No. 5:12-cv-03088, Dkt. 147 (N.D. Cal. Sept. 15, 2015) (granting final approval to class settlement against LinkedIn, based on allegations that users paid for—but did not receive—data security. Under the settlement, class members can receive a *pro rata* share of the settlement fund, without demonstrating identity theft or other injuries beyond overpayment).

Beyond these landmark successes, Mr. Edelson and his firm are actively litigating several other data breach class actions—both in federal and state courts.[6] Among these, (i) Mr. Edelson was recently appointed as interim co-lead counsel of nine consolidated class actions captioned *In re Advocate Data Breach Litig.*, No. 2013-CH-20390 (Cook County, Illinois)—which concerns a data breach at a hospital system affecting over four million patients; and (ii) attorneys from Edelson PC were appointed to the Executive Leadership Committee of 39 centralized putative class actions captioned *In re Premera Blue Cross Customer Data Security Breach Litigation*, No. 15-md-2633 (D. Or.)—a multidistrict healthcare data breach case affecting some 11 million consumers.

Outside of data breach litigations, Mr. Edelson and the attorneys of Edelson PC have been specifically recognized as "pioneers in the electronic privacy class action field, having

---

[6] Edelson PC's other pending data breach cases include *In re: Premera Blue Cross Customer Data Security Breach Litigation*, No. 15-md-2633 (D. Or.); *Lozada, et al. v. Advocate Health and Hospitals Corp., et al*, No. 2013-CH-20390 (Cir. Ct. Cook County, Ill.); *Weinberg v. Advanced Data Processing, Inc., et al.*, No. 15-cv-61598 (S.D. Fla.); *Case v. Miami Beach Healthcare Group, Ltd., et al.*, No. 14-cv-24583 (S.D. Fla.); and *Moore v. Adventist Health System/Sunbelt, Inc.*, No. 2015-cv-007038 (Cir. Ct. Orange County, Fla.).

litigated some of the largest consumer class actions in the country on this issue." *See*, *e.g.*, *In re Facebook Privacy Litig.*, No. C 10-02389, Dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010) (order appointing Edelson PC interim co-lead of privacy class action); *In re Netflix Privacy Litig.*, No. 11-cv-00379, Dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (appointing Edelson PC as the sole lead counsel due, in part, to Edelson PC's "significant and particularly specialized expertise in electronic privacy litigation and class actions"). Simply put, Edelson has obtained a significant amount of decisive court decisions—and negotiated influential settlements—for consumer privacy class actions. Representative matters include:

- *Harris v. comScore*, No. 11-cv-5807, Dkts. 186, 369 (N.D. Ill.) (in case accusing a public internet analytics company of improper data collection practices, Edelson secured adversarial certification of largest ever privacy class comprised of millions of consumers for claims arising under federal privacy statutes, including the Computer Fraud and Abuse Act, and ultimately negotiated a $14 million settlement, which resulted in claiming class members receiving approximately $500 each);

- *Fox v. Time, Inc.*, No. 12-cv-14390, Dkt. 117 (E.D. Mich. July 27, 2015) (securing adversarial class certification of claims under the Michigan Preservation of Personal Privacy Act ("PPPA"));

- *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.) (securing first ever class settlement under the PPPA);

- *Kinder v. Meredith Corp.*, No. 14-cv-11284, Dkt. 72 (E.D. Mich. Oct. 5, 2015) and *Coulter-Owens v. Rodale Inc.*, No. 2:14-cv-12688, Dkt. 42 (E.D. Mich. Dec. 23, 2015) (securing and moving for preliminary approval of class action settlements brought under the PIPA against magazine publishers);

- *In re Netflix Privacy Litigation*, No. 11-cv-00379 (N.D. Cal.) (appointing Edelson PC sole lead counsel, and finally approving $9 million settlement);

- *In re Jiffy Lube Int'l Text Spam Litigation*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal.) (appointing Edelson PC co-lead counsel and finally approving $35 million text spam settlement).

        ii.    Mr. Edelson and his colleagues at Edelson PC have been appointed to leadership positions in numerous high profile consolidated class actions and MDLs.

Mr. Edelson has been appointed by state and federal courts throughout the country to serve in leadership capacities—virtually always as lead or co-lead counsel in complex litigations,

including in many high profile MDLs. Here, his demonstrated leadership experience will be an asset to the putative consumer class, and will aid in the organized litigation of these centralized actions.

Jay Edelson's reputation for leadership in class litigation has led courts to appoint him lead counsel in numerous high-profile cases. Examples of such appointments include:

- *In re Advocate Data Breach Litig.*, No. 2013-CH-20390 (Cook County, Illinois) (appointing Mr. Edelson co-lead of nine consolidated healthcare data breach class actions, which were being prosecuted by twelve law firms);

- *In Re LinkedIn User Privacy Litig.*, No. 12-cv-3088, Dkt. 40 (N.D. Cal. January 29, 2015) (appointing Mr. Edelson as lead class counsel of four consolidated data breach cases, and holding that his firm is "experienced in class action litigation and, in particular, in class action litigation involving technology and privacy . . . [and had] taken a leadership role among counsel for the other plaintiffs");

- *Birchmeier v. Caribbean Cruise Line, Inc. et al.*, No. 12-cv-04069, Dkt. 100 (N.D. Ill. April 17, 2013) (appointing Mr. Edelson as co-lead counsel of three consolidated cases in Telephone Consumer Protection Act case);

