**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **In re VTech Data Breach Litigation** | Master Case No. 15-cv-10889 |
| | Consolidated Case Nos. 15-cv-10889, 15-cv-10891, 15-cv-11280, 15-cv-11620, 15-cv-11885 |
| This document relates to all actions | |
| | The Honorable Manish S. Shah |

**CONSOLIDATED AMENDED COMPLAINT**

**TABLE OF CONTENTS**

FACTUAL ALLEGATIONS ................................................................................ 1

    A.    VTech's Learning Lodge Products and Kid Connect Products. ............................. 3

    B.    Parents and children provide a significant amount of personal information to VTech............................................................................................................... 5

    C.    Customers paid VTech for, and reasonably expected, industry-standard data security, but VTech failed to deliver this security and a hacker thus accessed Customers' sensitive personal information.................................................. 6

        1.    The Data Breach compromised the personal data of 4.8 million adults and 6.3 million children. .................................................................. 8

        2.    VTech's data security system was not what it was represented to be and was woefully inadequate. ......................................................... 10

        3.    VTech's response to the breach was slow and inadequate. .......................... 12

        4.    The Data Breach caused serious long-term consequences for VTech Customers. ................................................................................ 14

PARTIES ......................................................................................................... 18

    The Adult Plaintiffs......................................................................................... 18

        Plaintiff Herber Bran ................................................................................. 18

        Plaintiff Sharon Dashnau ........................................................................... 19

        Plaintiff Sean Foyle................................................................................... 20

        Plaintiff Fredy Giron ................................................................................. 21

        Plaintiff Mari Hawkins .............................................................................. 22

        Plaintiff Dominique Reese.......................................................................... 23

        Plaintiff Ken Tittle ................................................................................... 23

    The Child Plaintiffs......................................................................................... 27

        John Does No. 1-9, by their Parents ............................................................ 27

        Jane Does No. 1-5, by their Parents ............................................................ 28

    Defendant VTech Holdings Limited.................................................................... 29

    Defendant VTech Electronics Limited ................................................................ 30

    Defendant VTech Electronics North America, L.L.C. ............................................ 30

**JURISDICTION AND VENUE** ............................................................................ 31

**CHOICE OF LAW** ............................................................................................... 32

**CLASS ACTION ALLEGATIONS** ..................................................................... 32

**CAUSES OF ACTION** ......................................................................................... 35

    FIRST CAUSE OF ACTION: BREACH OF CONTRACT ............................................ 35

    SECOND CAUSE OF ACTION: BREACH OF THE IMPLIED COVENANT
    OF GOOD FAITH AND FAIR DEALING IN CONTRACT .......................................... 38

    THIRD CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY ............................................................................................... 39

    FOURTH CAUSE OF ACTION: VIOLATION OF ILLINOIS CONSUMER
    FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT .......................................... 43

    FIFTH CAUSE OF ACTION: DECLARATORY JUDGMENT .................................... 49

**PRAYER FOR RELIEF** ....................................................................................... 51

**JURY TRIAL DEMANDED** ................................................................................ 52

Plaintiffs Herber Bran, Sharon Dashnau, Sean Foyle, Fredy Giron, Mari Hawkins, Dominique Reese, Ken Tittle, and Courtney VanWormer (the "Adult Plaintiffs") bring this action on behalf of themselves, their minor children John Does 1-9 and Jane Does 1-5 (the "Child Plaintiffs") (collectively the "Plaintiffs"), and the classes described herein against defendants VTech Electronics North America, LLC, VTech Holdings, Ltd., and VTech Electronics, Ltd. (collectively, "Defendants" or "VTech") because VTech's wrongful acts and omissions, including its failure to maintain basic security measures, compromised their—and millions of other individuals'—sensitive personally identifiable information.

## FACTUAL ALLEGATIONS

1.      This case concerns VTech's failure to secure the sensitive personal information of millions of customers and users of VTech's digital learning toys—including the names, photographs, and physical addresses of millions of minor children—in contravention of VTech's express promises and obligations to keep the information secure.  As a result, Plaintiffs and the other members of the proposed classes in this case have had their sensitive information and privacy compromised, increasing their risk of identity theft and other harm, and now have VTech products that are worth significantly less than what VTech promised.

2.      VTech is the leading manufacturer and distributor of digital learning toys for preschool and grade school children.  VTech's learning toys include tablets, smartwatches, and multi-functional handheld touch learning systems.

3.      The functionality of certain of VTech's toys relies in significant part on an online application store, known as the "Learning Lodge" where users can access product features and download content such as educational games ("Learning Lodge Products" or "VTech Products"). Some of the Learning Lodge Products, called the "InnoTab" line, also use an online system called "Kid Connect," which allows parents (using non-VTech cell phones) and children (using

1

an "InnoTab") to communicate (the "Kid Connect Products"). Collectively, Learning Lodge and Kid Connect are referred to collectively as the "Online Services."

4. On or about November 14, 2015, a hacker infiltrated VTech's computer systems, accessing and downloading the sensitive, non-public personally identifiable information ("PII") of more than ten million parents, guardians, and minor children ("VTech Customers" or "Customers") provided in connection with the Online Services (the "Data Breach"). Among the PII taken in the Data Breach were the names, photographs, birthdates, and physical addresses of minors. This Data Breach is the fourth-largest known consumer data breach and the largest involving information about minors.

5. VTech's failure to take reasonable steps to secure the PII ran directly contrary to its express promise, in its consumer contracts, to secure PII. Among other things, VTech's consumer contracts specifically provided that: (1) VTech would use secure encryption; and (2) VTech would not store PII in a place where that PII could be accessed from the Internet. In fact, VTech did *not* use secure encryption, and the PII *was* accessible from the Internet: this is how the hacker was able to access and download it. VTech left its databases containing PII vulnerable to what is known as a Structured Query Language ("SQL") "injection attack," which exploits "the very first type of flaw that should be eliminated from any Web application."

6. Apparently recognizing that it did not keep the PII secure as promised, on November 29, 2015, VTech suspended access to its Online Services. Its Kid Connect service remains disabled to this day and some models of VTech Products still cannot access the Learning Lodge.[1]

_____

[1] Following VTech's suspension of Online Services, none of VTech's Learning Lodge Products could access the Learning Lodge until January 23, 2016.

**A.  VTech's Learning Lodge Products and Kid Connect Products.**

7.  As indicated above, VTech designs, manufactures, and sells electronic learning and entertainment products for children (including preschoolers), many of which are Learning Lodge Products.  The Learning Lodge Products include the following 34 products: (a) Kidizoom Smartwatch; (b) Kidizoom Smartwatch DX; (c) InnoTab; (d) InnoTab 2; (e) InnoTab 2S; (f) InnoTab 2 Baby; (g) InnoTab 3; (h) InnoTab 3S; (i) InnoTab 3 Baby; (j) Kidizoom Camera Connect; (k) MobiGo Touch Learning System; (l) MobiGo 2; (m) Cody The Smart Cub (n) Cara The Smart Cub; (o) Lil' SmartTop; (p) Tote & Go Laptop WEB; (q) V.Reader Interactive E-Reading System; (r) ABC Learning Classroom; (s) InnoTV; (t) InnoTab Max; (u) KidiGo; (v) DigiGo; (w) Snuggle & Sleep Musical Sheep; (x) Kidizoom Smart Watch Plus; (y) Kidizoom Action Cam; (z) Kidizoom Camera Connect; (aa) Kidizoom Connect; (bb) Kidizoom Twist Plus; (cc) Kidizoom Touch; (dd) Power Xtra Laptop; (ee) Secret Safe Diary Visual; and (ff) Secret Safe Diary Selfie.

8.  VTech marketed the Learning Lodge Products' access to the Learning Lodge as an important feature of the Learning Lodge Products.  Indeed, the Learning Lodge Products are useful, valuable, and priced at a premium in part due to their ability to access the Learning Lodge.

9.  VTech maintained software and hardware updates behind the Learning Lodge registration "wall."  In other words, VTech effectively required that all Customers provide VTech with PII, even if a Customer purchased only the physical device and physical cartridges.

10.  The Learning Lodge serves as a portal through which consumers could purchase and download software for use with the Learning Lodge Products, such as learning programs or games.  In VTech's words: the Learning Lodge "is VTech's easy-to-use download manager" that, upon registration of "your child's toy," consumers can use to "access a library of more than 350

3

downloads including – Games – e-books – Music – Videos – Customization, and – Bonus Content."[2]

11.      The Learning Lodge serves as the gateway to distribute and install updates for the operating system software of the Learning Lodge Products as well as updates to previously purchased and installed applications, including those that were purchased in the form of a physical cartridge.  In fact, physical cartridges routinely require Customers to install updates from the Learning Lodge before the application contained on the cartridge will work.

12.      The Learning Lodge supports features of certain applications.  For example, certain products upload usage metrics using the Learning Lodge for a given application "to track your child's learning progress and see how they are improving."[3]

13.      The functions of the Learning Lodge Products are diverse.  The products range from cameras that encourage children to take pictures and upload them online (the Kidizoom Camera line of products), to digital tablets that provide an array of uses including interactive learning and video gaming (the InnoTab line of products), to multi-functional smartwatches that include cameras, educational software and motion sensors (the Kidizoom Smartwatch line of products) to stuffed animals marketed as interactive "learning companions" (Cara the Smart Cub; Cody the Smart Cub).

14.      VTech segments its product lines, giving the products varying capabilities and prices.  One product line within the Learning Lodge Products that also supports additional

---

[2] Welcome to the Learning Lodge Archived Website,
https://web.archive.org/web/20150111003136/http://www.vtechda.com/downloadpage/index.html?, (Jan. 11, 2015) (archive of VTech website located at http://www.vtechda.com/downloadpage/index.html?) (last visited Feb. 22, 2016).

[3] *Id.*

interactive features and uses, not available on lower-priced models, is the "InnoTab" line of tablets. In addition to providing access to the Learning Lodge, these tablets also support the Kid Connect service. These tablets (the Kid Connect Products) include the (a) InnoTab 3S; (b) InnoTab 3S Plus; and (c) InnoTab Max.

