**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **In re VTech Data Breach Litigation**<br><br>This document relates to all actions. | Master Case No.  15-cv-10889<br><br>Consolidated Case Nos. 15-cv-10889,<br>15-cv-10891, 15-cv-11280,<br>15-cv-11620, 15-cv-11885<br><br>Before the Honorable Manish S. Shah |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
VTECH ELECTRONICS NORTH AMERICA, LLC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT (DKT. 61)**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................... 1

    RELEVANT FACTS ............................................................................. 2

        A.    VTech promised to use particular security measures and otherwise take "reasonable precautions" to secure Plaintiffs' data, but failed to do so. ................................................................................ 2

        B.    VTech promised that the Online Services would actually be available, but it broke that promise as well. .............................. 3

        C.    VTech caused Plaintiffs significant, concrete harm. ................. 4

ARGUMENT .............................................................................................. 5

    I.    Governing legal standard. ....................................................... 5

    II.    Plaintiffs have standing to bring their claims and state valid claims for damages. ........................................................................................ 5

        A.    Plaintiffs' garden-variety breach-of-contract claims are more than sufficient to confer standing. ....................................................... 6

            1.    Plaintiffs have standing because they purchased Toys that were less valuable than the Toys VTech claimed to be selling. ...................................................................... 6

            2.    Plaintiffs also have standing because they allege a cognizable injury flowing from the loss of their personal information. ................................................................... 8

        B.    VTech's arguments regarding standing are off-point. ............ 10

            1.    VTech's cases have almost nothing in common with this litigation. ................................................................... 10

            2.    Data-breach litigation is not an exception to the general rule of *Monsanto*: the risk of real harm is sufficient to confer standing. ......................................................... 11

            3.    Plaintiffs have plausibly alleged that they overpaid for the Toys. ................................................................... 12

        C.    Plaintiffs state valid claims for damages. ............................... 13

    III.    Plaintiffs state claims for breach of express and implied contract. ..................... 13

        A.    VTech was obligated to fulfill its express contractual promises to use appropriate security and provide access to the Online Services. ........ 14

            1.    VTech made numerous, express contractual promises. ............... 14

            2.    Disclaimers cannot render VTech's contractual promises illusory. ................................................................... 15

## TABLE OF CONTENTS
(continued)

Page

a.     VTech was contractually obligated to keep Plaintiffs' information secure. ........................... 15

b.     VTech was obligated to provide the Online Services. ........................................................ 16

c.     VTech's general disclaimers cannot limit VTech's express promises. ........................................... 17

B.     If the express terms of the contract could somehow be read as VTech suggests, the implied covenant of good faith and fair dealing prevents VTech from escaping liability. ..................................... 18

C.     Children may recover for breach of contract. ........................................... 19

IV.     Plaintiffs adequately state claims for breach of the implied warranty of merchantability. ........................................................................ 20

A.     The UCC applies to this action because this is a case about Toys that were less valuable than promised. .................................... 21

B.     Plaintiffs are in constructive privity with VTech. .................................. 22

C.     VTech's purported warranty disclaimer in connection with its Kid Connect services does not change the analysis. ........................................ 23

V.     Plaintiffs state claims for violations of the Illinois consumer protection statute. ........................................................................ 24

VI.     Plaintiffs state claims for declaratory judgment because this action involves an actual, ongoing controversy regarding VTech's ongoing duties that is independent of any past wrongdoing. .................................... 25

CONCLUSION ........................................................................ 26

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aetna Life Ins. v. Haworth,*
  300 U.S. 227 (1937).................................................................................... 26

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012) ................................................................. 10, 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................... 10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................... 10

*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A.,*
  770 N.E.2d 177 (Ill. 2002) ......................................................................... 21

*Bruel & Kjaer v. Vill. of Bensenville,*
  969 N.E.2d 445 (Ill. App. 2d Dist. 2012) ................................................. 21

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796 (7th Cir. 2013) .................................................................. 5, 13

*Carriuolo v. Gen. Motors Co.,*
  No. 15-14442, --- F. 3d --- (11th Cir. May 17, 2016).................................. 8

*Clemons v. Nissan N. Am., Inc.,*
  997 N.E.2d 307 (Ill. App. 4th. Dist. 2013) ......................................... 17, 23

*Coghlan v. Wellcraft Marine Corp.,*
  240 F.3d 449 (5th Cir. 2001) ....................................................................... 8

*Crown Mortg. Co. v. Young,*
  989 N.E.2d 621 (Ill. App. 1st Dist. 2013)................................................. 17

*De Bouse v. Bayer AG,*
  922 N.E.2d 309 (Ill. 2009) ......................................................................... 24

*First Bank & Tr. Co. of Ill. v. Vill. of Orland Hills,*
  787 N.E.2d 300 (Ill. App. 1st Dist. 2003)........................................... 16, 18

*Frankfurt v. Mega Entm't Grp. II,*
  No. 15 CV 667, 2015 WL 7251951 (N.D. Ill. Nov. 17, 2015)................... 14

*Gleike Taxi Inc. v. DC Tops LLC,*
  No. 13-CV-06715, 2015 WL 273682 (N.D. Ill. Jan. 20, 2015).................. 18

*Gore v. Ind. Ins.,*
  876 N.E.2d 156 (Ill. App. 1st Dist. 2007)................................................. 16

*Grabianski v. Bally Total Fitness Holding Corp.,*
  No. 12 C 284, 2015 WL 1427777 (N.D. Ill. Mar. 26, 2015)...................... 18

**TABLE OF AUTHORITIES**
(continued)

Page

*Health Prof'ls, Ltd. v. Johnson,*
   791 N.E.2d 1179 (Ill. App. 3d Dist. 2003) ............................................................... 16

*Heuerman v. B & M Constr.,*
   833 N.E.2d 382 (Ill. App. 5th Dist. 2005) ............................................................... 22

*Hospira, Inc. v. Therabel Pharma N.V.,*
   No. 12 C 8544, 2013 WL 3811488 (N.D. Ill. July 19, 2013) .................................... 26

*In re Anthem, Inc. Data Breach Litig.,*
   No. 15-MD-02617-LHK, 2016 WL 589760 (N.D. Cal. Feb. 14, 2016)...................... 13, 24

*In re Aqua Dots Prods. Liab. Litig.,* 654 F.3d 748 (7th Cir. 2011) ............................................. 12

*In re Barnes & Noble Pin Pad Litig.,*
   No. 12-CV-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) .................................. 10

*In re IKO Roofing Shingle Prods. Liab. Litig.,*
   757 F.3d 599 (7th Cir. 2014) ..................................................................... 8, 11, 13, 24

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.,*
   No. 15 C 1364, 2016 WL 74671 (N.D. Ill. Jan. 7, 2016) ................................... 22, 23

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.,*
   196 F.3d 818 (7th Cir. 1999) .............................................................................. 7

*Interstate Indem. Co. v. Utica Mut. Ins.,*
   867 F. Supp. 1355 (S.D. Ill. 1994) .......................................................................... 14

*Kindle v. Fifth Third Bank,*
   No. 1:14 CV 6502, 2015 WL 5159890 (N.D. Ill. Sept. 1, 2015)................................ 5

*Kirkpatrick v. Strosberg,*
   894 N.E.2d 781 (Ill. App. 2d Dist. 2008) ................................................................ 18

*Leonie Mateer Consulting v. Plano Molding Co.,*
   No. 03 C 7949, 2004 WL 2033247 (N.D. Ill. Sept. 2, 2004)..................................... 19

*Leung v. XPO Logistics, Inc.,*
   No. 15 C 03877, 2015 WL 10433667 (N.D. Ill. Dec. 9, 2015) ................................. 10

*Lewert v. P.F. Chang's China Bistro,*
   --- F.3d ---, 2016 WL 1459226 (7th Cir. Apr. 14, 2016).................................... 6, 10

*Lewert v. P.F. Chang's China Bistro,*
   No. 14-CV-4787, 2014 WL 7005097 (N.D. Ill. Dec. 10, 2014)............................ 6, 10

