## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| **IN RE VTECH DATA BREACH LITIGATION** | Master Case No. 15-cv-10889 |
|  | Consolidated Case Nos. 15-cv-10889, 15-cv-10891, 15-cv-11280, 15-cv-11620, 15-cv-11885 |
| This document relates to all actions | The Honorable Manish S. Shah |

## DEFENDANT VTECH ELECTRONICS NORTH AMERICA, LLC'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS
## <u>SECOND CONSOLIDATED AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.     PLAINTIFFS FAIL TO STATE CLAIMS FOR BREACH OF CONTRACT................1

    A.    Plaintiffs' reliance on mischaracterized advertisements does not save their breach of contract claims. .......................................................................1

    B.    The Court should disregard Plaintiffs' unsupported argument that VTech charged a premium for its "online devices."............................................4

    C.    The Terms are conclusive and Plaintiffs cannot selectively ignore them...............5

    D.    VTech's limitation of liability clauses eliminate Plaintiffs' claims for interruption of Online Services. ...........................................................7

II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY .......................................................9

    A.    Acceptance of the Terms created a contract for services, not goods. .....................9

    B.    Plaintiffs still do not satisfy the direct relationship exception to privity. ..............10

    C.    The Kid Connect Terms disclaimed the implied warranty of merchantability......11

III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE IFCA ................................12

    A.    Plaintiffs do not plead unfair conduct.................................................12

    B.    Plaintiffs are unable to satisfy Federal Rule of Civil Procedure 9(b). ..................13

    C.    Plaintiffs did not suffer actual damage as required by the ICFA...........................14

IV.   PLAINTIFFS DID NOT PROPERLY PLEAD THEIR NATIONWIDE CLAIM FOR UNJUST ENRICHMENT......................................................................15

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anthem Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ....................................................................14

*Brandt v. Sara Bush Lincoln Health Ctr.*,
    771 N.E. 2d 470 (Ill. App. Ct. 2002) .......................................................................9

*Camasta v. Jos. A. Bank Clothiers, Inc.*
    761 F.3d 732 (7th Cir. 2014) ............................................................................14, 15

*Cook, Perkiss & Liehe, Inc. v. No. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) ............................................................................13, 14

*F.T.C. v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015)..............................................................................12, 13

*GE Bus. Fin. Servs. Inc. v. Schiffman*,
    No. 09 C 4368, 2010 WL 380699 (N.D. Ill. Jan. 27, 2010) ...................................5

*Gehrett v. Chrysler Corp.*,
    882 N.E. 2d 1102 (Ill. App. Ct. 2008) ...................................................................13

*Goldberg v. 401 Wabash Venture LLC*,
    755 F.3d 456 (7th Cir. 2014) .................................................................................13

*Halperin v. Int'l Webs Servs., LLC*,
    123 F. Supp. 3d 999 (N.D. Ill. 2015) .....................................................................13

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
    570 F.3d 849 (7th Cir. 2009) .................................................................................13

*MAN Roland Inc. v. Quantum Color Corp.*,
    57 F. Supp. 2d 568 (N.D. Ill. 1999) .......................................................................12

*Razor v. Hyundai Motor Am.*
    854 N.E. 2d 607 (Ill. 2006)......................................................................................8

*In re Rust-Oleum Marketing, Sales Practices & Prods. Liabl. Litig.*
    155 F. Supp. 3d 772 (N.D. Ill. 2016) ...............................................................10, 11

*Thorogood v. Sears, Roebuck and Co.*,
    No. 06 C 1999, 2006 WL 3302640 (N.D. Ill. Nov. 9, 2006).................................15

*Tylka v. Gerber Prods. Co.*,
No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) .......................................................14

**Statutes**

810 ILCS 5/2-316(2), (3)(a)..........................................................................................................11

## INTRODUCTION

Plaintiffs' first complaint failed for fundamental reasons. The Court provided a roadmap for avoiding Plaintiffs' pleading potholes a second time around. It is evident from their response to VTech's motion to dismiss, however, that Plaintiffs failed to fill the holes in their claims because they are unable do so.  Far from re-litigating its earlier motion to dismiss—some of which is inevitable because the facts and issues have not changed—the current motion to dismiss makes plain that a few catchy buzzwords and pictures are not a cure-all for Plaintiffs' faulty Complaint. Plaintiffs arrive at the same dead end because they entered into two separate and distinct transactions: one for the VTech device that they purchased and a second for the use of VTech's Online Services.  Those facts have not changed. This Complaint, like its predecessor, warrants dismissal, only this time with prejudice.[1]