- *In re Netflix Privacy Litig.*, No. 11- cv-00379-EJD, Dkt. 59 (N.D. Cal. Aug. 12, 2011) (appointing Mr. Edelson as lead counsel of six consolidated class actions and holding that his firm's "significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class.");

- *In re Facebook Privacy Litig.*, 10-cv-02389-JW, Dkt. 69 (N.D. Cal. Dec. 10, 2010) (appointing attorneys of Edelson PC as interim co-lead class counsel of nine consolidated class actions, citing the firm's "extensive experience in privacy litigation and commitment to the present action");

- *In re: JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 10-cv-03647, Dkt. 37 (N.D. Ill. July 16, 2010) (appointing Mr. Edelson as co-lead counsel of MDL involving nine class actions from seven different federal district courts).

> iii. Mr. Edelson and his colleagues at Edelson PC have access to the resources necessary to efficiently and timely prosecute this litigation.

Mr. Edelson's firm, Edelson PC, has already devoted significant human and financial resources to representing the interests of the putative class and will commit such further resources necessary to litigate this case through trial and appeals. Here, and in addition to leveraging Mr. Edelson's substantial experience, the other attorneys at Edelson PC will make

important contributions to the effective prosecution of the class's claims. Of particular note, Edelson PC partner Alexander T. H. Nguyen (a former federal prosecutor and deputy chief of the cybercrime unit for the United States Attorney's Office, who investigated, prosecuted, supervised, and tried a wide range of computer crime and intellectual property matters, including hacking and cyber intrusions, data breaches, and large-scale identity theft and online fraud matters) will dedicate substantial time to the VTech Actions.

In addition to its experienced and qualified attorneys (and support staff), Edelson PC also employs a team of in-house computer forensic investigators, who have played crucial roles in this—and other—data breach class actions litigated by the firm and will remain actively involved in this case throughout this litigation. These resources, along with the firm's substantial subject-matter expertise, have allowed the firm to undertake in-house, highly complex review of novel and proprietary technology in the past, including the investigation and analysis of highly confidential and complex software source code.

Given its substantial experience in investigating and litigating complex technology and privacy class actions, and as further set out in Exhibit A, Edelson unquestionably has the resources necessary to prosecute the putative class's claims diligently and efficiently.

### b. Jason L. Lichtman

Jason Lichtman and his colleagues at Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") have extensive experience leading consumer and privacy litigation. Among other attorneys at LCHB, he is joined in this litigation by Michael W. Sobol, head of the LCHB Consumer Protection and Data Privacy Practice Group.

           i.      LCHB has successfully litigated and settled data breach and other consumer privacy class actions.

Mr. Lichtman, Mr. Sobol, and the LCHB team have extensive expertise in privacy cases, including data breach cases. For example, LCHB team members involved in this litigation currently play or have played leadership roles in the following privacy cases:

- *Corona v. Sony Pictures Entertainment, Inc.*, No. 14-cv-9600 (C.D. Cal.). LCHB was appointed Interim Co-Lead Class Counsel in a class action arising out of a breach of Sony's computer networks. The breach was unprecedented in that highly-sensitive and personally identifiable information of thousands of Sony employees was stolen and made public, exposing class members to long-term risk of identity theft and credit fraud. The plaintiffs successfully defeated Sony's motion to dismiss and reached a settlement of the matter which is currently pending approval.

- *Campbell v. Facebook*, No. 13-cv-5996 (N.D. Cal.). LCHB was appointed Co-Lead Counsel and Plaintiffs' Liaison Counsel in a nationwide class action lawsuit alleging that Facebook intercepts private data in users' personal and private e-mail messages on the social network and profits by sharing that information with third parties. Among other work, LCHB took the lead on drafting plaintiffs' successful opposition to Facebook's motion to dismiss.

- *In re Google Inc. Street View Electronic Communications Litig.*, No. 10-md-2184 (N.D. Cal.). Elizabeth Cabraser of LCHB was appointed Liaison Counsel in a class action in which LCHB team members litigating this case are heavily involved, alleging that Google intentionally equipped its Google Maps "Street View" vehicles with Wi-Fi antennas and software that collected personal, private data being transmitted over private Wi-Fi networks located in homes within range of the vehicles' receptors. LCHB took the lead on briefing and arguing Google's appeal of the court's denial of its motion to dismiss and, on September 10, 2013, the Ninth Circuit Court of Appeals agreed with plaintiffs that Google's actions are not exempt from the Wiretap Act.

- *Perkins v. LinkedIn Corporation*, No. 13-04303-HRL (N.D. Cal.). LCHB represents plaintiffs in a class action alleging that LinkedIn improperly harvested and used consumers' email addresses and other data for commercial purposes. Among other things, LCHB played a lead role in negotiating a settlement and oversaw the drafting of Plaintiffs' pending motion for preliminary approval of a settlement, which was filed on June 11, 2015. The proposed settlement includes a non-reversionary settlement fund of $13 million or more, depending on the number of claims, with guaranteed pro rata class member payments of at least $10 each. It also includes significant business practice changes.