        15.    Kid Connect is an online communications platform through which parents and their children can communicate using Kid Connect Products and (non-VTech) cell phones. The Kid Connect service is offered in two variations. The standard Kid Connect service operates through an application included with the purchase of a Kid Connect Product and enables the Kid Connect Product to send and receive text messages to and from cell phones or other Kid Connect Products. V-Tech also offers for an additional price of between $14.99 to $19.99, an app that enables the "Premium Kid Connect" service. In addition to the standard messaging function, the "Premium Kid Connect" service also allows the Kid Connect Products to transmit photographs, "stickers," voice messages, and access a group "bulletin board." Both Kid Connect services operate through the use of an app that captures data from the Kid Connect Product that then transmits (or receives) the captured data to the intended recipient via servers operated and controlled by VTech. To use any Kid Connect service, users must agree to any licensing and/or terms of services agreements required by VTech. Access to Kid Connect is the primary benefit that users obtain by paying a premium for an InnoTab product rather than purchasing one of VTech's less expensive products.

**B.     Parents and children provide a significant amount of personal information to VTech.**

        16.    To use the Online Services, Customers must register for online accounts and provide PII to VTech. In particular, Customers must provide their names, home addresses, email addresses, and passwords. VTech requires this information so that it can "identify the customer,

market [its] content and track [customer] downloads."[4]  Customers must also provide VTech with credit or debit card information to purchase VTech apps through its online services, and VTech requires Customers to provide this information upon registration.

17.     Once a parent has activated his or her account, a child then creates a profile of his or her own by providing VTech with his or her name, password, date of birth, gender, and photographs.

18.     VTech links information about parents with information about children in its databases.  Thus, every child's physical address is linked to his or her name and/or picture.

19.     Given the highly sensitive nature of the information VTech requires from its Customers, keeping this information secure and private is critical to ensure children's safety.

**C.     Customers paid VTech for, and reasonably expected, industry-standard data security, but VTech failed to deliver this security and a hacker thus accessed Customers' sensitive personal information.**

20.     When Customers purchase a VTech Product, they do not merely purchase a physical object (e.g., a tablet).  Rather, VTech Customers purchase an indivisible bundle or ecosystem of goods and services that comes with a guarantee and expectation of privacy and security.

21.     VTech Customers paid a premium in exchange for VTech's promise to safeguard their PII using industry-standard data security practices.

22.     VTech specifically promised to protect the Customers' PII.  In VTech's terms and conditions (the "Terms"), to which all of VTech's Customers must affirmatively agree in order to use the VTech Products, VTech expressly promises to keep data secure, emphasizing that VTech will "protect [parents' and children's] privacy and personal information" and to "use[]

---

[4] FAQ About Cyber Attack on Learning Lodge (Feb. 3, 2016),
https://www.vtech.com/en/press_release/2016/faq-about-cyber-attack-on-vtech-learning-lodge/
(last accessed Feb. 23, 2016).

reasonable precautions to keep [their] personal information secure." Further, VTech's Privacy

Policy—which, at the time of the Data Breach, was incorporated into its Terms—explicitly and

affirmatively promised its Customers that VTech would keep PII in a place inaccessible to the

Internet:

> The security of your personal information is important to VTech, and VTech is committed to handling your information carefully. In most cases, if you submit your PII to VTech directly through the Web Services it will be transmitted encrypted to protect your privacy using HTTPS encryption technology. **Any Registration Data submitted in conjunction with encrypted PII will also be transmitted encrypted. Further, VTech stores your PII and Registration Data in a database that is not accessible over the Internet.**
>
>         *        *        *
>
> [Unless otherwise stated in the Privacy Policy, a]ny information we collect from you about your children is treated and handled in the same manner as the information we collect about you.[5]

       23.     VTech thus expressly promised to only transmit information in an encrypted

format and to store PII somewhere it would not be accessible from the Internet. More broadly,

VTech expressly and impliedly promised to keep Customers' PII secure, and VTech assumed a

duty to implement standard security practices. VTech, moreover, knew or should have known

that consumers in the market for "kid-friendly" Internet-connected tablets expected such security

whether or not VTech expressly promised it.

       24.     What VTech promised was significantly more valuable than what it actually

provided. Similarly, the market price for the product that VTech promised is substantially higher

---

[5] VTech Privacy Policy § 5.1, Transmission and Storage of Your Information (previously available at www.vtechkids.com, archived website available at https://web.archive.org/web/20150905054406/http://www.vtechkids.com/privacy_policy/) (emphasis added). VTech altered its Privacy Policy after the Data Breach. Notably, the Privacy Policy no longer guarantees that the databases on which the PII is housed are not accessible over the Internet. *See* https://www.vtechkids.com/privacy_policy (last visited Feb. 22, 2016).

than the market price for the product it actually provided. Had VTech Customers known the truth about VTech's inadequate data security systems (and that this inadequate security would ultimately mean that they could not access the Online Services on an extended basis and, in some cases, an on-going basis), they would have paid less for their purchased products or they would not have purchased them at all. Because of VTech's failure to deliver what it promised, VTech Customers did not receive the benefit of their bargain when they purchased the Learning Lodge Products.

**1.     The Data Breach compromised the personal data of 4.8 million adults and 6.3 million children.**

25.     On November 14, 2015, an unauthorized third-party hacked into VTech's app-store database, exposing over 11 million accounts, comprising 4.8 million adults and 6.3 million related child profiles. Among the 6.3 million related child profiles, 1.2 million had enabled Kid Connect. VTech confirmed that an "unauthorized party accessed VTech customer data."[6]

26.     In a statement released a few days later, VTech informed Customers that the information obtained by the unauthorized third-party included parents' names, email addresses, secret questions and password retrieval answers.[7] VTech revealed that the database also included information about children, including their names, genders, and birthdates, which are

---

[6] Data Breach on VTech Learning Lodge Archived Website, https://web.archive.org/web/20151202234412/http://www.vtech.com/en/press_release/2015/statement/ (Dec. 2, 2015) (archive of https://www.vtech.com/en/press_release/2015/statement/) (last visited Feb. 22, 2016).

[7] FAQ about Data Breach on VTech Learning Lodge Archived Website, https://web.archive.org/web/20151211023331/http://www.vtech.com/en/press_release/2015/statement/ (Dec. 11, 2015) (archive of https://www.vtech.com/en/press_release/2015/faq-about-data-breach-on-vtech-learning-lodge/) (last visited Feb. 22, 2016).

readily associated with parent information, children's profile photos, Kid Connect messages, chat logs between children and their parents, and bulletin board postings.[8]

27. On December 3, 2015, VTech disclosed the extent of the Data Breach on its website, stating that the following types of personal information had been compromised:

- Parent account information, including name, email address, secret question and answer for password retrieval, IP address, mailing address, download history and encrypted password;

- Kid profiles including name, genders and birthdates;

- Encrypted Learning Lodge's contents, including Kid Connect profile photos, undelivered Kid Connect messages, bulletin board postings, and Learning Lodge content (e-books, apps, games etc.); and

- Sales report logs.[9]

28. The parent-child messages obtained in the breach included messages written by children which were intended to be non-public, including, for example: "Roses are red vilets [sic] are blue and I love you. Mommy and daddy," and "You are my HERO!Daddy! 100 percent!"

29. The compromised database also contained audio recordings of conversations (i.e., between parents, trusted adults, and children), IP addresses and download histories, and Kid Connect contact lists. Further, because the Kid Connect contact lists link child accounts together, the data provides even more insight into VTech Customers' personal lives. According to the hacker, "I can get a random Kid Connect account, look through the [data] dump, link them to their circle of friends, and the parent who registered at Learning Lodge." Similarly, "I have the

---

[8] *Id.*

[9] *Id.*

personal information of the parent and the profile pictures, emails, passwords, and nicknames . . . of everyone in their Kid Connect contacts list."[10]

## 2. VTech's data security system was not what it was represented to be and was woefully inadequate.

30. VTech's databases were, in its own words, "not as secure as [they] should have been."

31. VTech's data security was not consistent with its Terms and Privacy Policy, much less with industry standards. Major flaws in VTech's security practices created an unreasonable risk that hackers could access VTech Customers' PII without authorization.

32. Because an unauthorized third-party was able to gain access to VTech's database through its website, VTech's statement that it "stores [Customers'] PII and Registration Data in a database that is not accessible over the Internet" is patently false.

33. VTech's claim that it would always use encryption to transmit Customers' data was also false. More broadly, VTech's system simply was not secure by any reasonable security standards. In a blog post discussing the data breach, for example, a security expert named Troy Hunt declared that VTech demonstrated a "total lack of care [] in securing [Customers'] data. It's taken me not much more than a cursory review of publicly observable behaviours to identify serious shortcomings that not only appear as though they could be easily exploited, evidently have been." Mr. Hunt explained that passwords could be cracked "in next to no time," and that VTech failed to use even basic encryption to transmit information such as "passwords, parent's

---

[10] Lorenzo Franceschi-Bicchierai, *Hacker Obtained Children's Headshots and Chatlogs From Toymaker VTech*, Vice Motherboard (Nov. 30, 2015), http://motherboard.vice.com/read/hacker-obtained-childrens-headshots-and-chatlogs-from-toymaker-vtech.

details, and [PII] about kids[.]"[11]  Mr. Hunt clarified that because all data transmitted to or from

VTech's web pages—including passwords—is unprotected in transit, "you don't even need a

data breach" for the PII to be intercepted and accessed by unauthorized third parties.[12]

34.     Lorenzo Franceschi-Bicchierai—the journalist who initially broke the story about

the VTech Data Breach—reported that VTech appeared to have "left thousands of pictures of

parents and kids and a year's worth of chat logs stored online in a way easily accessible to

hackers."[13]

35.     Troy Hunt further explained that VTech's website makes "extensive use of Flash,"

which is "increasingly frowned upon in the security space" because of its "continuous stream of

security vulnerabilities."  VTech's website has been described as a "system[] from a bygone era,"

such that there is "the distinct sense VTech's assets were created a long time ago and then just . . .

left there."[14]

36.     VTech's so-called data security practices were nothing more than a litany of

elementary data security errors.  Even the hacker commented: "Frankly, it makes me sick that I

was able to get all this stuff.  VTech should have the book thrown at them."[15]

---

[11] Troy Hunt, *When children are breached – inside the massive VTech hack*, TroyHunt.com
(Nov. 28, 2015), http://www.troyhunt.com/2015/11/when-children-are-breached-inside.html.