*Lopez v. Ram Shirdi Inc.,*
   No. 10 CV 6590, 2014 WL 4214892 (N.D. Ill. Aug. 26, 2014) ................................ 5

*Lyons Sav. & Loan Ass'n v. Geode Co.,*
   641 F. Supp. 1313 (N.D. Ill. 1986) ......................................................................... 26

**TABLE OF AUTHORITIES**
(continued)

**Page**

*McManus v. Fleetwood Enters.*,
320 F.3d 545 (5th Cir. 2003) .......................................................................... passim

*Micro Data Base Syss. v. Dharma Syss.*,
148 F.3d 649 (7th Cir. 1998) .................................................................................. 21

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ...................................................................................... 8, 9

*Moyer v. Michaels Stores*,
No. 14 C 561, 2014 WL 3511500 (N.D. Ill. July 14, 2014) ................................... 10

*Munch v. Sears Roebuck & Co.*,
No. 06C7023, 2007 WL 2461660 (N.D. Ill. Aug. 27, 2007) .................................. 20

*Nautilus Ins. v. Dubin & Assocs.*,
No. 11 C 1251, 2011 WL 3664997 (N.D. Ill. Aug. 19, 2011) ............................... 25

*Ocasek v. Chicago*,
656 N.E.2d 44 (Ill. App. 1st Dist. 1995) ........................................................ 19, 20

*R & L Grain Co. v. Chi. E. Corp.*,
531 F. Supp. 201 (N.D. Ill. 1981) .......................................................................... 23

*Razor v. Hyundai Motor Am.*,
854 N.E.2d 607 (Ill. 2006) .................................................................................... 17

*Remijas v. Neiman Marcus Grp.*,
794 F.3d 688 (7th Cir. 2015) ........................................................................ 12, 26

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ............................................................................ 13

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951 (Ill. 2002) .................................................................................... 25

*Rosenburg v. Cottrell, Inc.*,
No. 05-545-MJR, 2007 WL 1120242 (S.D. Ill. Apr. 13, 2007) .............................. 23

*Shoop v. DaimlerChrysler Corp.*,
864 N.E.2d 785 (Ill. App. 3d Dist. 2007) ............................................................. 22

*Sterk v. Best Buy Stores, L.P.*,
No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ................................. 10

*Tymshare, Inc. v. Covell*,
727 F.2d 1145 (D.C. Cir. 1984) ............................................................................ 16

*United States v. Anchor Mortg. Corp.*,
711 F.3d 745 (7th Cir. 2013) ........................................................................ 8, 11

*Vulcan Golf v. Google Inc.*,
552 F. Supp. 2d 752 (N.D. Ill. 2008) ...................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

**Page**

*W.E. Erickson Constr. v. Chi. Title Ins.*,
  641 N.E.2d 861 (Ill. App. 1st Dist. 1994) ............................................................... 16

*Wheeler v. Phoenix Co. of Chi.*,
  658 N.E.2d 532 (Ill. App. 2d. Dist. 1995) .............................................................. 17

*Whitfield v. Ill. Dep't of Corr.*,
  237 F. App'x 93 (7th Cir. 2007) ............................................................................. 25

*Williams v. Crane*,
  No. 2:14-CV-241 TS, 2015 WL 7176370 (D. Utah Nov. 13, 2015) ....................... 16

*Windy City Metal Fabricators & Supply v. CIT Tech. Fin. Servs.*,
  536 F.3d 663 (7th Cir. 2008) .................................................................................. 25

*Woodard v. Chi. Bd. of Educ.*,
  No. 00 C 5515, 2001 WL 1631892 (N.D. Ill. Dec. 18, 2001) ................................ 10

*XL Disposal Corp. v. John Sexton Contractors Co.*,
  659 N.E.2d 1312 (Ill. 1995) .............................................................................. 19, 20

**STATUTES AND RULES**

15 U.S.C. § 2308 ........................................................................................................... 22

810 Ill. Comp. Stat. 5/2-105 ......................................................................................... 21

810 Ill. Comp. Stat. 5/2-314 ......................................................................................... 20

810 Ill. Comp. Stat. 5/2-316 ......................................................................................... 23

Fed. R. Civ. P. 15 .......................................................................................................... 22

Fed. R. Civ. P. 8 ............................................................................................................ 25

Fed. R. Civ. P. 9 ............................................................................................................ 24

## INTRODUCTION

The defendant in this case is the country's leading marketer and distributor of digital learning toys for young children.[1] That company's wild success in the market cannot be attributed solely to better toys, lower prices, or more creative marketing. Defendant VTech North America, LLC ("VTech") instead found success illegitimately—it promised its customers one thing, but sold them an entirely different, much less valuable product.

*       *       *

VTech's toys depend on certain "Online Services" to function as promised. These "smart toys" differ from traditional children's toys in part because smart toys connect to the Internet and each other, whereas traditional children's toys do not.

To access the Online Services (i.e., to use the toys), customers must provide VTech with highly sensitive personal information, which can include the names, physical addresses, and photographs of the young children using the toys. VTech promised to keep this information secure generally and even promised to take a number of particular, concrete security measures—VTech warranted that it would encrypt its customers' sensitive transmissions and store their data offline so that hackers could not access it through the Internet.

As explained in Plaintiffs' Consolidated Amended Complaint (Dkt. 44) ("CAC"), VTech flat-out lied. It did not provide even minimally acceptable security, much less take any of the specifically promised security measures. VTech's deception only came to light when a hacker publicly admitted that he had stolen Plaintiffs' information from VTech. After this revelation, VTech admitted that it could not provide the product that it promised. Because VTech lacked

---

[1] The toys are designed and manufactured in Asia by VTech's sister company. To streamline this litigation, Plaintiffs dismissed claims against that company, which agreed that statutes of limitations for claims against it would be tolled. (*See* Dkt. 57.) The sister company also agreed to certain discovery concessions. (*See id.*)

the ability to make the Online Services secure, VTech shut them down entirely for approximately two months. Some of the Online Services remain inoperable to this day.

Plaintiffs in this case are parents who purchased VTech's toys and children who used them. They want their money back. VTech has moved for dismissal. (Dkt. 61.) That motion, however, is just short of futile because it is directed at an entirely different case. That brief imagines that this is a typical "data breach case" in which consumers sue a company solely because hackers steal some credit card numbers. It is not. Plaintiffs bring traditional claims sounding primarily in contract: they paid VTech for one thing (a safe, secure, functional product), but VTech sold them something completely different (a dangerous, insecure product that could not perform as promised). VTech does not and cannot meaningfully attack Plaintiffs' actual claims.

Plaintiffs respectfully ask this Court to deny VTech's motion (Dkt. 61) in its entirety.

## RELEVANT FACTS

VTech manufactures and distributes digital learning toys ("Toys") for young children. CAC ¶ 2. To function properly, the Toys must connect to an online service known as the Learning Lodge. *Id.* ¶¶ 3, 14. A subset of the Toys ("Kid Connect Toys") also require access to an additional online service called Kid Connect. *Id.* Thus, parents must send VTech a significant amount of personal information before their children can use the Toys. *Id.* ¶¶ 3, 8. This information can include the name, date of birth, physical address, and photograph of any child who will use the Toys. *Id.* ¶¶ 16-18.

### A. VTech promised to use particular security measures and otherwise take "reasonable precautions" to secure Plaintiffs' data, but failed to do so.

Presumably because no reasonable parent would have purchased a Toy if she did not trust VTech to keep her child's data reasonably secure, CAC ¶¶ 20, 50, VTech expressly promised to

secure Plaintiffs' data, *id.* ¶¶ 5, 22.  In particular, it undertook the contractual obligations to:
(1) encrypt Plaintiffs' data and (2) prevent Plaintiffs' sensitive information from being Internet-accessible.  *Id.*[2]  VTech also promised to "protect [Plaintiffs'] privacy and personal information"
and "use[] reasonable precautions to keep [their] personal information secure."  *Id.* ¶ 22.