## ARGUMENT

### I.      Plaintiffs Fail To State Claims for Breach of Contract

#### A.      *Plaintiffs' reliance on mischaracterized advertisements does not save their breach of contract claims.*

To allege breach of contract, Plaintiffs must show: (1) an express promise by VTech; and (2) that both VTech and the customer understood that a portion of the purchase price was allocated to the Online Services.  Dkt. 87, at 16 n. 7, 19.  Plaintiffs' breach-of-contract claim (as well as other claims) is predicated on the "on-packaging" references to "kid safe" internet and the statement that VTech's devices provide the "best of both learning worlds," which they say "establish[es] the link between VTech's promises and obligations to provide data security, on the one hand, and the point of purchase, on the other."  Dkt. 104, at 14 n. 4.  But this argument is belied by Plaintiffs' own Complaint.

---

[1] Capitalized terms not otherwise defined have the same meanings as in VTech's Memorandum of Law in Support of Motion to Dismiss.  *See* Dkt. 101.

First, as the Complaint's factual allegations make clear, the product packaging's references to "kid-safe" mean only that VTech's internet-connected devices provide a "safe environment to explore the Internet by limiting the sites [their children are] allowed to visit." Compl. ¶ 11. This is not just some "inference" drawn by VTech: it is the unmistakable meaning of the repeated factual allegations in Plaintiffs' own Complaint:

- VTech's bloggers tout "web access for child-safe websites" and a "kid-safe browser." Compl. ¶ 16;

-  "[T]wo of the biggest drawbacks of children playing with adult tablets are: a.) the potential for unsupervised web access and b.) content that isn't really meant for young children." Compl. ¶ 20; and

- Kid Connect products allow parents to "manage your child's access to websites with parental controls." Compl. ¶ 27 (fig. 2).

Plaintiffs now attempt to contort "kid safe" to mean something it did not mean in the product packaging. As referenced in the factual allegations of their own Complaint, that term means only that the devices allow parents to control their children's access to content on the internet. No amount of post hoc argument can modify that plain and unambiguous meaning.

Plaintiffs strain to try to draw a connection between "kid-safe Wi-Fi" and cyber-security. Dkt. 104, at 14 ("For instance, the packaging describes the Online Products' 'Wi-Fi Connection'—which, of course, is the gateway for the *entirety* of the online features."). But they do not plead a single fact supporting their claim that the Wi-Fi connection was not "kid safe." Because they cannot. While the Online Services (*i.e.* Learning Lodge and Kid Connect) were temporarily impaired as a result of a cyber-attack on certain customer data stored by VTech, Plaintiffs do not allege any breach of their devices' Wi-Fi **connection**. Nor do Plaintiffs allege that any device's Wi-Fi connection did not work (because they did). In short, the product packaging's references to "kid-safe Wi-Fi" and internet have nothing to do with data security.

2

Similarly, Plaintiffs mischaracterize the use of the term "best of both learning worlds" on the packaging for one of the VTech devices.[2] Plaintiffs now claim this term represents the marriage of the offline device and the Online Services. Dkt. 104, at 3. Once again, Plaintiffs conveniently ignore the actual wording of the package labeling *even though that wording is contained in their own Complaint*. As the advertisements in the Complaint make clear, "best of both learning worlds" refers simply to the availability of VTech learning applications **and** Android's educator-supported apps on the Online Services:

- In Figure 1, the reference to "best of both learning worlds" is immediately followed by the claim of 650+ "Educator-Supported VTech **and** Android Learning Apps." Compl. ¶ 25, fig. 1 (emphasis added);

- Figure 2's reference to the "best of both learning worlds" is followed by an **arrow** pointing to "VTech's biggest and fastest learning tablet **expanded** with Android content." Compl. ¶ 27, fig. 2 (emphasis added); and

- Figure 4's reference to "best of both learning worlds" is followed by the Android content icon. Compl. ¶ 28, fig. 4.

Every use of the term "best of both learning worlds" is accompanied by a reference to the addition of Android content to the apps offered by the Online Services. Plaintiffs' verbal acrobatics cannot change the fact that "best of both learning worlds" in the advertisements refers only to VTech's offering of a learning library containing both VTech and Android apps—not the fabricated "offline/online" marriage that Plaintiffs describe.