- *Shurtleff v. Health Net of Cal., Inc.*, No. 34-2012-00121600-CU-CL (Sacramento Cnty. Superior Court). LCHB, along with co-counsel, represented plaintiffs in a patient privacy class action in which the defendant had lost service drives containing highly sensitive personal information of its patients and employees. A class settlement resulted in significant monetary relief and important data security improvements.

13

Through the above and other cases, the LCHB team has developed a solid knowledge of the applicable law as well as the unique issues involved in litigating privacy and data breach cases, such as the hurdles that are often involved in establishing standing and proving damages.

ii.     Mr. Lichtman and Mr. Sobol have been appointed to leadership positions in numerous high profile consolidated class actions and MDLs.

Mr. Lichtman and Mr. Sobol have held key leadership roles in numerous nationwide class action cases. For example, Mr. Lichtman was co-chair of the law and motion committee in *In re Whirlpool Products Liability Litigation*, MDL No. 2001 (N.D. Ohio), and was one of the trial counsel in that litigation. Mr. Lichtman has achieved successful results for the class in numerous cases, including *Yarger v. ING*, No. 11-154-LPS (D. Del.) (a $20 million settlement in which every class member received a check averaging more than $150) and *In re: Imprelis Herbicide Marketing Sales Practices and Product Liability Litigation*, MDL No. 2281 (E.D. Pa.) (in which the Parties reached a major settlement that provided class members hundreds of millions of dollars of relief). Mr. Lichtman has also secured successful results as counsel of record in a number of appellate courts, including in *Butler, et al. v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) (Posner J.).

Mr. Sobol has also served as plaintiffs' class counsel—and as lead counsel—in numerous nationwide class action cases. By way of example, litigation in which he played a key role includes:

- Mr. Sobol served on the Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.), a multi-district proceeding involving more than two dozen banks and allegations of unfair practices and false representations in connection with the banks' imposition of overdraft fees. Class settlements totaling over a billion dollar have been approved by the court to date. In 2012, he was named as a finalist for Trial Lawyer of the Year by Public Justice for his work in this litigation.

- In 2012, Mr. Sobol was named a finalist by the Consumer Attorneys of California ("CAOC") for the Consumer Attorney of the Year award for his work in the

14

*Yourke v. Bank of America*, a case that was a part of the MDL which resulted in a settlement of $410 million.

- Mr. Sobol served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, MDL No. 2032 (N.D. Cal.), a nationwide Multi-District class action alleging that Chase breached its good faith obligation to credit cardholders by modifying the terms of their long-term fixed rate loans. In November 2012, the court granted final approval to a $100 million nationwide settlement that provides direct payments to approximately one million cardholders and important injunctive relief. In 2013, he was named a finalist for CAOC's Consumer Attorney of the Year award for his efforts in this litigation.

      iii.    Mr. Lichtman, Mr. Sobol, and their colleagues at LCHB have access to the resources necessary to efficiently and timely prosecute this litigation.

Due in large part to LCHB's size and past successes, LCHB is fortunate to have resources that many other firms do not have. For example, LCHB has in-house litigation support specialists responsible primarily for: (a) preparing and conducting trial presentations and similar in-court technical productions; (b) creating, managing, and searching case-specific document and information databases; and (c) performing certain case-specific data analyses. Because the personnel who make up LCHB's litigation support group have extensive training and experience performing these specific and technical tasks, it is more efficient and cost-effective for this sort of work to be assigned to these personnel as opposed to paralegals with other areas of specialization who normally perform less technical work. It is also less costly than contracting such work out to third parties.

As an example of the work the LCHB litigation support team has provided in other MDLs—which may also be beneficial here—in *In re: General Motors LLC Ignition Switch Litigation*, 14-md-02543 (S.D.N.Y.), LCHB's litigation support team created a database that keeps track of and organizes the monthly time and expenses submissions from all counsel involved in the MDL. The database has several advantages, including that the monthly submissions are imported automatically and no manual input is required. In addition, many

different types of time and expense reports can easily and quickly be generated from the database. Reports can be generated for a particular time range, a particular firm, a particular case, a particular timekeeper, a type of timekeeper (e.g., paralegal or attorney), by type of work done (e.g., expert work), or for some combination of the above. For instance, LCHB could create a report showing that X firm performed X hours of deposition work between January 1, 2015 and March 1, 2015. Such timekeeping management has greatly helped in preventing duplicative work and ensuring efficiency, and will be particularly useful in this litigation to ensure that any requested attorneys' fees are reasonable.

LCHB also has access to and experience in using cutting-edge technology. For example, both Mr. Lichtman and Mr. Sobol have used technology-assisted review in cases involving large volumes—millions of pages—of documents. Technology assisted review vastly reduces the time attorneys spend reviewing documents. It does so by (a) ensuring that the most probative documents to the claims and defenses of the case are reviewed first; (b) allowing closely related documents to be reviewed in conjunction with one another; and (c) reducing or eliminating the need to review irrelevant documents. Such technology has enabled LCHB to prosecute complex cases on an expedited schedule and to keep costs down, and will likely be helpful to save costs and efficiently adjudicate this litigation.

LCHB also has the financial resources necessary to litigate complex MDLs such as this one. LCHB has repeatedly contributed substantial sums in up-front assessments to fund the work of MDLs. For example, in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2151 (C.D. Cal.), LCHB expended well over $5 million to fund the litigation before settlements were reached. LCHB makes such commitments with an experienced understanding of the risks and uncertainties of such litigation.