[12] Troy Hunt, *No, VTech cannot simply absolve itself of security responsibility*, TroyHunt.com
(Feb. 9, 2016), http://www.troyhunt.com/2016/02/no-vtech-cannot-simply-absolve-itself.html.

[13] Lorenzo Franceschi-Bicchierai, *Hacker Obtained Children's Headshots and Chatlogs From
Toymaker VTech*, Vice Motherboard (Nov. 30, 2015), http://motherboard.vice.com/read/hacker-
obtained-childrens-headshots-and-chatlogs-from-toymaker-vtech.

[14] Troy Hunt, *When children are breached – inside the massive VTech hack*, TroyHunt.com
(Nov. 28, 2015), http://www.troyhunt.com/2015/11/when-children-are-breached-inside.html.

[15] Zack Whittaker, *VTech hack gets worse: Chat logs, kids' photos taken in breach*, ZDNet.com
(Nov. 30, 2015), http://www.zdnet.com/article/vtech-hack-gets-worse-kids-photos-chat-logs-
also-stolen/.

**3.    VTech's response to the breach was slow and inadequate.**

37.    VTech failed to detect the unauthorized access to its database until it was

contacted by Motherboard, a news organization investigating the story, on November 23, 2015.

VTech responded to Motherboard on Thursday, November 26, confirming that "an unauthorized

party accessed VTech customer data," and that VTech was "not aware of this unauthorized

access until [Motherboard] alerted [them]."[16]

38.    Although it had actual knowledge of the Data Breach, which affected its

Customers uniformly, VTech waited four days to notify Customers of the Data Breach.  On

November 27, 2015, VTech announced the Data Breach by press release, but failed to disclose

its severity (including, for example, the number of records that were accessed or the fact that the

PII of minor children was compromised).  The press release indicated that the Data Breach was

limited to the Learning Lodge, but, in reality, it also extended to Kid Connect.  Moreover, VTech

failed to inform Customers that the Data Breach involved PII for more than 10 million VTech

Customers, or that the PII included that of children.  In this regard, VTech left their Customers in

the dark about the scope of the Data Breach, how the Data Breach impacted Customers, and what

steps VTech would take to remedy or mitigate the Data Breach.

39.    On November 30, 2015, VTech issued an updated press release on the Data

Breach, but still failed to provide accurate information regarding the scope of the Data Breach

and the type of PII that the unauthorized third-party had accessed, including that the Data Breach

compromised children's PII.

---

[16] *Hacked toymaker VTech admits breach actually hit 6.3 million children*, Vice Motherboard
(Dec. 1, 2015), http://motherboard.vice.com/read/hacked-toymaker-vtech-admits-breach-
actually-hit-63-million-children.

40.     VTech knew that the Data Breach compromised the PII of its Customers—both adults and children—and knew the scope of the Data Breach, as well as its own violation of the terms of the agreements it had with its Customers.  However, VTech downplayed the significance of the Data Breach.  Although VTech did not learn about the Data Breach until days after it happened, VTech nonetheless decided to wait an additional four days to notify VTech Customers.  But even when VTech eventually notified customers of the Data Breach, it failed to adequately inform them about the true nature and scope of the PII that had been compromised. Security expert Alan Woodward explained the urgency of informing parents of the Data Breach, stating that VTech should be "alerting the parents as soon as possible, with particular emphasis on how their children might be approached using this type of data."[17]  VTech, instead, took its time, thus increasing the risk of harm to the VTech Customers whose PII was compromised.

41.     Furthermore, rather than work with parents to allow them to mitigate their damages and change their passwords quickly to avoid further incident, VTech unilaterally decided to suspend access to its Learning Lodge and Kid Connect services and 13 other affiliated websites.  Not only did VTech's actions prevent Customers from taking the necessary steps to avoid further injury caused by the Data Breach, they also prevented the Plaintiffs and class members from accessing products and services that they paid to use—demonstrating that an insecure product is in many ways worse than no product at all.

---

[17] Joe Kleinman, *Children's electronic toy maker Vtech hacked*, BBC (Nov. 27, 2015), http://www.bbc.com/news/technology-34944140.

42.     Even now, and "despite [VTech's] assurances that their system is now secure," Troy Hunt writes that VTech "still [has] gaping holes that allow every kid to be matched with every parent."  "The flaws are fundamental," and "there's no simple fix."[18]

43.     VTech has updated its Terms in an attempt to place all risks associated with its substandard data security system squarely on its Customers and, in turn, to absolve itself of any responsibility to protect Customers' PII.  Under the subheading "Limitation of Liability," VTech asks its Customers to now "acknowledge and agree that any information you send or receive during your use of the site may not be secure and may be intercepted or later acquired by unauthorized parties."[19]

44.     Because VTech has failed to take the necessary steps to upgrade its data security system to a level commensurate with that outlined in its Privacy Policy, the VTech Products purchased by VTech Customers remain less valuable than represented by VTech.

45.     VTech's ongoing failure to adequately safeguard Customers' PII and its refusal to accept responsibility for its conduct is even more egregious because the compromised data concerns children.

**4.      The Data Breach caused serious long-term consequences for VTech Customers.**

46.     VTech's acts and omissions have placed Customers at serious risk of fraud and identity theft and, in the worst case, harm to young children. Because the breach of children's

_____

[18] Cory Doctorow, *Bad toy security led to massive toy maker hack that leaked data for 4.8 million families*, Boing Boing (Nov. 27, 2015), http://boingboing.net/2015/11/27/vtech-breach-dumps-4-8m-famili.html.

[19] Troy Hunt, *No, VTech cannot simply absolve itself of security responsibility*, TroyHunt.com (Feb. 9, 2016), http://www.troyhunt.com/2016/02/no-vtech-cannot-simply-absolve-itself.html.

data presents many risks in itself, VTech should have gone to great lengths to protect Customer PII from unauthorized access.

47.     The PII obtained in the Data Breach is valuable.  According to security expert Justin Harvey, each stolen account is worth between $1 and $4 in the underground market.[20] Because more than 11 million accounts were compromised, the value of the data obtained by the unauthorized third-party may range from $11 million to $44 million.  And, as the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."

48.     VTech Customers may have or will become victims of identity theft due to the breadth of the PII accessed in the breach.  In its 2014 Identity Fraud Study, Javelin Strategy & Research reported that "[d]ata breaches are the greatest risk factor for identity fraud."  And, "[i]n 2013, one in three consumers who received notification of a data breach became a victim of fraud."[21]  Javelin also found increased instances of fraud other than credit card fraud, including compromised internet accounts—e.g., eBay and Amazon—and email payment accounts such as PayPal.  And here, because the PII compromised in the Data Breach included passwords as well as secret questions and answers, third-parties may access or reset the passwords of other online accounts linked to the email addresses contained in VTech's databases.

---

[20] Joseph Garcia, *VTech Cyber Attack: Governments to scrutinize firm over its security policies*, Northern Californian (Dec. 3, 2015), http://northerncalifornian.com/content/55055-vtech-cyber-attack-governments-scrutinize-firm-over-its-security-policies.

[21] *A New Identity Fraud Victim Every Two Seconds in 2013 According to Latest Javelin Strategy & Research Study* , Reuters (Feb. 5. 2014), http://www.reuters.com/article/ca-javelin-strategy-idUSnBw055037a+100+BSW20140205.

49.     The information compromised in the Data Breach is linked to additional extensive information about the minor children, including their age, gender, and facial and vocal characteristics, which places these VTech Customers at increased risk of exposure to criminal acts of child predators.  As one security expert observed, "people who prey on children—now have the ability to get basic information about them—where they live, what they look like," cautioning that "this lapse of security" would potentially allow such predators to gain the trust of children whose information was compromised.[22] Another security expert has expressed similar concerns: "When [the data] includes their parents as well—along with their home address—and you can link the two and emphatically say 'Here is 9 year old Mary, I know where she lives and I have other personally identifiable information about her parents (including their password and security question),' I start to run out of superlatives to even describe how bad that is."[23]

50.     No reasonable person would share his or her PII with a company without the expectation that the shared data be secure.  Customers who shared their PII—and the PII of their children—expected that their data would be protected and not accessed by unauthorized third parties.  Since the Data Breach, parents have expressed anger and frustration that their PII—and, more importantly, their children's PII—has been compromised.  As one parent stated, she "was

---

[22] Nicole Bogart, *Kids' data is valuable too: Children at risk of identity theft following VTech hack*, Global News (Dec. 2, 2015), http://globalnews.ca/news/2375499/kids-data-is-valuable-too-children-at-risk-of-identity-theft-following-vtech-hack.

[23] Charles Morris, *More than 200,000 kids just got hacked, UPDATED*, Fortune (Nov. 30, 2015), http://fortune.com/2015/11/30/vtech-hacking-children-data/.

surprised and shocked to see my data breached on a 'child friendly' website," while another asked "[i]f you can't trust a company like that, then who can you trust with your information?"[24]

51.     VTech maintains that it believes that the compromised data was not disseminated by the hacker to any third party beyond the journalists who covered the Data Breach; however, VTech has been unable to substantiate how it knows that the data was not accessible from the journalists' computers or that it was not accessed by other hackers.

52.     As such, VTech Customers will have to remain vigilant for years—on their own behalves and on behalf of their children—to monitor and combat the unauthorized use of their PII. Despite their best efforts, the PII compromised in the Data Breach will never be private again.

53.     As a result of VTech's conduct, Customers paid substantially more than they would have had they known that VTech's outdated data security system left their PII vulnerable to access by unauthorized third-parties. Because consumers place significant value in data privacy and security, they are willing to pay higher prices for products that implement stringent security measures. Had VTech Customers known about VTech's sub-standard security practices—including VTech's non-conformance with its own representations—they would not have purchased the VTech Products or would have paid less for the items they did purchase.