But VTech did *not* transmit data under encryption, and Plaintiffs' sensitive information
*was* Internet-accessible.  *Id.* ¶¶ 32-33.  VTech, moreover, did not follow even basic industry
security standards, much less use "reasonable precautions" to secure Plaintiffs' data.  *Id.* ¶¶ 30-
36.  For example, VTech's total failure to use encryption is not an obscure technical issue:  it
means that unauthorized third parties could intercept and access Plaintiffs' data (including
passwords) without special hacking skills.  CAC ¶ 33.  VTech did not even have the systems in
place to know that a hacker stole Plaintiffs' data:  VTech only learned about the data breach
when a reporter contacted VTech to tell them about it.  CAC ¶ 37.  And while VTech claims that
its systems are now secure, an independent analysis has stated that VTech's security continues to
contain "gaping holes."  *Id.* ¶ 42.

### B.    VTech promised that the Online Services would actually be available, but it broke that promise as well.

As explained above, the Toys require the Online Services to function properly.  For
example, the Learning Lodge provides updates for applications, firmware, and the Toys'
operating systems, as well as downloadable applications, games, and e-books.  CAC ¶¶ 3, 10-12,
81.  Kid Connect, for its part, allows children to communicate over the Internet with each other
(and their parents) using text messages, photographs, and audio.  *Id.* ¶¶ 3, 15.

---

[2] In particular, VTech represented that personally identifiable information ("PII") would be
"'transmitted encrypted to protect your privacy using HTTPS encryption technology.  Any
Registration Data submitted in conjunction with encrypted PII will also be transmitted encrypted.
Further, VTech stores your PII and Registration Data in a database that is not accessible over the
Internet.'"  CAC ¶ 22 (emphasis in CAC removed).

Given that the Online Services are an integral part of the Toys, it is unsurprising that VTech represented *on the Toys' boxes* that parents and children would have access to these services. VTech promotes the Learning Lodge's "extensive software library" and promises parents and children who purchase the more expensive Kid Connect Toys that they will be able to use Kid Connect to "[m]essage to and from [s]martphones."

 

VTech thus expressly promised the Plaintiffs—at the point of purchase—that they would have access to, and use of, the Online Services. Given that the Online Services are an integral part of the Toys as sold, moreover, VTech impliedly promised that the Online Services would be available even setting aside its many express representations.[3]

### C. **VTech caused Plaintiffs significant, concrete harm.**

VTech's failure to adhere to even the most basic security measures (much less the specific promises in its contract) and to provide the Online Services seriously harmed Plaintiffs.

---

[3] Without access to the Online Services, Plaintiffs' use of the Toys was, at best, severely curtailed because Plaintiffs could not download new applications. *See, e.g.*, CAC ¶¶ 81-82, 100, 110, 116. And some Plaintiffs could not use their products *at all*. *See, e.g.*, *id*. Relatedly, VTech's assertion that Plaintiffs "do not allege that they . . . bought Kid Connect-enabled devices because of the devices' connectivity or . . . how often (if ever) they actually utilized Kid Connect's online functions" is simply false. (*See* VTech Br. at 18.) *See, e.g.*, CAC ¶¶ 104, 106, 110 (explaining that Plaintiffs paid specifically for, and used, Kid Connect).

First, every person who purchased one of the Toys paid for security features she did not receive. *See, e.g.*, CAC ¶¶ 73, 75, 90, 97-98, 107-08, 117. Similarly, because VTech could not provide a secure product, it ultimately could not provide the Online Services *at all*, which meant that Plaintiffs paid for Toys they could not fully use. *Id*. ¶¶ 3, 6; 10-15, 57, 64.

Second, each of the adult Plaintiffs was understandably distressed that VTech had exposed sensitive information about their children to the entire world and that at least one hacker actually obtained this information. *See, e.g.*, *id*. ¶¶ 73, 75, 90, 97-98, 107-08, 117. Given that at least one hacker actually stole their sensitive information, Plaintiffs now reasonably fear that their information has been compromised. *See, e.g.*, *id*. Plaintiffs took, or would have acted reasonably in taking, precautions to ensure their personal and financial safety by taking steps such as reviewing financial statements, contacting financial institutions, and registering for credit monitoring. *Id.* ¶¶ 166(D), 191.

## <u>ARGUMENT</u>

### I.  <u>Governing legal standard.</u>

This Court has previously articulated the standards governing motions to dismiss for failure to state a claim and lack of standing. *See Lopez v. Ram Shirdi Inc.*, No. 10 CV 6590, 2014 WL 4214892, at *1 (N.D. Ill. Aug. 26, 2014) (Shah, J.); *see also see also Kindle v. Fifth Third Bank*, No. 1:14 CV 6502, 2015 WL 5159890, at *1 (N.D. Ill. Sept. 1, 2015) (Aspen, J.). Because VTech confines its standing challenge to the sufficiency of Plaintiffs' allegations, the familiar 12(b)(6) standard also applies to VTech's 12(b)(1) motion.

### II.  <u>Plaintiffs have standing to bring their claims and state valid claims for damages.</u>

VTech promised to take specific, concrete steps relating to information security, and Plaintiffs plausibly allege that VTech failed to live up to its obligations. Nothing more is required. *See, e.g.*, *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (holding

that claims of overpayment are cognizable in contract whether or not any particular consumer personally experienced the harmful effects to which the alleged breach exposed them).

**A.** **Plaintiffs' garden-variety breach-of-contract claims are more than sufficient to confer standing.**

VTech's standing arguments should be dismissed out of hand because they rely entirely on cases in which consumers assert injury based solely on the theft of their personal information. This case is different because Plaintiffs' damages also flow directly from the breach of contract. *See McManus v. Fleetwood Enters.*, 320 F.3d 545, 552 (5th Cir. 2003) (articulating the difference between a "no-injury" claim in tort and claim for breach of contractual obligations). Plaintiffs also respectfully note that one of the cases the center of VTech's standing argument has been overruled. *See Lewert v. P.F. Chang's China Bistro*, --- F.3d ---, 2016 WL 1459226, at *4 (7th Cir. Apr. 14, 2016) (overruling *Lewert v. P.F. Chang's China Bistro*, No. 14-CV-4787, 2014 WL 7005097 (N.D. Ill. Dec. 10, 2014) (cited at VTech Br. at 14, 16).

**1.** **Plaintiffs have standing because they purchased Toys that were less valuable than the Toys VTech claimed to be selling.**

Plaintiffs suffered cognizable injury because (i) VTech chose not to use adequate security measures notwithstanding the express contractual promise that VTech *would* use appropriate security measures, and (ii) VTech's conduct made core features of the Toys inoperable. *See, e.g. McManus*, 320 F.3d at 552. VTech's focus on whether criminals will misuse Plaintiffs' personal information misses the point entirely. As aptly articulated by Judge Edith Brown Clement, such an argument conflates tort and contract liability:

> [Defendant] emphasizes that the [Plaintiffs] have not shown *any* class members were actually injured. These arguments misapprehend the nature of [a claim based in contract]. . . . Here, the damages sought by the [Plaintiffs] are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the benefit of their bargain.

*Id.* at 552 (emphasis in original) (internal quotation marks omitted).

- 6 -

*McManus* is instructive.  In that case, the defendant sold the plaintiffs a motor home, representing at the point of sale that the motor home was capable of towing a family's passenger car.  *Id*. at 546-47.  Via a tag affixed to the motor home's wardrobe door, however, the defendant revealed something else: while a consumer could indeed use the motor home to tow her car, she would need to purchase supplementary brakes if she wanted to stop while doing so.  *Id*. at 547. The defendant challenged the plaintiffs' claims on the grounds that many purchasers had not been injured while attempting to tow a vehicle, and that others presumably did not even *want* to tow a vehicle.  *Id*. at 552.  The Fifth Circuit rejected both arguments:  "whether or not any member of the class actually suffered any *physical* injury is immaterial.  Likewise, it is immaterial whether or not the class members even intended to use their motor homes for towing . . . ."  *Id.* (emphasis in original) (internal quotation marks omitted).