Finally, even if the phrases "kid safe" and "best of both learning worlds" meant what Plaintiffs now wish them to mean, they are certainly not be specific enough to constitute a promise of unfettered access to Learning Lodge or Kid Connect with the purchase of a VTech

---

[2] Plaintiffs include the packaging and advertisements of only one VTech Kid Connect device—the InnoTab Max—and one Learning Lodge device—the Kidigo. Comp. ¶¶ 25 fig. 1, 27 figs. 2-3, 28 fig. 4, 29 fig. 5, 32, fig. 6. They then make a giant leap by implying that the same advertising applies to all of the devices in the Complaint. That is not the case. Indeed, the advertising in the Complaint only relates to the InnoTab Max and the Kidigo, and not to the 21 other devices identified in the Complaint.

device. Accordingly, Plaintiffs' arguments regarding VTech advertising do not change the separate and distinct event of registration for Online Services versus the purchase of the toys.

**B.** ***The Court should disregard Plaintiffs' unsupported argument that VTech charged a premium for its "online devices."***

Plaintiffs only other argument that the Online Services were part of the initial device purchase lies in their characterization of VTech's "pricing structure." Plaintiffs assert VTech marked up devices that were compatible with the Online Services to a "significant degree." Dkt. 104, at 10. The alleged "facts" Plaintiffs cite to support this conclusion are in paragraph 30 of the Complaint, which compares the price of the InnoTab 3 ($70) to that of the InnoTab 3s ($100). Dkt. 104, at 10; Compl. ¶ 30. Plaintiffs explain the difference as follows: the "'3s' (***the online version***) included a physical toy *and* access to the Online Services . . . while the "3" (***the offline version***) included *only* a physical toy with no . . . access to the Online Services." Dkt. 104, at 4 (citing to Compl. ¶ 30) (emphasis added); *see also* Dkt. 104, at 10 ("The *only* reason for that difference in price is that the Products offered VTech's customers something the 'offline' products did not: they promoted Online Services and features.") But, Plaintiffs have it dead wrong, and their argument is once again at odds with the facts set out in their own Complaint.

Contrary to Plaintiffs' assertion that it is only an "offline" toy, the InnoTab 3 ***is Learning Lodge enabled*** and, in fact, is listed in the Complaint as ***one of the Learning Lodge devices and part of the Learning Lodge Class***. Compl. ¶ 22. The price difference between the InnoTab 3 and the InnoTab 3s has nothing to do with the former being the "offline version" of the latter, as Plaintiffs would lead this Court to believe. ***Both*** toys can access Learning Lodge. The difference in price is the result of the InnoTab 3s offering advanced features, such as a larger screen, rechargeable batteries, larger memory storage, enhanced numbers and types of built-in apps, and Wi-Fi accessibility. Indeed, if the InnoTab 3 were truly an "offline" device as Plaintiffs

4

argue, then they would have no claim for that device (or any other "offline" device alleged in the Complaint) since the outages of the Online Services and the alleged insecurity of data collected via those services would be of no consequence to an "offline" device. This Court should therefore reject the Plaintiffs' new argument as lacking any basis in their own factual allegations.

C.    *The Terms are conclusive and Plaintiffs cannot selectively ignore them.*

Throughout their Response, Plaintiffs embrace the Terms for the provisions they need (i.e., the "promise" to protect "privacy and personal information"), but ignore the Terms when unfavorable to their positions. *See GE Bus. Fin. Servs. Inc. v. Schiffman*, No. 09 C 4368, 2010 WL 380699, at *7 (N.D. Ill. Jan. 27, 2010) ("Defendants do not even address the express terms of the [contract] they entered into. . . . [T]his court cannot simply ignore the myriad of other provisions of the [contract] that contemplate exactly the situation presented here."). This is no surprise because the Terms make clear that the Online Services, upon which this litigation is based, were not part of the contract forming the purchase of the VTech devices. Plaintiffs do not dispute that access to the Online Services did not accompany the purchase of a VTech device. Dkt. 104, at 12-13 ("It is true, as VTech notes, that the respective Kid Connect and Learning Lodge terms purport to only govern those services . . . ."). Instead, customers purchasing VTech devices were required to go online, create an account, and enter into a separate contract (by accepting the Terms) if they wanted to access VTech's Online Services. And the plain language of the Terms highlights that the Online Services contract is wholly separate and distinct from the purchase of the device. In particular:

- The Learning Lodge Terms state that they are an "offer[] to install and use" ***only*** Learning Lodge. Dkt. 101, Ex. A recitals, ¶ 1.2;

- The Kid Connect Terms only govern a "User's use of the ***services***, including . . . [the] features of VTech Kid Connect." Dkt. 101, Ex. B recitals (emphasis added);

5

- In the event a user breaches the Terms or does not accept the Terms, she is prevented only from using the Online Services, not the devices. Dkt. 101, Ex. A ¶ 7;

- The Learning Lodge Terms provide a limited 90-day warranty that is related *only to access to Learning Lodge*. Dkt. 101, Ex. A ¶ 3.1; and

- Only an individual 18 years or older can use the Online Services, while the electronic toys are not subject to the same express restrictions. Dkt. 101, Ex. B ¶ 2.2; Ex. A. ¶ 1.1.

Plaintiffs are tellingly silent when it comes to these provisions of the Terms or the fact that the Terms do not require the return of a VTech device for a breach or non-acceptance of the Terms.

Plaintiffs' only retort is that the Online Services were "necessary" to operate the devices, pointing to purported on-the-box-advertisements for the InnoTab Max (a Kid Connect device) for support. Compl. ¶ ¶ 25, fig. 1, 27, fig. 2-3. These advertisements, however, *do not say* that the Online Services are necessary to operate the devices. In fact, Plaintiffs are unable to point to a single representation by VTech that the Online Services are necessary or required to operate the devices. None of these claimed representations inform the Court how many applications were restricted (if any), how many remained available, or whether the removal of the Online Services entirely or partially prevented Plaintiffs from updating their devices, purchasing and playing games, or otherwise using the integral features of their products. *See* Dkt. 87, at 24.

Plaintiffs also claim the devices were inoperable because customers could not access the Online Services to download applications. Dkt. 104, at 3 (citing Compl. ¶¶ 25, 31, 34, 36, 78, 85, 93, 100, 106, 113, 122, 130). Yet, this self-serving logic cannot defeat Plaintiffs' admission that the devices still worked in "offline" form to perform significant "offline" features (*i.e.* playing games or apps that had been purchased or previously downloaded). Dkt. 104, at 3.

The Complaint makes clear that the devices *function* whether or not a customer decides to sign up for the Online Services. Compl. ¶ 27, fig. 3 (stating that the InnoTab Max supports both apps and cartridges). As this Court previously concluded, the fact that the Plaintiffs

subjectively valued the online features of the devices does not mean that the devices were **necessary** or **central** to the devices' functionality. Dkt. 87, at 24. Therefore, this Complaint fails for the same reason as the first complaint: "[b]ecause plaintiffs did not enter into an online services contract at the time of purchase, the complaint does not plausibly allege that VTech breached a contractual obligation to provide those services." Dkt. 87, at 19.

**D.** *VTech's limitation of liability clauses eliminate Plaintiffs' claims for interruption of Online Services.*

Plaintiffs cannot escape the fact that every person who agreed to use the Online Services also agreed to provisions in the Terms allowing VTech to suspend or terminate those Online Services. Dkt. 101, Ex. A, ¶ 2.7; Ex. B ¶ 7.3, 11.1.[3] The Terms also contain several plain and unambiguous limitations on liability to which the Plaintiffs expressly agreed when enrolling in Learning Lodge and Kid Connect. Dkt. 101, Ex. A ¶¶ 2.4, 3.2, 5, 6; Ex. B, ¶¶ 11.1, 12.2, 12.3.

Plaintiffs concede that VTech's actions fall within these provisions but argue they do not apply for two reasons. First, Plaintiffs argue that the "more sensible reading" of the Terms is that "VTech cannot be held liable for occasional outages . . . or for discontinuing the Online Services many years after purchase . . . ." Dkt. 104, at 15. Plaintiffs do not explain how a short suspension of Online Services does not fit their made-up definition of "occasional outages"—a concocted definition with no legal significance—or how their unsupported interpretation (cloaked as a "more sensible reading") survives the unambiguous language of the Terms.