Additional details regarding Mr. Lichtman and LCHB's qualifications are attached as Exhibit B.

### c. <u>John Yanchunis</u>

John Yanchunis of Morgan & Morgan has extensive experience leading consumer and privacy litigation.

> i. Mr. Yanchunis has successfully litigated and settled data breach and other consumer privacy class actions.

John Yanchunis has extensive experience representing consumers in numerous privacy rights and data breach cases. His experience goes back several years, beginning with *In re DoubleClick Inc. Privacy Litigation*, No. 00-cv-0641-NRB (S.D.N.Y.), a seminal and formative privacy class action that settled in 2002 and involved DoubleClick's use of cookies to track the private activities of internet users. In addition, Mr. Yanchunis served as lead counsel in the following data breach class cases: *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800 (S.D. Fla.), *Ramirez v. ChenMed, LLC*, No. 14-12319-CA-04 (Fla. 11th Cir. Ct.), and *Carsten v. University of Miami*, No. 1:14-cv-20497-KMW (S.D. Fla.), all of which were settled and provided substantial monetary and injunctive relief to class members.

Currently, Mr. Yanchunis serves as co-lead counsel in the MDL case *In re The Home Depot, Inc. Customer Data Security Data Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.) (consumer class cases), and lead counsel in the following pending privacy and data-breach class litigation involving the loss of medical and financial information: *John Doe v. Tampa General Hospital*, No. 14-CA-012657 (Fla. 13th Cir. Ct.); *Bishop v. Shorter University*, No. ca-4:15-cv-0033-HLM (N.D. Ga.); and *Peralta v. Adventist Health Systems, Sunbelt Healthcare Corp.*, No. 2015-ca-2916 (Fla. 9th Cir. Ct.). He is also a member of the Executive Committee in the data-breach case *Ortiz v. UCLA Health System*, No. BC589327 (Cal. Sup. Ct. Los Angeles Cnty.), and

he is class counsel in *Diaz v. Intuit, Inc.*, No. 5:15-cv-1778-EJD (N.D. Cal.), and *McDowell v. CGI Group, Inc.*, No. 1:15-cv-01157-GK (D.D.C.). Mr. Yanchunis is also class counsel in several data breach cases against retailers—including *Whalen v. Michael Stores Inc.*, No. 14-cv-07006 (S.D.N.Y.), and *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-01735 (N.D. Ill.)—and against the federal government in *Welborn et al. v. Internal Revenue Service*, No. 15-cv-1352 (D.D.C.), which asserts a claim under the Privacy Act.

In addition, Mr. Yanchunis currently serves on the Executive Committee overseeing the consumer class, the financial institution class, and the shareholder derivative litigation pending against Target Corporation—one of the largest data breach cases to date—in *In re Target Corporation Customer Data Security Breach Litig.*, MDL No. 2522 (D. Minn.), pending before United States District Judge Paul A. Magnuson. As a member of the Overall Executive Committee, he also worked on the Executive Committee of the consumer class case and assisted in its prosecution and negotiation of a class settlement. This settlement, which recently received final court approval, provides a $10 million non-reversionary fund for distribution to consumers and important equitable relief to protect consumers' privacy rights.

Mr. Yanchunis also served as co-lead counsel in the successful prosecution and settlement of perhaps the largest consumer privacy class action cases in the United States: *Fresco v. Automotive Directions, Inc.*, No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM (S.D. Fla.). Much like the VTech Actions now before this Court, which have been consolidated, the *Fresco* matters also involved a number of law firms that filed cases against the same defendants. By agreement, these cases were all consolidated before one court in the Southern District of Florida, and one consolidated complaint was filed against 8 defendants (who were, at the time, the largest brokers of consumer data in the world). The case involved the

advocacy for and protection of the important privacy rights of a class comprising over 200 million individuals throughout the United States and its territories, and involved claims alleging violations of the Driver's Protection Privacy Act (DPPA), 18 U.S.C. § 2721, *et. seq.* The case was extensively litigated for 4 years, and involved the retention and use of the most recognized privacy experts in this country, including a forensic fraud examiner. After extensive litigation, the parties agreed to the appointment of a mediator and, through the efforts of the mediator and an expert retained by the mediator to assist in the mediation process, the parties agreed to settlement of the claims of the class. The settlement ultimately approved by the court created specific business changes and made extensive enhancements necessary to create an effective privacy regime not only to comply with, but to surpass the strictures of the DPPA and the counterparts in the 50 states.

        ii.    Mr. Yanchunis has been appointed to leadership positions in other national class action cases and related matters.

Along with his experience in the area of consumer privacy and data breach cases, Mr. Yanchunis has also served as lead, co-lead, and class counsel in numerous national class actions—including in multi-district litigation—involving a wide range of subjects affecting consumers, including antitrust, defective products, life insurance, annuities, and deceptive and unfair acts and practices. *See*, *e.g.*, *Davis v. Bank of America*, No. 05-cv-80806 (S.D. Fla.) ($10 million common fund); *Kehoe v. Fidelity Federal Bank and Trust*, No. 03-cv-80593 (S.D. Fla.) ($50 million common fund); *Pino v. Warranty Acceptance Corporation*, No. 05-cv-61576 (S.D. Fla.).