54.     VTech's derogation of its duty to adequately safeguard Customers' PII allowed the Data Breach to occur. While VTech's failure to implement reasonable security standards provided it with short-term, fleeting benefits in the form of costs savings, VTech Customers have been placed at serious and ongoing risk of personal and economic harm.

---

[24] Lorenzo Franceschi-Bicchierai, *One of the Largest Hacks Yet Exposes Data on Thousands of Kids*, Vice Motherboard (Nov. 27, 2015),http://motherboard.vice.com/read/one-of-the-largest-hacks-yet-exposes-data-on-hundreds-of-thousands-of-kids.

## PARTIES

### The Adult Plaintiffs

**Plaintiff Herber Bran**

55.     Plaintiff Herber Bran is a citizen of the Commonwealth of Massachusetts and a resident of Lawrence, Massachusetts.

56.     Mr. Bran purchased a VTech InnoTab Learning Tablet for his child in late 2014. Mr. Bran established accounts on both The Learning Lodge and Kid Connect for himself and his child pursuant to VTech's instructions.  VTech required Mr. Bran to share PII when he created those accounts.  This PII was stored on VTech's servers.  Because of VTech's express and implied representations, Mr. Bran reasonably believed that his PII and his child's PII would be secure.

57.     When turned on, the InnoTab Learning Tablet was always connected to the Internet through Mr. Bran's wireless network.  Mr. Bran's child used the InnoTab and shopped for and purchased applications offered for sale by the VTech.  During that same time, Mr. Bran accessed and interacted with the VTech website by downloading and paying for applications offered for sale by VTech.

58.     Mr. Bran is worried about the security of his PII and his child's PII as a result of the Data Breach.

59.     Mr. Bran paid for VTech Products and services, which did not live up to VTech's representations of security.

60.     As a result of VTech's actions, Mr. Bran's child was unable to use bargained-for services through the Learning Lodge, because VTech decided to unilaterally disrupt this service.

61. Had Mr. Bran known of the security flaws in the VTech Products and services, he would not have purchased (or would have paid significantly less for) InnoTab and related VTech Products.

**Plaintiff Sharon Dashnau**

62. Plaintiff Sharon Dashnau is a citizen of the State of New York and a resident of Wurtsdoro, New York.

63. In or around November 2013, Ms. Dashnau purchased an InnoTab 3S for her child's use. Ms. Dashnau established accounts on both The Learning Lodge and Kid Connect for herself and her child pursuant to VTech's instructions. VTech required Ms. Dashnau to share PII when she created those accounts. This PII was stored on VTech's servers. Because of VTech's express and implied representations, Ms. Dashnau reasonably believed that her PII and her child's PII would be secure.

64. The InnoTab device connected to Ms. Dashnau's wireless network to receive updates and use other functions (such as downloading apps).

65. Ms. Dashnau became aware of the Data Breach when the Learning Lodge's service was suspended, and her child was unable to use certain applications on the InnoTab device.

66. Ms. Dashnau is worried about the security of her PII and her child's PII as a result of the Data Breach.

67. Ms. Dashnau paid for VTech Products and services, which did not live up to VTech's representations of security.

68. As a result of VTech's actions after the breach, Ms. Dashnau's child was unable to use bargained-for services available through the Learning Lodge.

69.     Had Ms. Dashnau known of the security flaws in the VTech Products and services, she would not have purchased (or would have paid significantly less for) the InnoTab device and related VTech Products.

**Plaintiff Sean Foyle**

70.     Plaintiff Sean Foyle is a citizen of the State of Illinois, and a resident of Chicago, Illinois.

71.     In January 2015, Mr. Foyle purchased a VTech InnoTab Max for his child's use. Mr. Foyle established accounts on both The Learning Lodge and Kid Connect for himself and his child pursuant to VTech's instructions.  VTech required Mr. Foyle to share PII when he created these accounts.  This PII was stored on VTech's servers.  Because of VTech's express and implied representations, Mr. Foyle reasonably believed that his PII and his child's PII would be secure.

72.     When turned on, the InnoTab Max connected to the Internet through Mr. Foyle's wireless network.  Mr. Foyle became aware of the Data Breach from an e-mail sent to VTech Customers informing them of the breach.

73.     When Mr. Foyle received the e-mail informing him of the breach, he responded to VTech expressing his frustration with VTech's outdated and insufficient security measures that would result in his and his child's PII being compromised.

74.     After the Data Breach, Mr. Foyle's child was unable to use certain features of the InnoTab Max because VTech shut down the Learning Lodge.  On February 4, 2016, Mr. Foyle was informed that VTech had restored functionality to the Learning Lodge.

75.     Mr. Foyle is worried about the security of his PII and his child's PII as a result of the Data Breach.

76.     Mr. Foyle paid for VTech Products and services which did not live up to VTech's representations of security.

77.     As a result of VTech's actions after the breach, Mr. Foyle's child was unable to use bargained-for services available through the Learning Lodge.

78.     Had Mr. Foyle known of the security flaws in the VTech Products and services, he would not have purchased (or would have paid significantly less for) the InnoTab Max and related VTech Products.

**Plaintiff Fredy Giron**

79.     Plaintiff Fredy Giron is a citizen of the State of Texas and a resident of Irving, Texas.

80.     In or around October 2015, Mr. Giron purchased a VTech Smartwatch DX.  Mr. Giron established accounts (for himself and his child) on both The Learning Lodge and Kid Connect pursuant to VTech's instructions.  VTech required Mr. Giron to share PII when he created those accounts.  This PII was stored on VTech's servers.  Because of VTech's express and implied representations, Mr. Giron reasonably believed that his PII and his child's PII would be secure.

81.     Mr. Giron connected the VTech Smartwatch to his personal computer in order to receive updates and to use the watch's other functions.  During that same time, Mr. Giron accessed and interacted with the VTech website by downloading and paying for applications offered for sale by VTech.  He provided his credit card information in order to complete these purchases.  Mr. Giron became aware of the Data Breach when the VTech Smartwatch was unable to access Kid Connect and the Learning Lodge, and he was unable to update the Smartwatch's firmware, upload photos, download apps (both free and those requiring payment by credit card), or monitor his child's daily activity.

82.     Mr. Giron's child was unable to upload photos or download updates because VTech unilaterally shut down the Learning Lodge after the Data Breach.

83.     Mr. Giron is worried about the security of his PII and his child's PII as a result of the Data Breach.

84.     Mr. Giron paid for VTech Products and services which did not live up to VTech's representations of security.

85.     As a result of VTech's actions after the breach, Mr. Giron's child was unable to use bargained-for services available through the Learning Lodge.

86.     Had Mr. Giron known of the security flaws in the VTech Products and services, he would not have purchased (or would have paid significantly less for) the VTech Smartwatch and related VTech Products.

**Plaintiff Mari Hawkins**

87.     Plaintiff Mari Hawkins is a citizen of the State of California, and a resident of Ladera Ranch, California.

88.     Ms. Hawkins purchased numerous VTech Products for her three children to use, including one InnoTab 3 in 2012, one InnoTab 3 Plus in 2013, and one InnoTab 3S in October 2014.  Ms. Hawkins also purchased two Kidizoom Cameras, one Kidizoom Smartwatch, two MobiGo Touch Learning Systems, two MobiGo 2 Systems, and a Kid Pro Camera.  Ms. Hawkins established accounts on both The Learning Lodge and Kid Connect for herself and her children pursuant to VTech's instructions.  As a result of creating those accounts, Ms. Hawkins shared PII with VTech.  This PII was stored on VTech's servers.  Because of VTech's express and implied representations, Ms. Hawkins reasonably believed that her and her children's PII would be secure.

89.     When turned on, the VTech Products were always connected to the Internet through Ms. Hawkins' wireless network.  Ms. Hawkins's children used the devices and shopped for and purchased applications offered for sale by VTech.  During that same time, Ms. Hawkins accessed and interacted with the VTech website by downloading and paying for applications offered for sale by VTech.

90.     Ms. Hawkins is worried about the security of her PII and her children's PII as a result of the Data Breach.

91.     Ms. Hawkins paid for VTech Products and services which did not live up to VTech's representations of security.

92.     As a result of VTech's actions after the breach, Ms. Hawkins' children were unable to use bargained-for services through the Learning Lodge, because VTech decided to unilaterally disrupt service.

93.     Had Ms. Hawkins known of the security flaws in the VTech Products and services, she would not have purchased (or would have paid significantly less for) the VTech Products and related VTech Products.

**Plaintiff Dominique Reese**

94.     Plaintiff Dominique Reese is a citizen of the State of Georgia, and a resident of Newnan, Georgia.

95.     Ms. Reese purchased an InnoTab 3S in or around December 2013, an InnoTab Max in or around December 2014, and another InnoTab Max in or around November 2015, along with several cartridges and applications for those products.  Ms. Reese established accounts on both The Learning Lodge and Kid Connect for herself and her children pursuant to the VTech's instructions.  VTech required Ms. Reese to share PII when she created those accounts.  This PII was stored on VTech's servers.  Because of VTech's express and implied

23

representations, Ms. Reese reasonably believed that her PII and her children's PII would be secure.

96.     When turned on, the InnoTab 3S and InnoTab Max were always connected to the Internet through Ms. Reese's wireless network.  Ms. Reese accessed and interacted with the VTech website by downloading and paying for applications offered for sale by VTech.

97.     Ms. Reese called VTech's customer service number when she became aware of the breach on or about November 29, 2015, and sent an e-mail to VTech on or about December 16, 2015, regarding her frustration with VTech and the breach that compromised her and her children's PII.

98.     Ms. Reese is worried about the security of her PII and her children's PII as a result of the Data Breach.

99.     Ms. Reese paid for VTech Products and services which did not live up to VTech's representations of security.

100.    As a result of VTech's actions after the breach, Ms. Reese's children were unable to use bargained-for services through the Learning Lodge, because VTech decided to unilaterally disrupt service.

101.    Had Ms. Reese known of the security flaws in the VTech Products and services, she would not have purchased (or would have paid significantly less for) the InnoTabs and related VTech Products.

**Plaintiff Ken Tittle**

102.    Plaintiff Ken Tittle is a citizen of the State of Washington and a resident of Bellevue, Washington.

24

103.     In late 2012, Mr. Tittle purchased a VTech InnoTab 2 for his son.  Mr. Tittle purchased several cartridges for use with the VTech InnoTab 2.