The above reasoning applies here.  Whether criminals will actually use Plaintiffs' personal information is immaterial—*indeed, the fact that Plaintiffs' information was stolen at all is not necessary to support Plaintiffs' claims*.  To prevail, Plaintiffs must prove only that the Toys VTech sold them—Toys without adequate security or functional Online Services—are worth less than what VTech promised.  *See id.*; *see also, e.g.*, *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 823 (7th Cir. 1999) (Easterbrook, J.) ("Paying too much, or getting an inferior product for the same money, or getting a product that causes deferred injury . . . causes a loss of one's money, which is 'property.'").

Plaintiffs' claims thus have absolutely no relationship to "no-injury" claims:  "[t]he key distinction between this case and a 'no-injury' product liability suit is that the [plaintiffs'] claims are rooted in basic contract law rather than the law of product liability: the [plaintiffs] assert they

were promised one thing but were given a different, less valuable thing." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 n.4 (5th Cir. 2001); *Carriuolo v. Gen. Motors Co.*, No. 15-14442, --- F. 3d ---, slip op. at 13 (11th Cir. May 17, 2016) ("[I]njury is not determined by the plaintiffs' subjective reliance[.]").  Put simply, if an individual pays $200 for a particular quality of product, but only obtains a product worth $150, she is damaged by $50, regardless of whether or not she suffers any additional form of harm.  *See, e.g.*, *United States v. Anchor Mortg. Corp.*, 711 F.3d 745, 749 (7th Cir. 2013) ("Basing damages on net loss is the norm in civil litigation.  If goods delivered under a contract are not as promised, damages are the difference between the contract price and the value of what arrives."); *see also In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (recognizing same).[4]

### 2. Plaintiffs also have standing because they allege a cognizable injury flowing from the loss of their personal information.

Plaintiffs respectfully note that they have standing for the independently sufficient reason that they have alleged a "reasonable probability" of future harm flowing from VTech's woefully insufficient security measures and the actual theft of their personal information.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153 (2010); *see also P.F. Chang's*, 2016 WL 1459226, at *4.

This case is similar to *Monsanto*.  There, the Supreme Court considered standing in the context of alfalfa farmers who feared potential contamination of their crops if genetically altered seeds were allowed to come to market.  *Id.* at 153-34.  Writing for a seven-member majority, Justice Alito explained that this type of "reasonable probability" of future harm was sufficient to

---

[4] There are a variety of ways to measure that injury in this case, including: providing a full refund (i.e., rescission); a comparison between the resale value of these products on the retail and/or secondary markets before news of the data breach became public and afterwards; a comparison between the retail or resale prices of these products and other products with similar functions; and analyses that can be performed by relevant and qualified experts.

confer standing.  *Id.* at 153-55.  As he explained, "[s]uch harms, which respondents will suffer *even if their crops are not actually infected with the Roundup ready gene*, are sufficiently concrete to satisfy the injury-in-fact prong of the constitutional standing analysis."  *Id.* at 155 (emphasis added).

Similarly, here, VTech exposed all Plaintiffs' information to the outside world, and at least one hacker *actually stole that information*.  Just like the alfalfa farmers in *Monsanto*, Plaintiffs have standing because they may reasonably undertake extraordinary and unexpected affirmative steps such as purchasing identity protection to try to reduce the potential of future harm.  *See Monsanto,* 561 U.S. at 153-55.  In particular, after learning of the breach, in reasonable fear that their data had been (or would imminently be) obtained by malicious parties, Plaintiffs expended (or would have acted reasonably by expending) time and effort reviewing their financial statements, inquiring with financial institutions through which their credit or finances might be comprised, seeking and paying for credit monitoring, and taking other protective measures.  CAC ¶¶ 73, 75, 90, 97-98, 107-08, 117, 166(D), 191.  In the wake of VTech's broken promise to keep their data secure, Plaintiffs have no way to know that their data is safe from individuals who would do them harm, financial or otherwise.

VTech, however, argues that Plaintiffs do not have standing because VTech speculates that no malicious individuals have yet misused Plaintiffs' data.  (*See* VTech Br. at 12-17.)[5]  That is not the standard.  First, what VTech represents that it *believes* has nothing at all to do with a motion to dismiss:  at this stage of litigation, Plaintiffs' claims must merely be "plausible."  *See,*

---

[5] In two footnotes, VTech suggests that perhaps the stolen data was not truly private.  (VTech Br. at 14 n.7, 17 n.10); *cf. Vulcan Golf v. Google Inc.*, 552 F. Supp. 2d 752, 765 n.6 (N.D. Ill. 2008) (specifically refusing to consider an argument in support of motion to dismiss because the defendant raised it in a footnote).  The suggestion that the names, addresses, and photographs of your children are somehow "not private" is nothing short of offensive.  In any event, VTech also released Plaintiffs' passwords, which fit even within VTech's clinical notion of privacy.

*e.g.*, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012) ("Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible.") (explaining *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Second, whether or not anyone has actually used Plaintiffs' data maliciously is immaterial—Plaintiffs claim damages flowing from the reasonable probability that they will suffer future harm given that VTech exposed their sensitive personal information to the public. *See, e.g.*, CAC ¶¶ 46-49, 54.[6]

**B.   VTech's arguments regarding standing are off-point.**

**1.   VTech's cases have almost nothing in common with this litigation.**

VTech's brief cites essentially a random collection of cases in which a hacker stole a consumer's personal information.  (*See* VTech Br. at 12-23)  None involved the breach of a specific contractual promise, much less a shutdown of services as a result of that breach.  For example, VTech cites cases in which courts dismissed claims based on the so-called "cash or credit" issue.  (*Id*. at 18.)[7]  In these cases, plaintiffs attempted to allege that they overpaid for a defendant's goods or services because the defendant did not provide sufficient data security (or

---

[6] Because VTech exposed private information about children, including photographs and audio recordings, Plaintiffs also have legitimate damages in the form of emotional distress.  *See Woodard v. Chi. Bd. of Educ.*, No. 00 C 5515, 2001 WL 1631892, at *3 (N.D. Ill. Dec. 18, 2001).  Such injury is cognizable under Illinois law and sufficient to confer Article III standing. *See Leung v. XPO Logistics, Inc.*, No. 15 C 03877, 2015 WL 10433667, at *5 (N.D. Ill. Dec. 9, 2015) ("Emotional distress is a form of injury in fact that can confer [federal constitutional] standing.").  That parties with malicious intent have not *definitely* obtained Plaintiffs' data is no bar to damages arising from Plaintiffs' legitimate anxiety that they have.  *See P.F. Chang's*, 2016 WL 1459226, at *3 (7th Cir. Apr. 14, 2016).

[7] *See Lewert v. P.F. Chang's China Bistro*, No. 14-CV-4787, 2014 WL 7005097, at *2 (N.D. Ill. Dec. 10, 2014), *rev'd and remanded on other grounds*, No. 14-3700, 2016 WL 1459226 (7th Cir. Apr. 14, 2016); *Moyer v. Michaels Stores*, No. 14 C 561, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014); *In re Barnes & Noble Pin Pad Litig.*, No. 12-CV-8617, 2013 WL 4759588, at *5 (N.D. Ill. Sept. 3, 2013); *Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *7 (N.D. Ill. Oct. 17, 2012).

other services) in connection with the credit card transaction. Courts dismiss such claims because consumers are charged the same price whether paying in cash or with a credit card; i.e., consumers pay literally nothing to use a credit card, and, concomitantly, for credit card security. *See, e.g.*, *P.F. Chang's*, 2014 WL 7005097, at *2.