Second, Plaintiffs assert procedural and substantive unconscionability. Regarding the former, the Terms are not unconscionable because, as stated above, acceptance of the Terms created a separate contract for Online Services. Plaintiffs had the full and fair opportunity to review the Terms prior to contracting for the Online Services. If they were not happy with the

---

[3] This Court has already found this provision enforceable and determined that "VTech was within its rights to suspend the online services." Dkt. 87, at 19-21.

Terms, Plaintiffs could have opted not to register for or use the Online Services. They also could have returned their devices if the agreement for Online Services was not what they wanted to use with their devices. But they did no such thing. Nowhere in the Complaint do Plaintiffs allege that they tried to return their devices after reviewing and rejecting the Terms or that were they prevented from doing so. The fact that no Plaintiff availed herself of either of these options (now two years from the cyber-attack) demonstrates just how functional and useful the devices are **without** the Online Services. This fact alone makes Plaintiffs' rote reliance on *Razor v. Hyundai Motor Am.* misplaced. 854 N.E. 2d 607, 622-23 (Ill. 2006) (finding persuasive the fact that plaintiff was unable to read the disclaimer "at or before the time she signed the sale contract").

Plaintiffs' argument on substantive unconscionability is equally unavailing. Plaintiffs' assumption that the purchase of a device contained an express promise for unfettered access to the Online Services suffers from a familiar fatal flaw. Dkt. 104, at 16-17. Plaintiffs had the opportunity to review the Terms prior to entering into the contract to access the Online Services. Therefore, VTech was not offering an "illusory" promise, as Plaintiffs claim. VTech sold devices to customers. And if those customers also wanted to avail themselves of the Online Services, they had the opportunity to review the Terms and determine whether to enter into the contract for Online Services. For those who chose to use the Online Services, Plaintiffs agreed to a provision in the Terms giving VTech the right to suspend or terminate the Online Services, and stating that VTech would not be liable for any consequences of such suspension or termination. No amount of argument can modify the plain language of those provisions.

## II. Plaintiffs Fail To State a Claim for Breach of the Implied Warranty of Merchantability

### A. *Acceptance of the Terms created a contract for services, not goods.*

Plaintiffs agree that the implied warranty of merchantability applies only to "transactions in goods." Dkt. 104, at 18 (quoting 810 ILCS 5/2-102.) This concession is dispositive of Plaintiffs' claim for breach of the implied warranty of merchantability. There are *two* separate transactions at issue in this case: one for the device and one for the Online Services. Dkt. 87, at 19. As previously discussed, acceptance of the Terms formed the contract for the Online Services. The Terms, which relate only to the Online Services, have no bearing on the purchase of the physical device. Dkt. 101, Ex. A, Preface ("The following specifies the terms and conditions on which VTech . . . offers you to install and use the Learning Lodge . . . which will enable you to download VTech Software from a VTech-designated website[.]"). The language of the Terms removes the contract for the Online Services from the purview of the UCC and, accordingly, invalidates any implied warranty of merchantability. *See Brandt v. Sara Bush Lincoln Health Ctr.*, 771 N.E. 2d 470, 473-74 (Ill. App. Ct. 2002).

Despite this fact, Plaintiffs repeat the claim that the Online Services were included as part of the initial purchase. But, simply alleging a mix of goods and services is not enough. As Plaintiffs admit, to succeed in their already-rejected theory, they need to show that the Online Services were *essential to make the device operable*.[4] Dkt. 104, at 19 (citing to dicta on widgets from *Bruel & Kjaer v. Vill. of Bensenville*, 969 N.E. 2d 445, 451 (Ill. App. Ct. 2012)). As shown above, Plaintiffs remain unable to make this showing.

---

[4] Plaintiffs also claim they can make this showing by proving that VTech charged a premium for its "online" devices. Dkt. 104, at 18. This argument fails because Plaintiffs point to no factual support for their conclusion that VTech charged a premium for online devices. *Supra*, I.B. The argument also fails because the fact that a device with new features costs more does not mean those features are essential to making the device operable. Take a luxury car that has GPS as an example. The customer paid a premium for GPS. But, if the GPS fails, the car still operates.