In 2005, and as a result of his experience in insurance and complex litigation, Mr. Yanchunis was selected by Tom Gallagher, the Chief Financial Officer for the state of Florida and a member of the Florida Cabinet, to serve as lead counsel for the Florida Department of

Financial Services and the Florida Department of Insurance Regulation (the insurance regulators of Florida) in their investigation of the insurance industry on issues concerning possible antitrust activity and other possible unlawful activities regarding the payment of undisclosed compensation to insurance brokers. Mr. Yanchunis served as lead regulator counsel and worked with a core group of state Attorneys General from the National Association of Attorneys General, which were selected to conduct the investigations. The insurance regulator for Florida was the only insurance regulator in the group. The litigation that was filed based on this and related investigations netted millions of dollars in restitution for Florida consumers and resulted in significant changes in the way commercial insurance is sold in Florida and across the country.

During his career, Mr. Yanchunis has tried numerous cases in state and federal courts, including one of the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by the Celotex Corporation and its subsidiary, Carey Canada, Inc. During the seventeen years the case pended, Mr. Yanchunis served as lead counsel for several insurance companies, regarding coverage for asbestos and environmental claims. The case was tried in three phases over several years beginning in 1992. Mr. Yanchunis was also lead counsel for these parties in the subsequent appeals, which followed a judgment in favor of his clients.

Through his experience in numerous leadership positions in class cases, Mr. Yanchunis has exhibited the ability to work cooperatively with others, including both co-counsel and opposing counsel.

      iii.    Mr. Yanchunis and his colleagues at Morgan & Morgan have access to the resources necessary to efficiently and timely prosecute this litigation.

Mr. Yanchunis leads the National Consumer Class Action and False Claims Act sections of Morgan & Morgan's Complex Litigation Group. Morgan & Morgan is among the largest exclusively plaintiffs law firms in the country, employing approximately 300 lawyers and 1,500

support staff who serve consumers in 25 offices in Georgia, Florida, Mississippi, Kentucky, Tennessee, New Jersey, and New York. Morgan & Morgan lawyers have played pivotal roles in shaping class-action jurisprudence across the country. While Morgan & Morgan's Complex Litigation Group draws its expertise from fifteen attorneys supported by skilled paralegals, retired FBI agents who work in the department as investigators, and state-of-the-art technology, the Group benefits from the vast experience, commitment, and resources of the entire firm. In particular, one of the Group's four former FBI agents—who was the agent in charge of the FBI's investigation of ENRON and who retired from senior management with the Bureau—leads the investigation team of the Group. These investigators, who have investigated cyber-crime during their respective careers in the FBI, are unique assets available to the prosecution efforts of the firm and will play an important role in the factual investigation of this case.

Mr. Yanchunis and his law firm are fully and unequivocally committed to this action. Morgan & Morgan has the necessary financial resources and legal experience to equalize the playing field in pursuit of justice for its clients, and to prosecute this action to a successful conclusion. The attorneys of Morgan & Morgan's Complex Litigation Group have extensive experience in national class action, mass tort, and False Claims Act litigation, and have played an integral role in litigating data-breach class actions nationwide. These cumulative resources, knowledge, skill, and experience are necessary to effectively and efficiently litigate this matter. The formidable resources of Morgan & Morgan, combined with Mr. Yanchunis's pledge of time and energy, his proven track record for working professionally and collaboratively with his peers, and his substantial privacy and data-breach litigation experience, will allow him to ably serve, personally and actively, as Co-Lead Counsel in this action. Additional details regarding Mr. Yanchunis and Morgan & Morgan's qualifications are attached as Exhibit C.

### 3. Counsel have committed and will continue to commit the resources necessary to fully protect the interests of the class.

The final 23(g)(1) factor, which concerns the resources that counsel will commit to the case, Fed. R. Civ. P. 23(g)(1)(A)(iv), also strongly supports appointment here. As set forth above, the attorneys seeking appointment are from law firms that possess and consistently devote the resources and personnel necessary to vigorously pursue complex cases. *See supra*, § III.B. Given the proposed structure for appointment, these resources will be pooled effectively in this case, allowing Plaintiffs and the proposed class to benefit from a well-financed and resourced group committed to achieving success in this litigation. Each of the attorneys seeking appointment fully understands the investment of time and resources necessary to properly pursue and lead this action. Their firms have made—and are fully committed to continuing to make—the necessary investment here.

### 4. Interim lead counsels' responsibilities.

If appointed, and consistent with the *Manual for Complex Litigation, Fourth*, §§ 10.221 and 40.22, Proposed Interim Counsel will be generally responsible for the overall conduct of the litigation on behalf of the putative class and will have the following specific responsibilities:

     i.    To determine and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of Plaintiffs and putative class members on all matters arising during pretrial proceedings;

     ii.    To coordinate the initiation and conduct of discovery on behalf of Plaintiffs and putative class members, consistent with the requirements of Fed. R. Civ. P. 26(b)(1), 26(b)(2), and 26(g), including the preparation of joint interrogatories and requests for the production of documents and the examination of witnesses in depositions;

     iii.    To conduct settlement negotiations on behalf of Plaintiffs and putative class members, and, where appropriate, to present any proposed settlements to the Court on behalf of putative class members;

iv.     To delegate specific tasks to other counsel, in a manner designed to ensure that pretrial preparation for Plaintiffs and the putative class is conducted efficiently and effectively;

v.     To enter into stipulations with opposing counsel as necessary for the conduct of the litigation;

vi.     To prepare and distribute status reports to any other law firms that might seek to represent the putative class;

vii.     To maintain adequate time and disbursement records covering services;

viii.     To monitor the activities of any other law firms that might seek to represent putative class members to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

ix.     To perform such other duties as may be incidental to the proper prosecution and coordination of pretrial activities on behalf of Plaintiffs and the putative class or authorized by further order of this Court.