104.     In March 2014, Mr. Tittle purchased two VTech InnoTab 3S tablets for his son and daughter.  Subsequent to his purchase of the InnoTab 3S, Mr. Tittle purchased approximately 15 cartridges to use with the InnoTab 3S, along with several applications (including the Premium Kid Connect App, which allowed for additional functionality over the standard Kid Connect service). Mr. Tittle established accounts on both The Learning Lodge and Kid Connect for himself and his children pursuant to VTech's instructions.  As a result of creating those accounts, Mr. Tittle shared PII with VTech.  This PII was stored on VTech's servers.  Because of VTech's express and implied representations, Mr. Tittle reasonably believed that his PII, his wife's and his children's PII would be secure.

105.     When turned on, the VTech Products were always connected to the Internet through Mr. Tittle's wireless network.  Mr. Tittle's children used the devices and shopped for and purchased applications offered for sale by VTech.  During that same time, Mr. Tittle accessed and interacted with the VTech website by downloading and paying for applications offered for sale by VTech.

106.     Mr. Tittle and his children routinely utilized the Kid Connect service by sending messages and pictures between one another utilizing the InnoTab 3S tablets and the Kid Connect cellular phone app.  As of February 23, 2016, the Kid Connect service had not been restored.

107.     Mr. Tittle e-mailed VTech after learning of the breach on or about November 28, 2015, inquiring about the scope of the breach (including by asking whether his or his children's PII were compromised) and notifying VTech that it did not appear that VTech had reported the incident to the United States Computer Emergency Readiness Team (CERT).  Mr. Tittle further

communicated with VTech via e-mail on November 30, 2015 after receiving an unsatisfactory response from VTech to his initial e-mail.

108.    Mr. Tittle is worried about the security of his, his wife's and his children's PII as a result of the Data Breach.

109.    Mr. Tittle paid for VTech Products and services which did not live up to VTech's representations of security.

110.    As a result of VTech's actions after the breach, Mr. Tittle's children were unable to use bargained-for services through the Learning Lodge, because VTech decided to unilaterally disrupt service.

111.    Had Mr. Tittle known of the security flaws in the VTech Products and services, he would not have purchased (or would have paid significantly less for) the VTech Products and related VTech Products.

**Plaintiff Courtney VanWormer**

112.    Plaintiff Courtney VanWormer is a citizen of the State of California and a resident of El Cajon, California.

113.    In or around September or October 2015, Mr. VanWormer purchased a VTech InnoTVs for his children, along with several cartridges to use over the next few months.  Mr. VanWormer established accounts on The Learning Lodge for himself and his children pursuant to VTech's instructions.  VTech required Mr. VanWormer to share PII when he created those accounts.  This PII was stored on VTech's servers.  Because of VTech's express and implied representations, Mr. VanWormer reasonably believed that his PII and his children's PII would be secure.

26

114. When turned on, the VTech Products were always connected to the Internet through Mr. VanWormer's wireless network. In December 2015, Mr. VanWormer became aware of the Data Breach when his children attempted to use their InnoTVs and were unable to.

115. On or around November 28, 2015, Mr. VanWormer e-mailed VTech via its customer comment form concerning the data breach.

116. Mr. VanWormer's children were unable to use the additional features of the InnoTVs because VTech shut down the Learning Lodge. As of February 15, 2016, the Learning Lodge's features had not been restored for the InnoTVs. In or around January 2016, Mr. VanWormer e-mailed VTech to inquire about how to get the Learning Lodge services restored to the InnoTVs. To date, Mr. VanWormer's children are still unable to access the Learning Lodge on the InnoTVs.

117. Mr. VanWormer is worried about the security of his PII and his children's PII as a result of the Data Breach.

118. Mr. VanWormer paid for VTech Products and services which did not live up to VTech's representations of security.

119. As a result of VTech's actions after the breach, Mr. VanWormer's children are still unable to use bargained-for services available through the Learning Lodge.

120. Had Mr. VanWormer known of the security flaws in the VTech Products and services, he would not have purchased (or would have paid significantly less for) the InnoTVs and related VTech Products.

**The Child Plaintiffs**

**John Does No. 1-9, by their Parents**

121. Plaintiffs John Does No. 1-9 are citizens and residents of the following states:

      A. California;

        B.      Georgia;

        C.      Illinois;

        D.      Massachusetts;

        E.      New York; and

        F.      Washington.

122.    Plaintiffs John Does' parents are Named Plaintiffs in this lawsuit, and each will pursue his/ her lawsuit on his/her own behalf and on behalf of his/her respective child or children.

123.    Plaintiffs John Does' sensitive and personal data—including names, birthdates, photographs, and gender—was compromised because VTech's substandard security measures allowed it to be exposed.

124.    As a result of VTech's actions, Plaintiffs John Does suffered and will continue to suffer damages.

**Jane Does No. 1-5, by their Parents**

125.    Plaintiffs Jane Does No. 1-5 are minor children, and citizen and residents of the following states:

        A.      California;

        B.      Georgia;

        C.      Texas; and

        D.      Washington.

126.    Plaintiffs Jane Does' parents are Named Plaintiffs in this lawsuit, and each will pursue this lawsuit on his/her own behalf and on behalf of his her child or children.

127.    Plaintiffs Jane Does' sensitive and personal data—including names, birthdates, photographs, and gender—was compromised because VTech's substandard security measures allowed it to be exposed.

128.    As a result of VTech's actions, Plaintiffs Jane Does suffered and will continue to suffer damages.

**Defendant VTech Holdings Limited**

129.    Defendant VTech Holdings Limited ("VTech Holdings") is a company registered under the laws of Bermuda with its headquarters located at 23/F, Tai Ping Industrial Centre, Block 1, 57 Ting Kok Road, Tai Po, New Territories, Hong Kong, China.  It reports revenues of approximately two billion dollars a year, and one of its largest markets is the United States.

130.    In order to use its products, VTech Holdings requires parents to register their and their children's PII on various services—including the Learning Lodge and Kid Connect—and represented to VTech Customers that it stored this data on servers which were inaccessible to the Internet.  VTech Holdings also represented that it kept PII secure.  VTech Holdings made these representations directly to VTech Consumers via its websites.

131.    VTech Holdings takes responsibility for the safety and security of the Learning Lodge Products.[25]

132.    After the Data Breach, VTech Holdings represented that:

> VTech Holdings Limited noted that an unauthorized party accessed VTech customer data housed on our Learning Lodge app store database on 14 November 2015. Learning Lodge allows our customers to download apps, learning games, e-books and other educational content to their VTech products.
>
> Upon discovering the unauthorized access on 24 November 2015, we immediately conducted a thorough investigation, which involved a comprehensive check of the affected site and

---

[25] *Toymaker VTech hires Mandiant to secure systems after cyber attack*, Reuters (Dec. 3, 2015), http://www.reuters.com/article/vtech-cyberattack-fireeye-idUSL3N13S48G20151203 (indicating that after the breach, VTech Holdings hired a security firm to improve its data security).

implementation of measures to defend against any further attacks.[26]

133.    By virtue of its direct contact with its consumers, representations to VTech Customers that it would keep data on its servers safe, and continued involvement and communications with its Customers regarding the Data Breach, this Court has personal jurisdiction over VTech Holdings in this lawsuit.

**Defendant VTech Electronics Limited**

134.    VTech Electronics Limited ("VTech Electronics") is a Hong Kong company with its principal place of business at 23/F Block 1-Tai Ping Ind Centre, 57 Ting Kok Road, Tai Po, Hong Kong, China.  It is a wholly owned subsidiary of VTech Holdings.

135.    Upon information and belief, VTech Electronics designs and manufactures the products at issue in this case.

136.    Upon information and belief, the products at issue in this case are specifically intended for sale in the United States, as indicated by the fact that VTech Electronics shipped approximately one million of its products to the United States.

137.    On information and belief, VTech Electronics maintains and is responsible for the servers that store Customers' PII.

**Defendant VTech Electronics North America, L.L.C.**

138.    Defendant VTech Electronics North America, L.L.C. is a limited liability company organized under Illinois law with its headquarters located at 1156 West Shure Drive, Suite 200, Arlington Heights, Illinois 60004.  It is a wholly owned subsidiary of VTech Electronics Limited.

---

[26] Data Breach on VTech Learning Lodge (Update) (Nov. 30, 2015), https://www.vtech.com/en/press_release/2015/data-breach-on-vtech-learning-lodge-update.

139.     VTech Electronics North America, L.L.C. markets, distributes, and sells the Learning Lodge Products throughout the United States.

## JURISDICTION AND VENUE

140.     Subject matter jurisdiction is proper because this case has been brought as a class action, the aggregate claims of the proposed class exceeds $5 million, exclusive of interest and costs, the proposed class includes more than 100 members, and one or more of the members of the proposed class resides in a state that is different from a state in which at least one of the Defendants resides. *See* 28 U.S.C. § 1332(d)(2)(A & C).

141.     Personal jurisdiction is proper over VTech Holdings and VTech Electronics because they manufactured the products that are the subject of this litigation and are for sale in this District and because they caused significant injuries in this District based on the conduct at issue in this litigation.  Further, the injuries complained of herein occurred because VTech Holdings and VTech Electronics specifically required Plaintiffs and VTech Customers to provide certain PII in order to use the VTech Products.  Plaintiffs' and class members' information was stored on VTech's servers, and VTech Holdings and VTech Electronics failed to take reasonable and expected measures to keep the PII safe.  Personal jurisdiction is proper over VTech Electronics North America, L.L.C. because it resides in this District and regularly conducts business here.  Personal jurisdiction is also proper because the contract between the parties provides that the exclusive jurisdiction for any dispute is within the District.

142.     Venue is proper because at least one defendant is located and transacts business in this District, a substantial portion of the events and conduct giving rise to the violations complained of in this action occurred in this District, and a substantial portion of the injury from VTech's conduct occurred in this District.  Because VTech Electronics North America, L.L.C.'s headquarters is in this District, efficiencies can be gained by litigating this case here, as

31

documents and evidence—including individuals who may be able to provide deposition testimony—are located within this District. *See* 28 U.S.C. §1391(b)(1&2). Venue is also proper because the contract between the parties provides that the exclusive venue for any dispute is within the District.