Here, by contrast, the promise of data security was integrated into *every* Plaintiffs' purchase. CAC at ¶¶ 5, 20-22. Plaintiffs simply did not get all that they bargained for. *See id.* ¶¶ 30-36; *cf. In re IKO*, 757 F.3d at 603 (explaining that one measure of damages is the difference in market value between what was promised and what was delivered). It is in part for this reason that VTech's attempt to draw a distinction between consumers who used the Online Services and the (hypothetical) consumer who somehow did not (VTech Br. at 21) is mystifying. Every consumer who bought one of the Toys necessarily paid for *all* of that product's features— whether they used that feature or not is wholly irrelevant. *See, e.g.*, *McManus*, 320 F.3d at 552 ("[I]t is immaterial whether or not the class members even intended to use [the feature of the product that was not as promised]."). Put another way, all consumers would prefer to pay less for a product rather than more. *See, e.g.*, *Anchor Mortg. Corp.*, 711 F.3d at 749 ("Basing damages on net loss is the norm in civil litigation. If goods delivered under a contract are not as promised, damages are the difference between the contract price and the value of what arrives.").

### 2.     Data-breach litigation is not an exception to the general rule of *Monsanto*: the risk of real harm is sufficient to confer standing.

VTech cites certain cases for the proposition that the risk that an ill-intending party will abuse an individual's data after a data breach of unknown scope occurs is not a sufficient injury to establish standing. (*See* VTech Br. at 16, 21.) Setting aside that these cases would be irrelevant even if decided correctly because they did not involve breach of a specific contractual promise or the termination of the ability to use a product, those cases are wrong. *See P.F.*

*Chang's*, 2016 WL 1459226, at *3-4 (explaining that, in the wake of a data breach, where there is uncertainty about whether individuals' data has *actually* been stolen, there is nonetheless sufficiently imminent harm to establish injury for standing purposes); *see also Remijas v. Neiman Marcus Grp.*, 794 F.3d 688, 692 (7th Cir. 2015) (same). Here, as in *P.F. Chang's* and *Neiman Marcus*, Plaintiffs' data was hacked and is now at risk of misuse. And, as in *P.F. Chang's* and *Neiman Marcus*, the resulting increased risk of "future injuries" readily supports Plaintiffs' claims.

### 3. <u>Plaintiffs have plausibly alleged that they overpaid for the Toys.</u>

VTech's claim that Plaintiffs must provide additional detail to establish that they overpaid for the Toys (*see* VTech Br. at 18-19) defies common sense, and it is not the law. The idea that parents would knowingly purchase (and pay full price for) unsafe products for their children's use (here, unsecure, Internet-enabled toys) is absurd. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("[Even if] members of the class did not suffer physical injury [from the unsafe products] . . . it does not mean that they were uninjured. The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the [toys] posed to children."). And the notion that failing to deliver an integral part of the Toys' functionality—the Online Services—is irrelevant to the Toys' economic value is no better. In any event, Plaintiffs *specifically* allege that the Online Services and corresponding promises of data security were material factors in their purchase. *See, e.g.*, CAC ¶ 24.[8] At this stage of litigation, Plaintiffs need do nothing more. *See, e.g.*, *Anderson News*, 680 F.3d at 184.

---

[8] Plaintiffs paid specifically for the ability to utilize the online services, and VTech products are segmented based on a products varying online capabilities. (VTech Br. at 18); *see, e.g.*, CAC ¶¶ 3, 14, 20, 41, 60, 67, 76, 84, 91, 99, 109, 118. VTech's assertion that Plaintiffs fail to allege utilization or value of said Online Services is simply false. Among other things, Plaintiffs used the Online Services regularly (indeed, this is the reason many of them realized the Online Services were down). *See, e.g.*, CAC ¶¶ 65, 81, 82, 104, 106, 110, 116.

- 12 -

One final point.  There is nothing novel about Plaintiffs' claims:  many courts have recognized that allegations of paid-for but unreceived promises of data security "represent economic injury" and thus readily demonstrate a loss of money or property.  *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 589760, at *18 (N.D. Cal. Feb. 14, 2016) (observing that "more recent case law within the data breach context confirms that benefit of the bargain damages represent economic injury" and accepting such damages for claim brought under California's Unfair Competition Law, which requires that a plaintiff demonstrate injury in fact and a loss of money or property); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327-28 (11th Cir. 2012) (endorsing benefit-of-the-bargain damages on unjust enrichment claim based on allegations that insurer failed to use money for data security in accordance with privacy notices).

### C.     <u>Plaintiffs state valid claims for damages.</u>

Plaintiffs respectfully note that they state valid claims for damages for the same reasons that they have established Article III standing.  *See, e.g.*, *In re IKO*, 757 F.3d at 603; *Butler*, 727 F.3d at 800; *McManus*, 320 F.3d at 552; *Anthem*, 2016 WL 589760, at *18.  All of VTech's cursory arguments to the contrary (*see* VTech Br. at 20-23) are based on the same misdescription of the case that underlies VTech's standing arguments.

### III.    <u>Plaintiffs state claims for breach of express and implied contract.</u>

There is no dispute that Plaintiffs and VTech entered into a contractual relationship.  Under the terms of this relationship, VTech was required to implement a number of security measures that VTech simply did not implement, and VTech was required to allow Plaintiffs to use the Toys as represented (i.e., to allow Plaintiffs to use the Online Services).  Because these

breaches injured them financially, Plaintiffs have viable causes of action for breach of express contract and breach of the implied covenant of good faith and fair dealing.[9]

### A. VTech was obligated to fulfill its express contractual promises to use appropriate security and provide access to the Online Services.

VTech claims that it somehow was not under any relevant express contractual obligation to Plaintiffs.  (VTech Br. at 23-27.)  As explained below, this is incorrect because VTech undertook a number of material obligations that it did not fulfil.

### 1. VTech made numerous, express contractual promises.

VTech's claim that it did not make specific and enforceable promises to Plaintiffs is baffling.  And false:

- **Promise that VTech would store data offline.**  VTech promised to store personal data "in a database that is not accessible over the Internet."  CAC ¶ 22.

- **Promise that VTech would encrypt data.**  VTech promised that personal data would "be transmitted encrypted to protect your privacy using HTTPS encryption technology.  Any Registration Data submitted in connection with encrypted [personal information] will also be transmitted encrypted." *Id.*

- **Promise that VTech would take "reasonable precautions" to keep Plaintiffs' data secure.**  VTech expressly warranted that it "uses reasonable precautions to keep your personal information secure" and that it "is committed to handling your information carefully."  (Dkt. 62-3 at 8, 11.)  When making that warranty it purportedly disclaimed liability only for forces "beyond VTech's reasonable control."  (*Id.*)

- **Promise that VTech would not disclose Plaintiffs' data.**  VTech stated that it would "not disclose or transfer [Plaintiffs'] Data to other parties." (Dkt. 62-1 at 5.)

---

[9] Under Illinois law, breach of contract requires "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Frankfurt v. Mega Entm't Grp. II*, No. 15 CV 667, 2015 WL 7251951, at *2 (N.D. Ill. Nov. 17, 2015) (Shah, J.).  Similarly, breach of the implied covenant of good faith and fair dealing requires: (1) the plaintiff had a contractual relationship with the defendant, (2) the defendant failed to act with good faith or fair dealing in executing its duties under the contract; and (3) the defendant's failure(s) resulted in injury to the plaintiff. *See Interstate Indem. Co. v. Utica Mut. Ins.*, 867 F. Supp. 1355, 1359 (S.D. Ill. 1994).

- **Promise that VTech would provide the Online Services that were integral to the Toys' functioning.** VTech specifically promised to provide the Online Services. Beyond the promises on VTech's boxes (pictured in Plaintiffs' statement of Relevant Facts), VTech included in-box terms that reinforced those initial promises. The InnoTab 3 Plus User's Manual, for instance, promises "two free downloadable apps" from the Learning Lodge and states that "content is available online [through the Learning Lodge]." Ex. A (InnoTab 3 Plus User's Manual) at 2. It instructs users to make use of Learning Lodge's features "regularly" to enjoy full functionality of their VTech Product. *It even states that consumers must use Learning Lodge to obtain a full license for the Toys. Id.* at 17.

### 2. Disclaimers cannot render VTech's contractual promises illusory.

Notwithstanding the above promises, VTech now claims that it was under no contractual obligation to comply with its promises because of certain limiting language in its privacy policy and certain terms-of-service documents. These arguments are untenable.