Plaintiffs admit that the only "new" allegations in their amended complaint consist of the on-the-box advertisements from one Kid Connect device and one Learning Lodge device discussed above. Dkt. 104, at 13 n. 3 ("VTech ignores that the Court specifically stated that it did not consider the significant on-and-in-the-box representations that Plaintiffs now allege."). But just as these advertisements do not relate, even remotely, to the operation of the devices, none of these advertisements explains the ways the devices were rendered useless during the period of time that the Online Services were unavailable after the cyber-attack. Further, Plaintiffs *admit* that the devices worked in "offline form," and the Complaint makes clear that the devices *function* whether or not a customer decides to sign up for the Online Services. Dkt. 104, at 3; Compl. ¶ 27, fig. 3 (stating that the InnoTab Max supports both apps and cartridges). Despite adding paragraphs to the Complaint, Plaintiffs' claims for breach of implied warranty of merchantability fail here for the same reasons they failed the first time Plaintiffs made them.

**B.** *Plaintiffs still do not satisfy the direct relationship exception to privity.*

Plaintiffs concede that, under Illinois law, a claim for breach of implied warranty is only available to a buyer "against his immediate seller." Dkt. 104, at 20 (quoting *Rothe v. Maloney Cadiliac Inc.*, 518 N.E. 2d 1028, 1029 (Ill. 1988)). Plaintiffs "do not dispute that [they] purchased their products from retailers," but try to circumvent this rule by arguing the "direct relationship exception," citing to *In re Rust-Oleum Mktg., Sales Practices & Prods. Liabl. Litig.* for support. 155 F. Supp. 3d 772 (N.D. Ill. 2016); *see also* Dkt. 104, at 20. This Court already rejected the application of *In re Rust-Oleum* and should do so again for the same reasons.

As in their prior response brief, Plaintiffs once again fail to mention that *In re Rust-Oleum* applies Indiana law, which (in contrast to Illinois) does not require privity for the implied warranty of merchantability. *Id.* at 806. Plaintiffs also do not mention that the plaintiffs in that case brought a Magnuson-Moss Act claim—something the Plaintiffs here knew was fatal to their

claim. Dkt. 73, at 22 n. 12. But, most importantly, the court in *In re Rust-Oleum* allowed discovery for the simple reason that the product at issue (paint) advertised its ***warranty*** expressly and conspicuously on the packaging. *See* 155 F. Supp. 3d at 780-81 (stating that the paint's packaging contained a "Limited Lifetime Warranty").

Here, despite Plaintiffs heroic struggle to somehow show that VTech "warranted" its data security, the ***only*** reference to data security is found in the Terms, and the Terms were available to Plaintiffs only ***after*** the purchase of a VTech device. Plaintiffs do not allege otherwise. Rather, they are left with the contention that using the term "kids safe" in select VTech advertising satisfies *In re Rust-Oleum*'s requirement of an explicit warranty on product packaging. Dkt. 87, at 25 (interpreting *In re Rust-Oleum*). Not so. As discussed above, the use of the term "kid safe" had nothing to do with cyber-security and everything to do with protecting children from illicit content found on the adult web. Moreover, even if "kid safe" could conceivably have referred to cyber-security, such a reference would not have been sufficiently explicit. The UCC, therefore, is inapplicable to this case.

### C. *The Kid Connect Terms disclaimed the implied warranty of merchantability.*

Plaintiffs cannot rebut that VTech disclaimed the implied warranty of merchantability in the Kid Connect Terms. So they try to seek shelter under the Magnuson-Moss Act. Dkt. 104, at 22 (citing 15 U.S.C. § 2308(a)). But, Plaintiffs did not bring a Magnuson-Moss Act claim. They brought a claim under Illinois law, and Illinois law is clear: implied warranties of merchantability may be excluded per Section 2-316 of the Illinois Commercial Code as long as the contractual terms "mention merchantability and in case of a writing must be conspicuous . . . . [A]ll implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language . . . [that] makes plain that there is no implied warranty." 810 ILCS 5/2-316(2), (3)(a). Accordingly, the Magnuson-Moss Act fails to protect Plaintiffs in this instance.

Facing this reality, Plaintiffs admit that the Terms relate *only* to the Online Services. Dkt. 104, at 22 ("[T]he Kid Connect disclaimer only pertains to the Kid Connect 'service' but not the products themselves . . . ."). Plaintiffs cannot have it both ways. Either the Terms are part of the initial purchase as Plaintiffs allege throughout their Response, or the Terms (rightly) relate only to the Online Services. And, critically, because the Terms relate only to the Online Services—the UCC is not applicable to this case.