Proposed Interim Lead Counsel are fully capable of undertaking the above tasks.

### C.     Appointment of Liaison Counsel Edward A. Wallace

In addition to the appointment of lead counsel, Plaintiffs respectfully request the appointment of Edward A. Wallace of Wexler Wallace LLP as liaison counsel. *See Manual for Complex Litigation, Fourth*, § 10.221. Liaison counsel will be tasked with ensuring the efficient prosecution of the case by centralizing communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. *Id.*

Mr. Wallace is a partner of Wexler Wallace LLP, a nationally-recognized leading firm in complex class litigation and multidistrict litigation. He has been recognized as an Illinois Super Lawyer and has an AV Preeminent rating from Martindale-Hubbell—the highest peer review rating. Attorneys at the firm have been appointed to numerous leadership positions in class

23

action cases across the country, where they have successfully settled numerous matters or tried those cases to verdict. For example, while serving on the Plaintiffs' Steering Committee, Mr. Wallace tried a bellwether case in a multi-district litigation involving a defective medical device to a $3.27 million verdict for an individual plaintiff, and defended that verdict in post-trial motions. *Jo Huskey, et al. v. Ethicon, Inc.*, No. 12-cv-05201 (S.D.W.Va.).

Mr. Wallace is well suited to serve in this capacity as he has litigated scores of cases in this District, is familiar with the local rules of this Court, and has served in this capacity before in other cases in this District, including in *In re: Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 1:14-cv-05696, Dkt. No. 113 (N.D. Ill. June 25, 2015). Additional detail regarding Mr. Wallace's qualifications, as well as the numerous other cases in which he has been appointed lead or liaison counsel is attached as Exhibit D.

Liaison Counsel will have the following specific responsibilities:

    i.     To maintain a current Master Service List of counsel of record;

    ii.     To maintain and distribute to Plaintiffs' counsel and to Defendants' Counsel an up-to-date service list as to Plaintiffs;

    iii.     To file and serve on behalf of plaintiffs those filings relative to the master docket of the litigation; and,

    iv.     To otherwise serve the Court and the parties in the efficient prosecution of this litigation.

**D.**     **Appointment of Plaintiffs' Steering Committee**

Finally, Plaintiffs propose the appointment of a Plaintiffs' Steering Committee consisting of members of three law firms in addition to Proposed Interim Counsel, each of which represents the plaintiffs in the *Tittle*, *Dashnau*, and *Giron* actions. Consistent with the *Manual for Complex Litigation*, § 40.22, these members will be called to "consult with plaintiffs' lead and liaison

counsel in coordinating the plaintiffs' pretrial activities and in planning for trial." And here, each

is well-qualified to contribute to the successful prosecution of the VTech Actions.

### 1. Cari Campen Laufenberg

Cari Campen Laufenberg is a partner in Keller Rohrback's nationally recognized

Complex Litigation Group, and has more than 12 years of experience successfully representing

consumers and employees in class action cases nationwide. With 70 attorneys, the firm

frequently serves as lead counsel or in a leadership position in some of the most prominent, high-

stakes class action cases. Examples of Keller Rohrback's prominent cases include:

- *In re the Exxon Valdez*, No. 89-00095 (D. Alaska). Keller Rohrback represented classes of fishermen, Alaska natives, municipalities, and other injured plaintiffs in this lawsuit arising out of the 1989 oil spill in Prince William Sound Alaska. After serving as trial counsel during the four and a half month jury trial arising out of the 1989 oil spill in Prince William Sound, Alaska, plaintiffs obtained a judgment in excess of $5 billion in punitive damages—at the time the largest punitive damages verdict in U.S. history.

- *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Products Liab. Litig.*, MDL No. 1203 (E.D. Pa.). Keller Rohrback represented a certified medical monitoring class of Washington patients who ingested fen-phen diet pills and was appointed to serve as a member of the MDL 1203 Plaintiffs' State Liaison Counsel Committee by the federal judge who supervised the litigation and national $3.57 billion settlement.

- *In re Enron Corp. ERISA Litig.*, No. 01-3913 (S.D. Tex.) Keller Rohrback represented Enron employees' retirement plans that held large quantities of Enron stock in this employment benefits litigation arising out of the notorious Enron scandal that resulted in the largest bankruptcy reorganization in American history at that time. Keller Rohrback served as co-lead counsel in this employment benefits class action, achieving four partial settlements totaling more than $264 million in cash to the Enron employee retirement plans against Enron directors, officers and plan fiduciaries.

- *In re JPMorgan Chase Mortgage Modification Litig.*, MDL No. 2290 (D. Mass.). Keller Rohrback represented homeowners who attempted to obtain mortgage loan modifications from JPMorgan Chase following the financial crisis and real estate crash. Keller Rohrback served as co-lead counsel in this class action consumer protection case, which was resolved in May 2014 with a court-approved settlement valued at over $500 million.