## CHOICE OF LAW

143. When consumers register with VTech, VTech requires them to agree to a contract that contains an exclusive choice of law clause selecting Illinois law.[27] Their children are intended third-party beneficiaries of that contract (i.e., the contract governs their children's use of VTech's services). Illinois law thus applies to all claims.

## CLASS ACTION ALLEGATIONS

144. Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of a class and a subclass of similarly situated persons, which they propose be defined as follows:

**Class:** All individuals whose PII was compromised as a result of the data breach publicized in November 2015 and whose VTech Learning Lodge and/or Kid Connect account is linked to a home address in the United States.

**Overcharge Subclass:** All Class members who purchased (i) a VTech Product that connects to Learning Lodge and/or Kid Connect or (ii) products or services from Learning Lodge and/or Kid Connect.

**Child Subclass:** All Class members under the age of 18 at the time of the Data Breach.[28]

---

[27] VTech Privacy Policy, http://www.vtechkids.com/privacy_policy.

[28] Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their staff, as well as members of their families; (b) Defendants, Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as VTech's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and VTech; (f) the legal representatives, successors, and assigns of any such excluded persons; and (g) any individual who participated in or contributed to the unauthorized access of VTech's database.

Plaintiffs may modify these class definitions or create new subclasses based upon the discovery of new information and in order to accommodate any of the Court's manageability concerns.

145.     **Ascertainability.**  The proposed Class and Overcharge Subclass are readily ascertainable because they are defined using objective criteria so as to allow Class members to determine if they are part of the Class.  Indeed, on information and belief, VTech knows the specific identity of all or nearly all Class members.  At a minimum, Class members are readily identifiable through records maintained by VTech.

146.     **Numerosity (Rule 23(a)(1)).**  The proposed Class and Overcharge Subclass are sufficiently numerous, because VTech's actions compromised the PII of millions of individuals in the United States.  These VTech Customers are dispersed throughout the United States, making joinder of all members impracticable.

147.     **Commonality (Rule 23(a)(2)).**  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following:

- Whether VTech had a legal duty to take reasonable and/or specific security measures to protect the PII of Class members;

- Whether VTech failed to take reasonable and/or specific security measures to protect the PII of Class members;

- Whether VTech breached one or more legal duties by failing to protect the PII of Class members;

- Whether VTech's failure to protect the PII of Class members caused injury to Class members;

- Whether VTech timely, accurately, and adequately informed Class members that their PII had been compromised;

- Whether Class members are entitled to actual damages and/or statutory damages;

- Whether Class members are entitled to restitution;

- Whether Class members are entitled to civil penalties and/or punitive damages; and

- Whether Class members are entitled to declaratory and/or injunctive relief.

148. **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of members of the proposed Class and Overcharge Subclass because, among other things, Plaintiffs and members of the Class and Overcharge Subclass sustained similar injuries as a result of VTech's uniform wrongful conduct, and their legal claims all arise from the same events and wrongful conduct by VTech.

149. **Adequacy (Rule 23(a)(4)).** Plaintiffs will fairly and adequately protect the interests of the proposed Class and Overcharge Subclass. Plaintiffs' interests do not conflict with the interests of Class and Overcharge Subclass members, and Plaintiffs have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Class and Overcharge Subclass.

150. **Predominance & Superiority (Rule 23(b)(3)).** In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The

34

amount of damages available to individual Plaintiffs is insufficient to make litigation addressing VTech's conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense that are presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

151.    **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). VTech has acted or refused to act on grounds that apply generally to the proposed Class and Overcharge Subclass, making final declaratory or injunctive relief appropriate with respect to the proposed Class and Overcharge Subclass as a whole.

152.    **Particular Issues (Rule 23(c)(4)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

<u>**CAUSES OF ACTION**</u>

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT**
*The Adult Plaintiffs, individually and on behalf of the Overcharge Subclass*
*The Child Plaintiffs, individually, as Third Party Beneficiaries, on behalf of the Child Subclass*

153.    The Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

154.    In purchasing and using the VTech Products and the Online Services, the Adult Plaintiffs and Overcharge Subclass members entered into valid and enforceable contracts with VTech.

35

155.    The Child Plaintiffs and Child Subclass members were third party beneficiaries of the aforementioned contracts with VTech.

156.    One element of the valuable consideration that VTech agreed to provide to the Adult Plaintiffs and Overcharge Subclass was access to and use of the Online Services without meaningful interruptions.  The Child Plaintiffs and Child Subclass members were also intended to be able to use these Online Services without meaningful interruptions.

157.    Another element of the valuable consideration that VTech agreed to provide to the Adult Plaintiffs and Overcharge Subclass was the implementation of effective and industry-standard security measures for the PII submitted through the Online Services.  The Child Plaintiffs and Child Subclass members were also intended to benefit from security measures to safeguard PII.

158.    Consumers of internet-capable electronic products designed for use by children, including the Adult Plaintiffs and Overcharge Subclass members, value their privacy, the privacy of their children, and the ability to control data that their children access.  To customers like Plaintiffs and Overcharge Subclass members, products and online services that do not use industry-standard data-security protocols to protect PII are fundamentally less useful and valuable than children's products and children's online services that use industry standard security protections.

159.    VTech promised significantly more valuable products and online services than the actual VTech Products and Online Services provided.

160.    The Adult Plaintiffs and Overcharge Subclass members performed their obligations under the contract.  They registered for online accounts with VTech and abided by the terms of service that VTech imposed.  They paid the purchase price for (i) VTech Products,

including for the Learning Lodge Products' ability to securely connect to the Internet and securely utilize certain Online Services, and/or (ii) apps, games, e-books, or other content, which they purchased and downloaded from, or accessed through, VTech's Online Services.

161.    The Child Plaintiffs and Child Subclass members used the VTech Products and VTech's Online Services in a reasonably foreseeable manner and in accordance with all applicable terms.

162.    VTech committed material breaches of its contract with Adult Plaintiffs and Overcharge Subclass members by failing to protect users' PII, by allowing the Data Breach to occur, and by suspending access to the Online Services.

163.    The Data Breach was a reasonably foreseeable consequence of VTech's actions in breach of the foregoing contract.

164.    VTech's failure to protect users' PII rendered the VTech Products materially less valuable than promised.

165.    Had VTech disclosed that their security was inadequate or that it did not use industry-standard security measures, neither the Adult Plaintiffs, Overcharge Subclass members, nor any reasonable person would have purchased the VTech Products or entered any relevant contract with VTech.

166.    Adult Plaintiffs and Overcharge Subclass members suffered actual damages including:

        A.    the difference in the fair market value of the secure products and services that VTech promised and the non-secure products and services they received;

        B.    compensation for the loss of use of VTech's Online Services;

C.    expenses and time spent replacing non-secure VTech Products and services with secure alternative products and services;

D.    harms suffered as a consequence of the Data Breach including anxiety; stress; emotional distress; loss of privacy; expenses and/or time spent on credit monitoring, identity theft insurance, scrutiny of bank statements, credit card statements, credit reports, and initiating fraud alerts; an increased risk of future harm including of decreased credit scores and ratings; and other economic and non-economic losses.

167.    The Child Plaintiffs and Child Subclass members were the intended third party beneficiaries of the contracts between the Adult Plaintiffs and Overcharge Subclass members, and were also damaged by the breach of those agreements.

168.    Accordingly, the Adult Plaintiffs and the Overcharge Subclass are entitled to an order declaring that VTech's conduct constituted one or more material breaches of its contracts with the Adult Plaintiffs and the Overcharge Subclass members and awarding the Adult Plaintiffs and Overcharge Subclass members damages in an amount to be proven at trial.

169.    Further, the Child Plaintiffs and Child Subclass members are entitled to damages in an amount to be proven at trial as a result of the material breaches of the contracts between the Adult Plaintiffs and Overcharge Subclass members on one hand, and VTech on the other.

## SECOND CAUSE OF ACTION: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IN CONTRACT
### *The Adult Plaintiffs, individually and on behalf of the Overcharge Subclass*

170.    The Adult Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

171.    The Adult Plaintiffs and Overcharge Subclass members formed contracts with VTech, as described in the First Cause of Action *supra*.

172.    These contracts contained implied covenants of good faith and fair dealing.

173.    In the absence of reasonable and adequate safeguards for the PII VTech collected, the Adult Plaintiffs and Overcharge Subclass members' contracts with VTech were of substantially diminished value or worthless.

174.    The implied covenants of good faith and fair dealing under the foregoing contracts obligated VTech to provide reasonable and adequate safeguards to maintain the security of the PII it collected.

175.    VTech breached its implied covenants of good faith and fair dealing by failing to provide reasonable and adequate safeguards to maintain the security of the PII it collected.

176.    As a direct and proximate result of these breaches, the Adult Plaintiffs, the Overcharge Subclass members, and others suffered and will continue to suffer injury and/or harm including the injuries and/or harms described in the First Cause of Action *supra*.

177.    Accordingly, the Adult Plaintiffs, on behalf of themselves and the Overcharge Subclass, seek an order declaring that VTech's conduct constituted a breach of the implied covenant of good faith and fair dealing and awarding the Adult Plaintiffs and Overcharge Subclass members damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
*The Adult Plaintiffs, individually and on behalf of the Overcharge Subclass*

178.    The Adult Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

179.    The Adult Plaintiffs and Overcharge Subclass members have and had sufficient direct dealings with VTech and/or their authorized dealers, franchisees, representatives, and agents to establish any required privity of contract.

180. VTech did not intend its authorized dealers, franchisees, representatives, or agents to be the ultimate consumers of the VTech Products and have no rights under the warranty agreements provided with the tablets.

181. Privity is not required to assert this claim, because Adult Plaintiffs and Overcharge Subclass members are intended third party beneficiaries of contracts between VTech and its dealers, franchisees, representatives, and agents.

182. By extending express written warranties to end-users, VTech brought itself into privity of contract with Plaintiffs and Overcharge Subclass members.