### a. VTech was contractually obligated to keep Plaintiffs' information secure.

Although the Toys were marketed for children and required the transmission of those children's personal information over the Internet, VTech argues that it had minimal obligations to secure that information. (VTech Br. at 25-26.) VTech does not, however, even try to argue that it disclaimed its promise to store information in an offline database. (VTech Br. at 25-26.) It thus concedes that at least one of the contractual obligations at the center of this case was valid and enforceable. CAC ¶¶ 5, 22-23, 203.

To be sure, VTech does specifically attack two of Plaintiffs' other arguments relating to security, but its criticisms make no sense. First, VTech states that it cannot be liable for its failure to use encryption because it only promised to use encryption "in most cases." (VTech Br. at 25.) But VTech *never* used encryption. *See, e.g.*, CAC ¶ 33 (citing independent, public security research). A company that never uses encryption does not use it "in most cases."

Second, VTech attacks Plaintiffs' claim that VTech did not provide "reasonable precautions" because VTech argues that Plaintiffs specifically allege only that VTech failed to

use "industry standard security measures." (VTech Br. at 25.) VTech does not, however, explain how "reasonable precautions" imposes an obligation that is lower than "industry standard," and it does not. *See, e.g.*, *Williams v. Crane*, No. 2:14-CV-241 TS, 2015 WL 7176370, at *1 (D. Utah Nov. 13, 2015) ("[I]ndustry standards may represent a consensus regarding what a reasonable person in a particular industry would do . . . .").

### b. VTech was obligated to provide the Online Services.

Somewhat amazingly, VTech also claims that it did not actually need to provide the Online Services. (VTech Br. at 24-25; Learning Lodge Terms (Dkt. 62-1) § 2.7) VTech's reading of the contract—i.e., that VTech had unilateral, unfettered discretion to decide whether to provide the Online Services—would render the central purpose of the contract illusory because the Online Services are integral to the Toys' promised function. Courts reject such extreme readings. *See, e.g.*, *First Bank & Tr. Co. of Ill. v. Vill. of Orland Hills*, 787 N.E.2d 300, 305 (Ill. App. 1st Dist. 2003) (explaining that courts do not interpret agreements to nullify provisions or render them meaningless); *cf. Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1153-54 (D.C. Cir. 1984) (Scalia, J.) (explaining that even when a contract grants a party "sole discretion," this generally does not mean "for any reason whatsoever").[10] A much better reading of VTech's contract is that VTech cannot be held liable for occasional outages (e.g., for software updates) or for discontinuing the Online Services many years after purchase.

---

[10] *See also, e.g.*, *Health Prof'ls, Ltd. v. Johnson*, 791 N.E.2d 1179, 1193 (Ill. App. 3d Dist. 2003) ("Courts will construe a contract reasonably to avoid absurd results"); *W.E. Erickson Constr., Inc. v. Chi. Title Ins.*, 641 N.E.2d 861, 864 (Ill. App. 1st Dist. 1994) ("An illusory promise is also defined as one in which the performance is optional."). In the alternative, and as discussed below, the implied covenant of good faith and fair dealing would mandate this same result. *See, e.g.*, *Gore v. Ind. Ins.*, 876 N.E.2d 156, 161-62 (Ill. App. 1st Dist. 2007) ("Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations." (citations omitted)).

Even if VTech's disclaimers were susceptible to VTech's interpretation of them, however, this fact would not change the substantive outcome. This is so because the type of disclaimer described in VTech's brief is void: it is procedurally and substantively unconscionable to (i) market and sell Toys as having specific qualities and features, but then (ii) rely on terms provided after the initial purchase to refuse to provide those same qualities and features. *See, e.g.*, *Crown Mortg. Co. v. Young*, 989 N.E.2d 621, 624 (Ill. App. 1st Dist. 2013) ("'Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor.'"). *See also Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622-23 (Ill. 2006) ("'Courts are more likely to find unconscionability when a consumer is involved, when there is a disparity in bargaining power, and when the consequential damages clause is on a pre-printed form.'"); *cf. McManus*, 320 F.3d at 552 (permitting warranty claim when defendant attempted to reveal a material, limiting term only after purchase).

c.     **VTech's general disclaimers cannot limit VTech's express promises.**

VTech also argues that Plaintiffs' claims fail because VTech buried a series of general liability and warranty disclaimers in its privacy policy and certain terms-of-service documents. (VTech Br. at 5, 8-9, 24-26.) Black-letter law is to the contrary. Plaintiffs' claims are based on *express* contractual promises. Attempts to limit liability for such promises are wholly ineffective under Illinois law. *See, e.g.*, *Clemons v. Nissan N. Am., Inc*., 997 N.E.2d 307, 317 (Ill. App. 4th. Dist. 2013) ("[T]he UCC provides a disclaimer inconsistent with an express warranty is ineffective and courts can deny the effect of an 'as is' clause where it is inconsistent with a contract's language."); *Wheeler v. Phoenix Co. of Chi.*, 658 N.E.2d 532, 536 (Ill. App. 2d. Dist. 1995) ("[E]xpress warranties may not be disclaimed."). No general liability or warranty disclaimer can free VTech from its express promises. *See, e.g.*, *Clemons*, 997 N.E.2d at 317; *see*

- 17 -

*also, e.g.*, *First Bank & Tr. Co.*, 787 N.E.2d at 305 (explaining that courts read contracts so that promises are not illusory).

> ### B. If the express terms of the contract could somehow be read as VTech suggests, the implied covenant of good faith and fair dealing prevents VTech from escaping liability.

In the alternative to Plaintiffs' claim for breach of express contract, the implied covenant of good faith and fair dealing compels contractual liability. In Illinois, the implied covenant imposes a duty on parties over and above the literal terms of the contract: "[t]he covenant requires the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations." *Grabianski v. Bally Total Fitness Holding Corp.*, No. 12 C 284, 2015 WL 1427777, at *7 (N.D. Ill. Mar. 26, 2015) (internal quotation marks omitted); *see also Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 793 (Ill. App. 2d Dist. 2008). VTech does not point to any substantive inadequacy with Plaintiffs' implied contract claim. (*See* VTech Br. at 28-29.) Accordingly, any such argument is waived. *See, e.g.*, *Gleike Taxi Inc. v. DC Tops LLC*, No. 13-CV-06715, 2015 WL 273682, at *6 n.5 (N.D. Ill. Jan. 20, 2015) (Shah, J.) (declining to consider argument raised only in a reply brief).

To be sure, VTech opposes Plaintiffs' claim for breach of the duty of good faith and fair dealing based on two procedural arguments, but neither is persuasive. (*See* VTech Br. at 28-29.) First, VTech complains that Plaintiffs' claim is duplicative of their claim for breach of express contract. (*See id.* at 29.) Not so. Plaintiffs plead breach of implied contractual terms in the alternative to their claim for breach of express contractual terms. Second, VTech complains that Plaintiffs should not have stated claims for breach of implied and express contractual terms as separate counts, but should have instead stated them in one single count for breach of contract.

(*See id.*)  This is nothing more than academic quibbling with Plaintiffs' use of headings, and it certainly does not compel dismissal.

> ## C.     <u>Children may recover for breach of contract.</u>

VTech's final argument relating to Plaintiffs' contract claims is that children cannot recover under these contracts because they are not third-party beneficiaries to the contracts. (VTech Br. at 27-28.)  This cannot be right: these contracts for the use of *toys* both implicitly and explicitly contemplate that children will use the toys in question.  To be technically precise about it, "'third-party beneficiary status is a matter of divining whether the contracting parties intended to confer a benefit upon a nonparty to their agreement.'"  *Leonie Mateer Consulting v. Plano Molding Co.*, No. 03 C 7949, 2004 WL 2033247, at *4 (N.D. Ill. Sept. 2, 2004) (quoting *XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995)).  They plainly did.