Finally, Plaintiffs rehash the argument that the Kid Connect Terms are, somehow, unconscionable, which VTech already addressed in detail above. *Supra*, I.C. In sum, even if the Court decides the UCC is applicable to this case, the Kid Connect Terms clearly and validly disclaim the implied warranty of merchantability as to the Kid Connect service and any information collected as part of that service. *See MAN Roland Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 568, 573 (N.D. Ill. 1999).

## III.   Plaintiffs Fail To State a Claim under the IFCA

### A.   *Plaintiffs do not plead unfair conduct.*

This Court already determined that Plaintiffs did not plead unfair practices in their first complaint. Dkt. 87, at 27 n. 10. Nothing has changed in their amended Complaint. Plaintiffs argue, without citation to their Complaint, that VTech acted in an "immoral, unethical, oppressive or unscrupulous" manner. Dkt. 104, at 28. They also claim, again without citation to the Complaint, that "Plaintiffs devote paragraphs to VTech's allegedly unfair conduct." Dkt. 104, at 29. But, once again, Plaintiffs' cannot rehabilitate the gaping holes in their factual allegations with post-hoc arguments in their brief.[5]

---

[5] Plaintiffs, again, make a passing reference to the Children's Online Privacy Protection Act ("COPPA"). Dkt. 104, at 28. But, COPPA is not a proxy for liability under the ICFA and no court has held otherwise. Plaintiffs also bring the Federal Trade Commission into the mix with a strained discussion of *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 246 (3d Cir. 2015). *Wyndham* involved a "misleading privacy

To plead unfair conduct under the ICFA, Plaintiffs must allege *facts* distinct from the alleged deceptive conduct. The Complaint does not do this. All of the allegations assert "misrepresentations, omissions, fraudulent conduct, and unfair behavior." *See, e.g.,* Compl. ¶¶ 211, 217-221, 223-224, 226-228. But they never allege what behavior was "unfair" separate and apart from the allegedly deceptive conduct. Adding the word "unfair" to conclusory descriptions of "deceptive" and "fraudulent" conduct does not create a claim under the ICFA. Accordingly, Plaintiffs' allegations fall within the ambit of *Halperin v. Int'l Webs Servs., LLC*, 123 F. Supp. 3d 999, 1007 (N.D. Ill. 2015), and *Goldberg v. 401 Wabash Venture LLC*, 755 F.3d 456, 464 (7th Cir. 2014), and are insufficient to state a claim under the IFCA's unfair prong.

**B.    *Plaintiffs are unable to satisfy Federal Rule of Civil Procedure 9(b).***

Like common law fraud, a properly pled ICFA claim must satisfy Federal Rule of Civil Procedure 9(b)'s requirement to plead, with particularity, the "who, what, when, where, and how" of the supposed fraud. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). Plaintiffs claim their "new" advertising allegations satisfy this heightened pleading standard when, in fact, they fall woefully short.

As discussed above, even under the most liberal reading possible, VTech's advertisements do not relate to data security *at all*, let alone create any express promises. *Supra*, I.A. Further, Plaintiffs do not address the fact that, even if the terms "kid safe" and "best of both learning worlds" meant what Plaintiffs now argue, the terms are not connected enough to data security to be anything more than a non-actionable vague and general assertion. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("The

---

policy." *Id.* at 246. Here, this Court has already decided that Plaintiffs ICFA claims fail to the extent they are based on representations made in the Privacy Policy. Dkt. 87, at 26; *cf. Gehrett v. Chrysler Corp.*, 882 N.E.2d 1102, 1115-16 (Ill. App. Ct. 2008) (a party cannot assert consumer fraud "where allegations amounted only to defendant's failure to fulfill its contractual obligations").

common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions."); *Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *5-6 (N.D. Ill. July 1, 1999). Nor are the advertisements plagued by material omissions. Plaintiffs' only remaining alleged material omission is VTech's purportedly inadequate data security itself. This Court has already found this not to be actionable under the ICFA. Dkt. 87, at 26 ("[I]t is too much of a stretch to infer that . . . VTech's inadequate data security constitutes a material omission at the point of purchase."). Nothing in the amended complaint compels a different conclusion.