Moreover, Keller Rohrback has extensive experience and leadership in data breach class

action litigation. Six years ago, when data breach law was in its infancy, Keller Rohrback

pursued an employee data breach case through appeal to the Ninth Circuit and obtained a groundbreaking standing decision that remains black letter law in the Ninth Circuit today. *Krottner v. Starbucks*, 628 F.3d 1139 (9th Cir. 2010). Additionally, Keller Rohrback, with Ms. Laufenberg at the helm, serves as co-lead counsel team in *Corona, et al. v. Sony Pictures Entertainment, Inc.*, No. 14-9600 (C.D. Cal.), a case involving the theft of the medical, financial and employee benefit data for thousands of current and former employees. Ms. Laufenberg and her co-counsel successfully survived Defendant's motion to dismiss and reached a settlement of the matter which is currently pending approval.

Ms. Laufenberg also represents named plaintiffs in *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (D. Minn.); *In re: Anthem, Inc. Customer Data Sec. Breach Litig.*, MDL No. 2617 (N.D. Cal.); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592 (C.D. Cal.); *Fero, et al. v. Excellus Health Plan Inc., et al.*, No. 6:15-cv-6569 (W.D.N.Y.); and *In re Medical Informatics Engineering, Inc., Customer Data Sec. Breach Litig.*, MDL No. 2667 (N.D. Ind.).

Additionally, Ms. Laufenberg has served as one of the chief plaintiffs' counsel in numerous consumer and ERISA breach of fiduciary duty cases, including as a key member of the litigation team in fiduciary litigation against an insurer that resulted in a $90 million settlement, in *Ormond v. Anthem, Inc.*, No. 05-1908 (S.D. Ind.); and as part of the firm's leadership role in securing a $35 million settlement for violation of ERISA against *In re Marsh ERISA Litig.*, No. 04-8157 (S.D.N.Y.), as well as *Alvidres v. Countrywide Fin. Corp.*, No. 07-5810 (C.D. Cal.); *In re The Goodyear Tire & Rubber Co. ERISA Litig.*, No. 03-2180 (N.D. Ohio); *In re HealthSouth Corp. ERISA Litigation*, No. 03-784 (N.D. Ala.); and *In re Williams Companies ERISA Litig.*, No. 02-153 (N.D. Okla.).

Keller Rohrback is uniquely positioned to help lead this complex consolidated case because it routinely advances unsettled law through data breach, employment benefit and consumer class action opinions nationwide and has the human and financial resources to innovatively, effectively, and efficiently manage and successfully resolve this matter. Additional details regarding Ms. Laufenberg and Keller Rohrback's qualifications are attached as Exhibit E.

### 2. Christopher S. Hinton

Christopher S. Hinton is an attorney admitted to the bar of the State of New York, and is counsel with The Rosen Law Firm, which is dedicated to complex class action litigation. The Firm has served as counsel to plaintiffs in numerous actions arising from the breach of consumer databases and the violation of consumer protection statutes, including *Irwin v. Jimmy John's Franchise, LLC, et al.,* No. 2:14-cv-02275-HAB-DGB (C.D. Ill. Nov. 6, 2014) (sole counsel to proposed class arising from breach of consumer database; motion to dismiss amended complaint outstanding); *In re Ashley Madison Customer Data Security Breach Litig.*, No. 15-md-2669 (E.D. Mo. 2015) (member of proposed steering committee overseeing litigation concerning the breach of consumer database and violation of consumer protection statutes in connection with an online services website); *Wang v. OCZ Technology Group, Inc.,* No. 11-cv-01415-PSG (N.D. Cal. March 24, 2011) (sole counsel to proposed class arising from the misrepresentation of the characteristics of a consumer product; settled after motion to dismiss was denied); *In re: The Home Depot, Inc., Customer Data Security Breach Litig.,* No. 1:14-md-02583-TWT (N.D. Ga.) (represents numerous named plaintiffs and proposed class representatives in data breach action; motion to dismiss pending); *Cullifer v. Superfish, Inc. et al.,* 15-cv-1496 (N.D. Cal. April 1, 2015) (represents numerous plaintiffs in action arising from the installation of adware onto Lenovo laptops).

The Rosen Law Firm has also served as lead and co-lead counsel to plaintiffs in numerous class actions arising from the violation of federal securities laws and/or common law fiduciary duties. According to a report for the year 2014 conducted by the Institutional Shareholder Services (ISS) examining the top 50 firms that served as lead or co-lead counsel in securities class actions, The Rosen Law Firm settled the second largest number of securities class actions (19 actions settled) and was ranked 19 among the 50 for the total amount recovered ($40.2 million).[7]

Mr. Hinton has focused on class action litigation, and more specifically, securities and consumer class action litigation since becoming a member of the plaintiffs' bar in 2003. During this time, he has served as counsel to plaintiffs in numerous actions arising from the breach of consumer databases and the violation of consumer protection statutes. He is willing and able to serve on the steering committee in this litigation. Additional detail concerning his qualifications are set out in Exhibit F.