183. VTech is and was at all relevant times a manufacturer and merchant with respect to the VTech Products that the Adult Plaintiffs and Overcharge Subclass members purchased.

184. The VTech Products purchased by Adult Plaintiffs and Overcharge Subclass members included access to the Online Services.

185. Adult Plaintiffs and Overcharge Subclass members formed a contract with VTech that contained an implied warranty of merchantability, which obligated and imposed a duty upon VTech that the Learning Lodge Products and the Online Services be fit for the ordinary purposes for which they are to be used, that these devices and Online Services conform to the promises and affirmations of fact made on their containers or labels, and that these devices and Online Services pass without objection in the trade under the contract description.

186. VTech has not validly or effectively disclaimed, excluded, or modified this implied warranty of merchantability, and any attempted disclaimer or exclusion of the implied warranty was and is ineffectual.

187. Adult Plaintiffs and Overcharge Subclass members have used the VTech Products and Online Services that they purchased in a manner consistent with their intended use. Adult

Plaintiffs and Overcharge Subclass members performed each and every duty required under the terms of the implied warranty of merchantability, except as may have been excused or prevented by VTech's conduct or by operation of law in light of unconscionable conduct by VTech.

188.     VTech breached this implied warranty of merchantability, in that their Learning Lodge Products and Online Services were not fit for the ordinary purposes for which they are to be used, did not conform to the promises and affirmations of fact made on their containers or labels, and would not pass without objection in the trade under the contract description, in that (a) VTech failed to provide reasonable and adequate safeguards for the PII it collected from Plaintiffs and Overcharge Subclass members, as evidenced by the Data Breach; (b) VTech's Learning Lodge Products are currently unable to access the Kid Connect online service; and (c) many VTech Products are currently unable to access the Learning Lodge online service.  As to VTech's failure to provide reasonable and adequate safeguards for the PII it collected from Plaintiffs and Overcharge Subclass members, their VTech Products and Online Services were defective at the time Plaintiffs and Class members purchased the VTech Products.  VTech knew or should have known of this defect at that time, but failed to offer an effective remedy to Plaintiffs or Overcharge Subclass members.

189.     VTech had actual knowledge of this breach, as demonstrated by its e-mail to customers in November 2015, informing them of the Data Breach, and several published websites from VTech containing answers to "frequently asked questions" describing the Data Breach and VTech's reaction to the Data Breach.  VTech also had knowledge of the Data Breach from customer communications, including but not limited to communications from Plaintiffs as described herein.  The Data Breach affected all Class members' PII, so that if VTech was aware

41

of a Data Breach affecting one Customer, it was aware of the Data Breach as to all Customers and Class members.

190.     VTech demonstrated its actual knowledge that it had breached its own express promises with Plaintiffs and putative Class members when it changed its Privacy Policy after the Data Breach—deleting language assuring customers that it did not store PII on servers or databases that were Internet-accessible.

191.     As a direct and proximate result of this breach, Plaintiffs and Overcharge Subclass members suffered and will continue to suffer injury and/or harm including, but not limited to, anxiety, stress, emotional distress, loss of privacy, and other economic and non-economic losses.  Looking forward, and recognizing the risks caused by devastating data breaches like this one, Plaintiffs and Overcharge Subclass members will have to incur expenses and/or time spent on credit monitoring and identity theft insurance; to incur time spent scrutinizing bank statements, credit card statements, and credit reports; and to incur expenses and/or time spent initiating fraud alerts.  Plaintiffs and Overcharge Subclass members will also have an increased risk of future harm and of decreased credit scores and ratings.

192.     In addition, Adult Plaintiffs and Overcharge Subclass members suffered actual damages, including an amount equal to the difference in the fair market value of the secure products and services they paid for and the non-secure products and services they received. These damages also include an amount sufficient to compensate for the loss of use of VTech's online services as well as the amount of money spent replacing non-secure VTech Products and services with secure alternative products and services.

193.     Accordingly, Plaintiffs, on behalf of the Class and the Overcharge Subclass, seek an order declaring that VTech's conduct constitutes breach of the implied warranty of

42

merchantability and awarding Adult Plaintiffs and Overcharge Subclass members damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION: VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
*Plaintiffs, individually, and on behalf of the Class*

194.    Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

195.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/1, et seq., protects both consumers and competitors by promoting fair competition in commercial markets for products and services.  Other states have adopted similar state consumer protection laws.  To the extent the Court rules that the choice of law provision discussed herein does not extend to allegations concerning state consumer protection laws, Plaintiffs make these allegations under their own individual state's consumer protection law. The elements of the ICFA do not differ substantially from the elements of the Plaintiffs' individual state consumer protection laws.

196.    The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices, including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

197.    The ICFA applies to VTech's actions and conduct as described herein, because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

198.    VTech are "persons" as defined under section 505/1(c) of the ICFA.

199.    Plaintiffs and each Class member are "consumers" as defined under section 505/1(e) of the ICFA.

200.    VTech's Products that connect to the Learning Lodge and/or Kid Connect and apps, games, e-books, or other content from the Learning Lodge and/or Kid Connect are "merchandise" within the meaning of section 505/1(b), and their sale is considered "trade" or "commerce" under the ICFA.

201.    VTech violated the ICFA by misrepresenting and/or omitting material facts about the Learning Lodge Products, its Online Services, and devices that connect to Learning Lodge and/or Kid Connect.

202.    VTech knew or acted with reckless disregard in not knowing about the numerous, well-publicized data breaches throughout the United States in recent history.  VTech knew or should have known that by collecting and storing the sensitive PII of VTech Customers, they undertook a responsibility to take reasonable security measures to protect the information from being stolen and exposed to unauthorized persons.

203.    PII has value, and VTech knows that PII is valuable based upon its representations to its own Customers—as described herein—that it uses PII to market new products and services to its Customers.  VTech represented that their products and online services would keep secure the PII that it required Plaintiffs and Class members to provide, when in fact it failed to use even the most basic security measures available to protect that information. Likewise, VTech represented that it stored its Customers' PII in offline databases, when it in fact stored Customer PII in databases that were accessible via the Internet.

204.    Despite VTech's representations, their products and services did not live up to the level of safety standards in the United States.  It is well-recognized that services that use the Internet to transmit and store information in databases should be protected from SQL injection attacks, and in fact can be easily protected from such attacks via industry standard defenses and

protocols—either in the network or in the applications themselves—but VTech failed to protect against such attacks.

205.    VTech knew or acted with reckless disregard in not knowing that their database and data repositories were vulnerable to unauthorized access by third parties.  Despite having this knowledge, VTech represented that its products and services were safe, and intended that consumers rely upon their representations and purchase VTech products and services.

206.    Whether or not VTech products and services were secure and had the potential to expose the PII of their customers is a material consideration for potential purchasers and users of VTech's products and services.

207.    Plaintiffs and Class members reasonably relied and would have been reasonable in relying upon VTech's representations concerning the safety of VTech's products and services, and would not have purchased or used VTech's products or services—or provided VTech with their PII for VTech to market their products to the Plaintiffs and Class members—if they knew that their PII would be exposed.  Plaintiffs and Class members were or would have been reasonable in believing that VTech's policies and practices complied with all applicable industry standards and laws.

208.    Even if VTech had not represented that it would safeguard and protect the PII of Plaintiffs and Class members, VTech nevertheless fraudulently concealed the material fact that it failed to adequately safeguard and protect the PII of Plaintiffs and Class members.

209.    Specifically, VTech failed to disclose that it was[29]:

---

[29] David Gilbert, *VTech Takes Learning Lodge Website Offline After Hack Reveals Details Of Over 200,000 Children*, International Business Times (Nov. 30, 2015), http://www.ibtimes.com/vtech-takes-learning-lodge-website-offline-after-hack-reveals-details-over-200000-2203642.

A.      Storing passwords as simple, "unsalted," hashes—a vulnerable hashing algorithm that offers minimal to negligible protection;

B.      Storing secret questions for password and account recovery in plain text;

C.      Linking children's accounts to home addresses and other identifying information;

D.      Failing to use encryption (i.e., SSL) for the transmission of collected data;

E.      Failing to adequately encrypt stored data;

F.      Failing to protect against SQL injection attacks;

G.      Storing customer data in an Internet-accessible database;

H.      Sharing and transmitting collected customer data with one or more unauthorized parties; and

I.      Failing to implement basic user authentication (e.g., by limiting who can gain "root" access).

210.    VTech was aware or should have been aware of its failure to implement adequate security protections, as outlined above.  Despite this failure, VTech represented that its products and services would safely store the PII of Plaintiffs and Class members.  Similarly, VTech misrepresented and/or omitted the material fact that its products and online services, including the Learning Lodge and/or Kid Connect, do not offer adequate security protections, in both VTech's advertising as well as the physical packaging of its devices.

211.    VTech, in creating its advertisements and marketing materials, knew or should have known that Plaintiffs and Class members would rely on the information provided, but nevertheless omitted the material fact that VTech's products and services do not offer adequate security protections.  VTech was aware or should have been aware that, if it prominently

46

disclosed the fact that its products and services do not offer adequate data security protections, it would have to sell the VTech Products at a substantially lower price—if it could sell them at all.

212.    Had VTech not engaged in the misrepresentations and/or deceptive omissions of material facts described above, Plaintiffs and Class members would have been presented with an informed choice as to whether or not to buy VTech Products and/or otherwise provide VTech with their PII to use in its marketing efforts.  Plaintiffs and Class members would also have been presented with the disclosures necessary to modify their and their children's use of VTech Products so as to avoid a breach of their PII.

213.    VTech's failure to implement adequate data security policies and procedures, material misrepresentations and omissions to Plaintiffs and Class members, and failure to promptly and adequately notify Plaintiffs and Class members of the Data Breach constitute unfair, deceptive, and fraudulent acts or practices in violation of the ICFA.  Plaintiffs and Class members would not have purchased VTech Products if VTech had disclosed that their PII would not be secure.

214.    Plaintiffs and Class members were deceived by VTech's misrepresentations and/or omissions regarding its inadequate data security policies and practices.  Plaintiffs and Class members were induced as a result of VTech's unlawful conduct to purchase VTech Products and/or to provide their PII to VTech in registering for and using VTech's online services, including the Learning Lodge and/or Kid Connect.