As VTech recognizes, this is a case about "learning toys . . . for preschool and grade school children."  (VTech Br. at 3-4.)  VTech's intent to enter agreements with minors, or at least to benefit them, is facially evident from the fact that the products are obviously designed for children.  *See, e.g.*, CAC ¶¶ 3, 7.  Indeed, VTech's own brief quotes (1) a statement indicating that the terms apply not just to adults but also to "any minor child who uses Learning Lodge[TM]," and (2) a statement that "[m]inors may use the Service only if their parent or legal guardian has clicked the box stating 'Confirmed.'"  (VTech Br. at 27-28.)

The case on which VTech relies for the proposition that the parties to a contract must have some *je ne sais quoi* over and above a simple intent to benefit one or more third parties is readily distinguishable.  (*See* VTech Br. at 28 (citing *Ocasek v. Chicago*, 656 N.E.2d 44, 46 (Ill. App. 1st Dist. 1995))).  In that case, the intermediate appellate court rejected the contention of two individuals traveling on a Chicago road that they were third-party beneficiaries to a contract

between the city and developers to redesign the road twenty years earlier. *Ocasek,* 656 N.E.2d at 46. Plainly, the city and developers did not make a contract for the express benefit of those two individuals (instead, they intended to benefit millions of people, and contract law does not recognize such a class as third-party beneficiaries). And whatever the dicta in *Ocasek*, the Illinois Supreme Court later held that "intent to benefit" is the sole relevant question when determining whether a party is a third-party beneficiary to a contract between others. *See XL Disposal Corp.*, 659 N.E.2d at 1316.

## IV. Plaintiffs adequately state claims for breach of the implied warranty of merchantability.

To state a claim for breach of implied warranty of merchantability under Illinois law, plaintiffs must establish (1) that the product was "not merchantable" at the time of sale, (2) that they suffered damages as a result of the defect, and (3) that they gave the producer notice of the defect. *Munch v. Sears Roebuck & Co.*, No. 06C7023, 2007 WL 2461660, at *4 (N.D. Ill. Aug. 27, 2007). Goods are not merchantable when they are not "fit for the ordinary purposes for which such goods are used." *See* 810 Ill. Comp. Stat. 5/2-314(2)(c).

VTech tacitly concedes that Plaintiffs meet the first and third essential elements, and only raises duplicative arguments about the second element (whether Plaintiffs sufficiently allege damages), which Plaintiffs' addressed above in section II.C. VTech's motion instead focuses on three threshold questions. First, it argues that Plaintiffs cannot bring a claim for breach of this implied warranty because this is a case about "services" rather than "goods." (*See* VTech Br. at 29-30.) But the Toys are indisputably physical goods and the contract focuses on them, not on the Online Services necessary to allow the Toys to function fully.[11] Second, VTech argues that Plaintiffs lack privity with VTech. (*See* VTech Br. at 31-32.) Plaintiffs, however, fall within a

---

[11] Plaintiffs' claims, moreover, include damages arising from the purchase of physical cartridges that were rendered inoperative as a result of VTech's conduct. CAC ¶ 11.

well-recognized exception to the privity requirement.  Third, while VTech argues that it

disclaimed any implied warranties (*see* VTech Br. at 30-31), it did no such thing.

> **A.** **The UCC applies to this action because this is a case about Toys that were less valuable than promised.**

The Illinois UCC applies to goods, which "means all things . . . which are movable at the

time of identification to the contract for sale."  810 Ill. Comp. Stat. 5/2-105; *see, e.g.*, *Micro*

*Data Base Syss. v. Dharma Syss.*, 148 F.3d 649, 654 (7th Cir. 1998) (software is a "good").

When a transaction involves a mixture of goods and services, Illinois courts use a "predominant

purpose" test to determine whether the contract is one for goods (and thus governed by the UCC)

or one for services.  *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A.*, 770 N.E.2d 177, 194-

95 (Ill. 2002).  Illinois courts explain that, "if the contract is predominantly for the sale of goods,

with services being incidental thereto, the contract will be governed by [the UCC]."  *Id*.

Here, the contractual relationship between the parties was predominately focused on

goods (the Toys), not services.  The contracts were formed when Plaintiffs purchased the Toys.

The Online Services were only useful inasmuch as they were necessary for the full functioning

of the Toys.  VTech's breach of the contract may have specifically involved the Online Services,

but that does not change the focus of the contract itself.  *See, e.g.*, *Bruel & Kjaer v. Vill. of*

*Bensenville*, 969 N.E.2d 445, 451 (Ill. App. 2d Dist. 2012) ("Plaintiff supplies certain tangible

widgets to buyers along with sufficient services to make the widgets operable.  In the absence of

the widgets themselves, the services to make them operable would be meaningless and without

value.").

The fact that VTech forced its customers to "agree" to certain terms in the course of

registering for the Online Services does not transport this case outside the scope of the UCC

because this action ultimately remains about—and Plaintiffs are suing to recover the money they

paid for—the Toys themselves. In any event, the question of whether the UCC governs is a question of fact, which at this stage is controlled by the pleadings. *See Heuerman v. B & M Constr.*, 833 N.E.2d 382, 389 (Ill. App. 5th Dist. 2005) ("[W]hether the contract was predominantly for goods or services is generally a question of fact.").

### B. Plaintiffs are in constructive privity with VTech.

VTech argues that, because Plaintiffs purchased the Toys from third-parties (retail distributors), Plaintiffs lack privity with VTech, and therefore cannot bring an implied warranty claim. (VTech Br. at 31-32.) Such an exacting rule would ensure that no consumer who purchased a product from a retailer could ever bring an implied warranty claim against a manufacturer. But the law is not so illogical or unfair: in Illinois, consumers may establish that they are in "constructive privity" with a manufacturer. *See, e.g.*, *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, No. 15 C 1364, 2016 WL 74671, at *24 (N.D. Ill. Jan. 7, 2016) (St. Eve, J.).[12]

Plaintiffs are in constructive privity with VTech because they "relie[d] on written labels or advertisements of a manufacturer" or had "direct dealings" with VTech. *See id.* (characterizing reliance on marketing and direct dealings as alternative ways to describe the same relationship of constructive privity). The representations and warranties on which this litigation is based are thus more than sufficient to establish constructive privity. *See, e.g.*, CAC ¶ 22-23 (representations to its customers); 26-27 (communications with customers); 211

---

[12] Illinois also recognizes an exception to the privity requirement when a warranty claim is brought pursuant to the Magnuson-Moss Act, 15 U.S.C. § 2308. *See Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 792 (Ill. App. 3d Dist. 2007) (explaining that when "a manufacturer has extended a written warranty with a product," and a consumer bring a claim under the Act, "the privity requirement is 'relaxed'"). If this Court grants VTech's motion to dismiss, Plaintiffs will seek leave to amend their pleadings to assert an implied warranty claim pursuant to the Magnuson-Moss Act. *Cf.* Fed. R. Civ. P. 15 (explaining that courts "freely give leave [to amend] when justice so requires").

(advertisements).  Put another way, Plaintiffs purchased the Toys *because* of VTech's representations.  CAC ¶¶ 56, 63, 71, 80, 88, 95, 104, 113.  This is all the law requires.  *See In re Rust-Oleum Restore*, 2016 WL 74671, at *23-24 (declining to dismiss implied-warranty claims, where indirect-purchaser plaintiffs made similar allegations of representations from the manufacturer).

### C.    VTech's purported warranty disclaimer in connection with its Kid Connect services does not change the analysis.

Finally, VTech contends that disclaimer language in the Kid Connect terms precludes an implied warranty claim as to all of Plaintiffs' claims regarding the Toys.  (*See* VTech Br. at 30-31); *cf. Rosenburg v. Cottrell, Inc*., No. 05-545-MJR, 2007 WL 1120242, at *1 (S.D. Ill. Apr. 13, 2007) ("As the party seeking to invoke a warranty exclusion, [VTech] bears the burden of pleading and proving its effect." (citing *R & L Grain Co. v. Chi. E. Corp*., 531 F. Supp. 201, 207 (N.D. Ill. 1981))).