This Court is therefore left with the same allegations of fraud it has already dismissed. Dkt. 87, at 26 (finding Plaintiffs' general allegations "that VTech misrepresented the online services as offering reasonable data security" or "that VTech's inadequate data security constitute[d] a material omission at the point of purchase" insufficient under Rule 9(b)). Those claims should be dismissed again, this time with prejudice.

### C.     *Plaintiffs did not suffer actual damage as required by the ICFA.*

Plaintiffs cite to only one case in support for their claim that a failure to provide data security is a sufficient economic injury to satisfy a consumer fraud statute. Dkt. 104, at 31 (citing *In re Anthem Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985-86 (N.D. Cal. 2016). *In re Anthem*, however, is an Article III case on injury-in-fact. *In re Anthem Inc. Data Breach Litig.*, 162 F. Supp. 3d at 985-86. The ICFA requires more.

To state a claim under the ICFA, Plaintiffs must plead "actual damage" as articulated by the Seventh Circuit in *Camasta v. Jos. A. Bank Clothiers, Inc.* 761 F.3d 732, 740 (7th Cir. 2014).[6] Plaintiffs conclude that they satisfy *Camasta* because the "the market price for the

---

[6] The two district court cases, *Muir v. Playtex Prods., LLC* (2013) and *Lipton v. Chattem, Inc.* (2012), predate the Seventh Circuit's decision in *Camasta*, which is the binding case upon this Court.

product that VTech promised is substantially higher than the market price for the product it actually provided." Compl. ¶ 50; Dkt. 104, at 26. But the factual allegations in the Complaint do not support Plaintiffs' conclusory argument. The flawed comparison between the price for the 2013 InnoTab 3 and the InnoTab 3s discussed above does not give rise to the inference Plaintiffs seek. Compl. ¶ 30; *Supra*, I.B. Plaintiffs do not provide any other "factual" evidence that they paid more than the actual value of the goods they received and therefore cannot satisfy *Camasta.* Accordingly, their ICFA counts should be dismissed. 761 F.3d at 740 (dismissing plaintiff's ICFA claim for failure to substantiate with a comparison in the actual marketplace for his conclusion that he overpaid for goods based on a purported misrepresentation).

**IV.     Plaintiffs Did Not Properly Plead Their Nationwide Claim for Unjust Enrichment**

Plaintiffs finally try to save their flawed unjust enrichment claim by claiming that the claim was somehow brought in the alternative. Dkt. 104, at 30. Yet, the word "alternative" does not appear once in the pleading. For this reason alone, Plaintiffs' unjust enrichment count fails. *Thorogood v. Sears, Roebuck & Co.*, No. 06 C 1999, 2006 WL 3302640, at *5 (N.D. Ill. Nov. 9, 2006) ("Where unjust enrichment claims incorporate by reference allegations of the existence of a contract between the parties, courts will dismiss the unjust enrichment claim."). Even if the Court filled in Plaintiffs' deficient pleading by inserting the word "alternative" in the text, the claim still fails under the ICFA and fails under any other governing law. Dkt. 101, at 28, 30.

<u>**CONCLUSION**</u>

This Court afforded the Plaintiffs a second chance to plead factual allegations sufficient to state valid claims. But the Plaintiffs have failed to do so. For all the reasons stated in its Memorandum Supporting its Motion to Dismiss, VTech respectfully requests that this Court grant its Motion to Dismiss in its entirety and dismiss the Complaint with prejudice.

Dated: December 7, 2017

Respectfully submitted,

VTECH ELECTRONICS NORTH
AMERICA, LLC

By:    */s/ Michael Dockterman*
        One of its attorneys

Michael Dockterman
mdockterman@steptoe.com
James R. Nuttall
jnuttall@steptoe.com
Michael A. Vatis
mvatis@steptoe.com
Jeremy S. Goldkind
jgoldkind@steptoe.com
Daniel E. Raymond
draymond@steptoe.com
**STEPTOE & JOHNSON, LLP**
115 S. LaSalle Street, Suite 3100
Chicago, Illinois 60603
(312) 577-1300

*Counsel for Defendant VTech Electronics*
*North America, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I, Michael Dockterman, an attorney, hereby certify that on December 7, 2017, I caused a true and correct copy of the foregoing **DEFENDANT VTECH ELECTRONICS NORTH AMERICA, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT** to be electronically filed with the Clerk of Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

*/s/ Michael Dockterman*
Michael Dockterman