### 3. Nancy A. Kulesa

Nancy A. Kulesa is of counsel at Levi & Korsinsky LLP, a national law firm with extensive experience in national class action litigation. Levi & Korsinsky has routinely been appointed lead counsel in significant multi-million dollar securities class actions in courts across the country. For example, it was selected from a crowded field as co-lead counsel in *E*TRADE Financial Corp. Sec. Litig.*, No. 07-cv-8538 (S.D.N.Y. 2007), a landmark securities fraud class action that arose out of the mortgage crisis. Their successful prosecution of the case resulted in a

---

[7] *See* http://www.issgovernance.com/file/publications/iss-securities-class-action-services-top-50-for-2014.pdf (visited January 21, 2016).

$79 million recovery for the shareholder class. Levi & Korsinsky has also been appointed to serve in leadership in the following litigation matters involving class actions or product liability:

- *Hyatt v. Vivint Solar Inc.*, 1:14-cv-09283 (S.D.N.Y) (November 21, 2014);

- *Fialkov v. Alcobra Ltd.*, 1:14-cv-09906 (S.D.N.Y) (December 16, 2014);

- *In re Energy Recovery Inc. Securities Litigation*, 3:15-cv-00265 (N.D. Cal.) (January 20, 2015);

- *In Re Ocean Power Technologies, Inc. Sec. Litig.*, 14-3799 (FLW) (LHG) (D. N.J.) (March 17, 2015);

- *In re China Commercial Credit Securities Litigation*, Civil Action No. 1:15-cv-00557 (ALC) (October 31, 2014);

- *Stevens v. Quiksilver Inc., et al.*, 8:15-cv-00516-JVS-JCGx. (C.D. Cal.) (June 26, 2015);

- *Fragala v. 500.com Ltd. et al.*, 2:15-cv-01463-MMM (C.D. Cal.) (July 7, 2015);

- *Zaghianv v. THQ, Inc.*, 2:12-cv-05227-GAF-JEM (C.D. Cal. Sept. 14, 2012);

- *In re OCZ Technology Group, Inc. Securities Litigation*, 3:12-cv-05265-RS (N.D. Cal. Jan. 4, 2013);

- *Berry v. Kior, Inc.*, 4:13-cv-02443 (S.D. Tex. Nov. 25, 2013); and

- *In re NJOY, Inc. Consumer Class Action Litigation,* Case No. CV 14-00428-MMM (C.D. Cal) (April 15, 2014).

As set forth in the attached Exhibit G, Ms. Kulesa and her colleagues at Levi & Korsinsky LLP have the requisite resources to aid the team that will prosecute this litigation and will commit every resource required to enable this Court to expeditiously move the class action through discovery.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order consolidating the VTech Actions and appointing Jay Edelson of Edelson PC, Jason Lichtman of Lieff Cabraser Heimann & Berman, LLP, and John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Interim Co-Lead Counsel; Edward A. Wallace of Wexler Wallace

LLP as Liaison Counsel; and Cari Campen Laufenberg of Keller Rohrback L.L.P., Christopher

S. Hinton of The Rosen Law Firm, P.A., and Nancy A. Kulesa of Levi & Korsinsky LLP as

members of a Plaintiffs' Steering Committee.

Dated: February 3, 2016                    Respectfully submitted,


                                           By: /s/ Edward A. Wallace

                                           Edward A. Wallace
                                           *Proposed Interim Liaison Counsel*
                                           Amy E. Keller
                                           Tyler J. Story
                                           **WEXLER WALLACE LLP**
                                           55 W. Monroe Street, Suite 3300
                                           Chicago, IL 60603
                                           312.346.2222
                                           *eaw@wexlerwallace.com*
                                           *aek@wexlerwallace.com*
                                           *tjs@wexlerwallace.com*

                                           Jay Edelson
                                           *Proposed Interim Co-Lead Counsel*
                                           **EDELSON PC**
                                           350 N LaSalle Street
                                           Chicago, IL 60654
                                           312.589.6370
                                           *jedelson@edelson.com*

                                           Jason L. Lichtman
                                           *Proposed Interim Co-Lead Counsel*
                                           **LIEFF CABRASER HEIMANN &
                                           BERNSTEIN, LLP**
                                           250 Hudson Street, 8th Floor
                                           New York, NY 10013
                                           212.355.9500
                                           *jlichtman@lchb.com*

                                           Michael W. Sobol
                                           **LIEFF CABRASER HEIMANN &
                                           BERNSTEIN, LLP**
                                           275 Battery Street
                                           San Francisco, CA 94111
                                           415.956.1000
                                           *msobol@lchb.com*

John A. Yanchunis
*Proposed Interim Co-Lead Counsel*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
813.223.5505
*jyanchunis@forthepeople.com*

Cari Campen Laufenberg
*Proposed Member of Plaintiffs' Steering Committee*
**KELLER ROHRBACK LLP**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
206.623.1900
*claufenberg@kellerrohrback.com*

Christopher S. Hinton
*Proposed Member of Plaintiffs' Steering Committee*
**THE HINTON LAW FIRM**
275 Madison Avenue, 34th Floor
New York, NY 10016
646.723.3377
*chinton@hintonlegal.com*

Nancy A. Kulesa
*Proposed Member of Plaintiffs' Steering Committee*
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, NY 10004
212.363.7500
*nkulesa@zlk.com*

*Counsel for Plaintiffs and the Putative Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Edward A. Wallace, hereby certify that a copy of the foregoing was filed using this

Court's CM/ECF service, which will send notification of such filing to all counsel of record on

February 3, 2016.


By:   /s/ Edward A. Wallace
                Edward A. Wallace