215.    Plaintiffs and Class members were injured by VTech's conduct, which was directed towards themselves and other consumers.  VTech misrepresented the safety of its products and services and chose not to disclose that their products and services were not secure, because VTech wanted to create demand for and sell these products and services.  Had VTech

disclosed the inadequacy and vulnerability of its security practices, Plaintiffs and Class members either would not have purchased VTech Products, would have paid substantially less for the Learning Lodge Products, or would have never allowed their PII to be collected and used by VTech for economic gain. In this regard, the value of VTech Products without adequate security protections is substantially lower than the value of similar devices with adequate security protections.

216. VTech also committed unlawful, unfair, and deceptive acts by violating the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501, *et seq.* and its associated regulations at 16 C.F.R. § 312.1, *et seq.*, which restrict "the collection, use, and/or disclosure of personal information from and about children on the Internet" and require operators of websites and online services directed to children "to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children." *See* 15 U.S.C. § 6502. VTech's retention and collection policies did not comply with COPPA. VTech, as operator of websites and online services directed to children, failed "to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information" collected from Plaintiffs and Class members, as evidenced by the Data Breach.

217. As a foreseeable, direct, and proximate result of VTech's violation of the ICFA, Plaintiffs and Class members have suffered harms and injuries, including loss of control of their PII; costs incurred as a result of the increased risk of identity theft, such as identity theft and credit monitoring services; monies paid for the Learning Lodge Products and services; and the denial of access to and use of the VTech's online services, including the Learning Lodge and/or Kid Connect. Plaintiffs, on behalf of themselves and the Class, seek an order (a) requiring

VTech to cease the unfair practices described herein; (b) awarding damages and interest in an amount to be proven at trial; (c) awarding reasonable attorneys' fees, expenses, and costs to Plaintiffs and Class members; and/or (d) requiring VTech to restore to Plaintiffs and Class members any monies acquired by means of unfair competition (restitution).

218.     VTech's fraudulent and deceptive acts were the result of VTech's reckless conduct and/or reckless indifference to the interest of others.  Accordingly, an award of punitive damages is appropriate.

219.     In the alternative, if the ICFA does not apply to all claims, each Plaintiff alleged violation under the law of his or her home state.

## FIFTH CAUSE OF ACTION: DECLARATORY JUDGMENT
*Plaintiffs, individually, and on behalf of the Class*

220.     Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

221.     VTech has failed to live up to its obligations to provide reasonable security measures for the PII of Plaintiffs and Class members, as evidenced by the Data Breach that precipitated this lawsuit.  In addition, the Data Breach has rendered VTech's systems even more vulnerable to unauthorized access, requiring that VTech immediately take stringent measures to safeguard the PII that it still possesses going forward.

222.     An actual controversy has arisen in the wake of the Data Breach regarding VTech's current obligations to provide reasonable data security measures to protect the PII of Plaintiffs and Class members.  While VTech has taken Learning Lodge and Kid Connect offline due to its admittedly inadequate data security, VTech has not specified how it intends to satisfy its prospective obligations to better safeguard the PII of Plaintiffs and Class members.  In this regard, the changes made thus far by VTech have failed to address numerous systemic

vulnerabilities in VTech's computer systems and online database. As such, VTech has still not satisfied its legal duties to Plaintiffs and Class members.

223. Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

224. Because VTech continues to collect and store the PII of Plaintiffs and Class members, and will continue to do so in order to provide its products and services, Plaintiffs and Class members will continue to experience harm in the absence of a declaratory judgment, or will otherwise be entirely deprived of the value of VTech's products and services to the extent that these products and services become unusable as intended.

225. Plaintiffs thus seek a declaration that, to comply with its existing obligations, VTech must implement specific additional, prudent industry security practices, as outlined below, to provide reasonable protection and security to the PII of Plaintiffs and Class members, so as to guard against the future exposure of this PII.

226. Specifically, Plaintiffs and Class members seek a declaration that (a) VTech's existing security measures do not comply with contractual and legal obligations, and (b) that to comply with these obligations, VTech must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class, including, but not limited to: (1) engaging third party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on VTech's systems on a periodic basis; (2) engaging third party security auditors and internal personnel to run automated security monitoring, consistent with prudent industry practices; (3) auditing, testing, and training its security personnel regarding any new or modified

50

procedures; (4) purging, deleting and destroying, in a secure manner, customer data not necessary for its business operations; (5) conducting regular database scanning and securing checks consistent with prudent industry practices; (6) periodically conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs as well as what to do in response to a breach, consistent with prudent industry practices; (7) receiving periodic compliance audits by a third party regarding the security of the computer systems VTech uses to store the PII of customers; (8) meaningfully educating Plaintiffs and Class members about the financial, physical, and emotional threats they face from thieves and child predators as a result of the loss of their PII to third parties, as well as the steps they can take to protect themselves; and (9) providing ongoing identity theft protection, monitoring, and recovery services to Plaintiffs and Class members.

## PRAYER FOR RELIEF

227. Plaintiffs, on behalf of themselves and the proposed Class, the Overcharge Subclass, and the Child Subclass, respectfully request that the Court:

A. Certify this case as a class action, appoint Plaintiffs as representatives of the Class, the Overcharge Subclass, and the Child Subclass, and appoint Plaintiffs' counsel to represent the Class and Subclasses;

B. Conclude that VTech breached its duty to safeguard and protect the PII of Plaintiffs and Class members that was compromised in the Data Breach;

C. Conclude that VTech's actions, as described herein, constitute (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) breach of the implied warranty of merchantability;; and (iv) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*

D. Award Plaintiffs, Class members, and Subclass members appropriate relief, including actual and statutory damages, restitution, and disgorgement, in an amount to be determined at trial;

E. Award civil penalties and punitive damages as may be appropriate, in an amount to be determined at trial;

F. Award equitable, injunctive, and declaratory relief as may be appropriate, including an Order which includes (i) prohibiting VTech from engaging in the wrongful and unlawful acts described herein; (ii) requiring VTech to provide Plaintiffs and Class members with identity theft monitoring and protection services; and (iii) requiring VTech to implement and maintain adequate security practices and procedures, in accordance with industry standards, to ensure the security of the PII of Plaintiffs, Class members, and other VTech Customers that is in the possession of VTech;

G. Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action;

H. Award pre-judgment and post-judgment interest, as prescribed by law; and

I. Grant additional legal or equitable relief as this Court may find just and proper.

## **JURY TRIAL DEMANDED**

228. Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 24, 2016

Respectfully submitted,

/s/ Edward A. Wallace

Edward A. Wallace
*Interim Liaison Counsel*
Amy E. Keller
Tyler J. Story
**WEXLER WALLACE LLP**
55 West Monroe Street
Suite 3300
Chicago, Illinois 60603
T.        312.346.2222
eaw@wexlerwallace.com
aek@wexlerwallace.com
tjs@wexlerwallace.com

Jay Edelson
*Interim Co-Lead Counsel*
Rafey Balabanian
Alexander T.H. Nguyen
Benjamin S. Thomassen
**EDELSON PC**
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
T.        312.589.6370
jedelson@edelson.com
rbalabanian@edelson.com
anguyen@edelson.com
bthomassen@edelson.com

Jason L. Lichtman
*Interim Co-Lead Counsel*
**LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
T.        212.355.9500
jlichtman@lchb.com

John A. Yanchunis
*Interim Co-Lead Counsel*
Patrick A. Barthle
**MORGAN & MORGAN, PA**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
T.        813.223.5505
jyanchunis@forthepeople.com
pbarthle@forthepeople.com

53

Cari Campen Laufenberg
    *Plaintiffs' Steering Committee*
Gretchen Freeman Cappio
Amy N. L. Hanson
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
T.     206.623.1900
claufenberg@kellerrohrback.com
gcappio@kellerrohrback.com
ahanson@kellerrohrback.com

Christopher S. Hinton
    *Plaintiffs' Steering Committee*
**THE HINTON LAW FIRM**
275 Madison Avenue, 34th Floor
New York, New York 10016
T.     646.723.3377
chinton@hintonlegal.com

Shannon L. Hopkins
Nancy A. Kulesa
    *Plaintiffs' Steering Committee*
Courtney E. Maccarone
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, New York 10004
T.     212.363.7500
shopkins@zlk.com
nkulesa@zlk.com
cmacarone@zlk.com

*Counsel for Plaintiffs and the Putative Classes*

Michael W. Sobol
Roger N. Heller
**LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
T.     415.956.1000
msobol@lchb.com
rheller@lchb.com

54

Steven W. Teppler
**ABBOTT LAW GROUP P.A.**
2929 Plummer Cove Road
Jacksonville, Florida 32223
T.      904.292.1111
steppler@abbottlawpa.com

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
205 North Michigan Avenue
Suite 2560
Chicago, Illinois 60601
T.      312.233.1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Theodore B. Bell
Carl Malmstrom
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
One Dearborn Street, Suite 2122
Chicago, Illinois 60603
T.      312.984.0000
tbell@whafh.com
malmstrom@whafh.com

Fred T. Isquith, Sr.
Janine L. Pollack
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
T.      212.545.4600
isquith@whafh.com
pollack@whafh.com

Matthew T. Hurst
**HEFFNER HURST**
30 North LaSalle Street, 12th Floor
Chicago, Illinois 60602
T.      312.346.3466
mhurst@heffnerhurst.com

55

Laurence M. Rosen
Phillip Kim
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 34th Floor
New York, New York 10016
T.       212.686.1060
lrosen@rosenlegal.com
pkim@rosenlegal.com

Gregory F. Coleman
**GREG COLEMAN LAW PC**
800 South Gay Street
Suite 1100
Knoxville, Tennessee 37929
T.       865.247.0080
greg@gregcolemanlaw.com

Gary E. Mason
**WHITFIELD BRYSON & MASON LLP**
1625 Massachusetts Ave. NW 605
Washington, D.C. 20036
T.       202.429.2290
gmason@wbmllp.com

*Additional Plaintiffs' Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF service, which will send notification of such filing to all counsel of record in consolidated case number 15-cv-10889 this 24th day of February 2016.

/s/ Edward A. Wallace
Edward A. Wallace