VTech is wrong.  *Cf., e.g.*, *Clemons*, 997 N.E.2d at 316-17 ("Written disclaimers to 'exclude or modify the implied warranty of merchantability' must mention merchantability and 'be conspicuous.'" (quoting 810 Ill. Comp. Stat. 5/2-316(2))).  This is so because the disclaimer references only the Kid Connect "service," and this is a lawsuit about the Toys themselves.  *See Rosenburg*, 2007 WL 1120242, at *1 ("[W]arranty exclusions are strictly construed against the author.").  In other words, Plaintiffs contend that the Toys themselves were not merchantable. But even if this Court ultimately construes the disclaimer to extend to Plaintiffs' claims and discovery reveals that the disclaimer was sufficiently conspicuous, the disclaimer cannot possibly extend beyond Kid Connect Toys, which are only a subset of the Toys at issue in this case.  *See* CAC ¶¶ 3, 14.

## V.    Plaintiffs state claims for violations of the Illinois consumer protection statute.

To state a claim under the Illinois Consumer Fraud and Deceptive Practices Act, a plaintiff must allege (1) an unfair or deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception.  *See De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009).  VTech raises four reasons why Plaintiffs fail to state a claim for consumer fraud or deceptive practices. None have merit.

First, VTech asserts that Plaintiffs fail to plead measurable economic injuries.  (*See* VTech Br. at 33.)  As explained above, this is false—Plaintiffs allege classic benefit-of-the-bargain damages.  *See, e.g.*, *In re IKO*, 757 F.3d at 603 (explaining that one acceptable measure of damages is the difference between the quality of a good promised and the quality of a good delivered); *see also In re Anthem*, 2016 WL 589760, at *18 (same).

Second, VTech argues in passing that Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard applicable to deceptive practices claims.  (*See* VTech Br. at 33.)  To the extent this requirement applies here, Plaintiffs easily meet it.  They allege that VTech lied about the fact that the Online Services did not offer reasonable data security and about the specific precautions that VTech would take.  *See* CAC ¶¶ 30-36.  Plaintiffs explicitly allege that VTech acted with the requisite intent, CAC ¶ 215, even though such intent "may be alleged generally," Fed. R. Civ. P. 9(b), and certainly can be inferred from the allegations of false claims in VTech's marketing and packaging, CAC ¶¶ 30-36.  Plaintiffs also expressly and straightforwardly allege involvement in trade or commerce, damages, and proximate cause.  CAC ¶¶ 200, 215.

Third, VTech contends that Plaintiffs do not plead claims under the "unfair" prong of the Act.  That is incorrect.  Unfair practices include those that "offend[] public policy," are

- 24 -

"immoral, unethical, oppressive, or unscrupulous," or "cause[] substantial injury to consumers."

*Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (requiring any one of

these factors, not all three). Plaintiffs allege practices meeting all three factors, including that

VTech's shoddy security practices have been at the expense of the personal information,

finances, and emotional distress of countless trusting customers. *See* CAC ¶ 166(D).

Allegations of unfair practices are, moreover, not subject to any heightened pleading

requirement. *See Windy City Metal Fabricators & Supply v. CIT Tech. Fin. Servs.*, 536 F.3d

663, 669-70 (7th Cir. 2008).

Finally, VTech objects to the fact that Plaintiffs took typical precautions and pled, in the

alternative, claims under each Plaintiffs' home state consumer protection law. In particular,

VTech complains that Plaintiffs do not "identify the statutes they claim were violated [or] allege

in any detail how VTech's actions violated these mystery statutes." (VTech Br. at 33.) But

"nothing in Fed. R. Civ. P. 8 suggests that complaints must contain legal citations or arguments,

and we have held that they need not." *Whitfield v. Ill. Dep't of Corr.*, 237 F. App'x 93, 94 (7th

Cir. 2007) (unpublished).

**VI.** **Plaintiffs state claims for declaratory judgment because this action involves an actual, ongoing controversy regarding VTech's ongoing duties that is independent of any past wrongdoing.**

To bring a declaratory judgment claim, a party must "demonstrate[ that an actual

controversy exists," and "must allege a direct injury or threat of injury that is real and immediate,

not conjectural or hypothetical." *Nautilus Ins. v. Dubin & Assocs.*, No. 11 C 1251, 2011 WL

3664997, at *2 (N.D. Ill. Aug. 19, 2011) (internal quotation marks omitted). Plaintiffs meet this

requirement because they allege a serious and continuing risk of harm attributable to VTech's

ongoing conduct (more of the same harms they have already suffered), both with respect to

Plaintiffs who never intend to use a VTech product again and those who do. The latter must

continue to transmit their personal information to VTech.  *See* CAC ¶¶ 46-49, 54; *see also*, *e.g.*, *P.F. Chang's*, 2016 WL 1459226, at *2 (finding the increased risk of fraudulent charges and future identity theft "were the type of certainly impending harm that the Supreme Court requires to establish standing" (citing *Neiman Marcus*, 794 F.3d at 692)).

VTech's suggestion that Plaintiffs seek an advisory opinion is thus nonsensical.  (*See* VTech Br. at 34-35.)  Plaintiffs have identified a definite and concrete dispute and a request a specific judgment that VTech is in violation of its contractual and legal obligations and is obligated to implement and maintain reasonable data security measures.  *See* CAC ¶ 226.  This claim thus "does not call 'for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'"  *Hospira, Inc. v. Therabel Pharma N.V.*, No. 12 C 8544, 2013 WL 3811488, at *9 (N.D. Ill. July 19, 2013) (quoting *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 242 (1937)).

Finally, Plaintiffs note that their declaratory judgment claim is entirely distinct from their breach-of-contract claim.  (*Contra* VTech Br. at 35.)  While Plaintiffs seek damages for VTech's *past* breach of contract, they also seek clarification and enforcement of Plaintiffs' ongoing rights.  This is entirely appropriate.  *See Lyons Sav. & Loan Ass'n v. Geode Co.*, 641 F. Supp. 1313, 1319 (N.D. Ill. 1986) ("A suit under the Declaratory Judgment Act is appropriate for a contracting party seeking resolution of actual disputes regarding the interpretation of a contract.").  Put another way, even if Plaintiffs prevail on their breach of contract claim, they would not receive ongoing relief unless they also prevailed on their claim for declaratory judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny VTech's motion (Dkt. 61) in its entirety.

- 26 -

Respectfully submitted,

Dated:  May 18, 2016       By:    /s/ Jason L. Lichtman      


Jason L. Lichtman
     *Interim Co-Lead Counsel*
Michael F. Decker
**LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
T.      212.355.9500
jlichtman@lchb.com

Michael W. Sobol
Roger N. Heller
**LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
T.      415.956.1000
msobol@lchb.com

Jay Edelson
     *Interim Co-Lead Counsel*
Rafey Balabanian
Alexander T.H. Nguyen
Benjamin S. Thomassen
**EDELSON PC**
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
T.      312.589.6370
jedelson@edelson.com

John A. Yanchunis
     *Interim Co-Lead Counsel*
Patrick A. Barthle
**MORGAN & MORGAN, PA**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
T.      813.223.5505
jyanchunis@forthepeople.com

Edward A. Wallace
    *Interim Liaison Counsel*
Amy E. Keller
**WEXLER WALLACE LLP**
55 West Monroe Street
Suite 3300
Chicago, Illinois 60603
T.     312.346.2222
eaw@wexlerwallace.com

Cari Campen Laufenberg
    *Plaintiffs' Steering Committee*
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
T.     206.623.1900
claufenberg@kellerrohrback.com

Christopher S. Hinton
    *Plaintiffs' Steering Committee*
**THE HINTON LAW FIRM**
275 Madison Avenue, 34th Floor
New York, New York 10016
T.     646.723.3377
chinton@hintonlegal.com

Nancy A. Kulesa
    *Plaintiffs' Steering Committee*
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, New York 10004
T.     212.363.7500
nkulesa@zlk.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF service, which will send the notification of such filing to all counsel of record in consolidated case number 15-cv-20889 this 18th day of May 2016.


By: /s/ Jason L. Lichtman
Jason L. Lichtman

1301606.8